**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GROUPON, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-06082 |
| | ) | |
| v. | ) | Honorable Judge Charles P. Kocoras |
| | ) | |
| SUNG SHIN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SUNG SHIN'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404; AND REQUEST
FOR ORDER VACATING TEMPORARY RESTRAINING ORDER**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS & PROCEDURAL HISTORY ............................................................. 2

III.   ARGUMENT ...................................................................................................... 3

      A.    RCW 49.9.62 Controls, and Restrictive Covenants with
             Choice of Law and Choice of Forum Clauses are Expressly Forbidden ............... 3

      B.    This Court Should Dismiss Groupon's Complaint Because Groupon
             Cannot Establish Personal Jurisdiction ................................................... 7

             1.    Groupon Cannot Establish General Jurisdiction ........................ 8

             2.    Groupon Cannot Establish Specific Jurisdiction ........................ 9

IV.   IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE
      ITS DISCRETION TO TRANSFER VENUE TO WASHINGTON
      PURSUANT TO 28 U.S.C. § 1404 ............................................................... 12

      A.    Washington Has Personal Jurisdiction Over Groupon, Subject-Matter
             Jurisdiction Over this Controversy, and is the More Convenient Venue ............ 13

      B.    The Interests of Justice Dictates Transfer to Washington District Court ............ 14

      C.    Convenience Necessitates Transfer to Washington District Court ...................... 16

V.    REQUEST TO VACATE TRO ...................................................................... 17

VI.   CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*,
    200 F.Supp.2d 941 (N.D. Ill. 2002) ................................................................ 14

*Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.*,
    42 F.Supp.2d 821 (N.D. Ill. 1999) ................................................................. 16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................... 6, 8, 13

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ............................................................................ 7

*Chicago United Industries, Ltd. v. City of Chicago*,
    445 F.3d 940 (7th Cir. 2006) .......................................................................... 17

*Chicago, Rock Island & Pacific Railroad Co. v. Igoe*,
    220 F.2d 299 (7th Cir. 1955) .......................................................................... 14

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*,
    536 F.3d 757 (7th Cir. 2008) ............................................................................ 7

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) .......................................................................... 15

*Commissioning Agents, Inc. v. Long*,
    143 F.Supp.3d 775 (S.D. Ind. 2015) .............................................................. 10

*Cossart v. United Excel Corp.*,
    804 F.3d 13 (1st Cir. 2015) ............................................................................ 14

*CVS Pharmacy, Inc. v. Brown*, Case no. C21-306 MJP,
    2021 U.S. Dist. LEXIS 49450 at * 3-4 (W.D. Wash., Mar. 16, 2021) ......... 5, 6

*Dairy Industries Supply Ass'n v. La Buy*,
    207 F.2d 554 (7th Cir. 1953) .......................................................................... 13

*Dehmlow v. Austin Fireworks*,
    963 F.2d 941 (7th Cir. 1992) .......................................................................... 10

*Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................. 12, 14

*Faust v. Vilsack*,
    519 F.Supp.3d 470 (E.D. Wis. June 10, 2021) ............................................. 17

*Felland v. Clifton*,
    682 F.3d 665 (7th Cir. 2012) .................................................................... 10, 11

*Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*,
    964 F.2d 599 (7th Cir. 1992) .......................................................................... 17

*Hall v. Rag-O-Rama, LLC*,
    359 F.Supp.3d 499 (E.D. Ky. 2019) .............................................................. 14

*Hanley v. Omarc, Inc.*,
    6 F.Supp.2d 770 (N.D.Ill.1998) ..................................................................... 15

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ....................................................................................... 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 ......................................................................................................... 8
*Hengel v. Asner,*
  433 F. Supp. 825 (E.D. Va. 2021) ...................................................................... 4
*Howting-Robinson Assocs., Inc. v. Bryan Custom Plastics,*
  65 F. Supp.2d 610 (E.D. Mich. 1999) ................................................................ 4
*Hyatt Int'l Corp. v. Coco,*
  302 F.3d 707 (7th Cir. 2002) ..................................................................... 7, 8, 9
*In re Volkswagen of AM., Inc.,*
  545 F.3d 304 (5th Cir. 2008) ................................................................... 12, 13
*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ................................................................... 8, 11, 13
*Jackson v. Payday Fin.,* LLC,
  79 F. Supp.3d 779 (N.D. Ill. 2015) ...................................................................... 4
*Jaramillo v. DineEquity, Inc.,*
  664 F.Supp.2d 908 (N.D. Ill. 2009) ................................................................... 16
*Leong v. SAP America, Inc.,*
  901 F. Supp. 2d 1058 (N.D. Ill. Oct. 3, 2012) ............................................... 7, 8
*Liqui-Box Corp. v. Scholle IPN Corp.,* No. ,
  2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ................................................... 11
*Montel Aetnastak, Inc., v. Miessen,*
  998 F.Supp.2d 694 (N.D. Ill. 2014) ........................................................ 7, 8, 10
*Norwood v. Kirkpatrick,*
  349 U.S. 29 (1955) ............................................................................................ 12
*Protective Ins. Co. v. Cody,*
  882 F.Supp. 782 (S.D. Ind. 1995) ..................................................................... 10
*Purdue Research Found. v. Sanofi–Synthelabo, S.A.,*
  338 F.3d 773 (7th Cir. 2003) .............................................................................. 7
*RAR, Inc. v. Turner Diesel, Ltd.,*
  107 F.3d 1272 (7th Cir. 1997) ...................................................................... 9, 10
*Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.,*
  626 F.3d 973 (7th Cir. 2010) ....................................................... 13, 14, 15, 16
*Sassy, Inc. v. Berry,*
  406 F.Supp.2d 874 (N.D. Ill. 2005) ................................................................... 16
*Savis, Inc. v. Cardenas,*
  2018 WL 5279311 (N.D. Ill. Oct. 24, 2018) ................................................... 10
*Sawtelle v. Farrell,*
  70 F.3d 1381 (1st Cir. 1995) .............................................................................. 9
*Schumacher v. Principal Life Insurance Co.,*
  665 F.Supp.2d 970 (N.D. Ind. 2009) ................................................................ 16
*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) ............................................................................................ 12
*Stuart v. Churn LLC,*
  2019 WL 2342354 (M.D.N.C. June 3, 2019) ................................................... 14
*Tamburo v. Dworkin,*
  601 F.3d 693 (7th Cir. 2010) .................................................................... 8, 9, 11

*Tekway, Inc. v. Agarwal,*
    No. 19-CV-6867, 2020 WL 5946973 (N.D. Ill. Oct. 7, 2020) ................................. 11
*Thomas v. Guardsmark Inc.,*
    381 F.3d 701 (7th Cir.2004) ......................................................................................... 4
*Tice v. American Airlines, Inc.,*
    162 F.3d 966 (7th Cir.1998) ....................................................................................... 13
*uBID, Inc. v. GoDaddy Grp., Inc.,*
    623 F.3d 421 (7th Cir. 2010) ........................................................................................ 8
*Vienna Beef, Ltd. v. Red Hot Chicago, Inc.,*
    833 F.Supp.2d 870 (June 21, 2011) ............................................................................ 17
*Williams v. Preeminent Protective Servs., Inc.,*
    81 F.Supp.3d 265 (E.D.N.Y. 2015) ............................................................................ 14
*Wright-Moore Corp. v. Ricoh Corp.,*
    908 F.2d 128 (7th Cir. 1990) ........................................................................................ 6

Statutes

28 U.S.C. § 1391(b)(2) .................................................................................................... 14
28 U.S.C. § 1404 ................................................................................................... 1, 12, 18
28 U.S.C. § 1404(a) ............................................................................................. 12, 13, 17
820 ILCS 90/5 ..................................................................................................................... 2
RCW 49.62 ................................................................................................................. passim
RCW 49.62.005 .................................................................................................................. 3
RCW 49.62.010(4) .............................................................................................................. 3
RCW 49.62.050 ...................................................................................................... 2, 6, 12, 15
RCW 49.62.050(2) .............................................................................................................. 1
RCW 49.62.080(1) .............................................................................................................. 5
RCW 49.62.080(2) .............................................................................................................. 5
RCW 49.62.080(3) .............................................................................................................. 5
RCW 49.62.100 .................................................................................................................. 1
RCW 49.62.110 .................................................................................................................. 3

Rules

Federal Rule of Civil Procedure 12(b)(2) ................................................................. 7, 18

Other Authorities

Restatement (Second) of Conflict of Laws § 187 ............................................................ 6

# I.    **INTRODUCTION**

Groupon filed this action is in the wrong state.  And Groupon's application disrupts rather than preserves the status quo.[1]

Sung Shin is a Washington State resident. Washington State law requires employers who hire residents of the State to comply with codified protections in RCW 49.62.  An employer *cannot* force a Washington employee to litigate a noncompete covenant outside of the state. *See* RCW 49.62.050(2).  Groupon attempted to circumvent Washington law by filing this action in the Northern District of Illinois. Groupon's actions directly contradict the letter (and spirit) of RCW 49.62, which went into effect January 1, 2020.  *See* RCW 49.62.100.  Any attempt to enforce the restrictive covenant outside of Washington should be deemed invalid and void. Notably, Mr. Shin *started his new employment with Yelp* the day after Groupon served its "Emergency" TRO, on November 15, 2021.

Absent the void and enforceable restrictive covenant upon which Groupon's entire action rests, this court lacks personal jurisdiction over Mr. Shin.  Groupon cannot meet the high threshold for general jurisdiction because Mr. Shin's contacts with Illinois are not sufficiently extensive and pervasive to approximate physical presence.  Moreover, because Groupon's claims arise out of the general relationship between the parties rather than directly out of the specific contacts between Mr. Shin and the forum state, Groupon cannot meet the threshold for specific jurisdiction either. Thus, this Court should dismiss Plaintiff's action in its entirety, finding that it lacks jurisdiction over Mr. Shin.  *In the alternative*, Mr. Shin respectfully requests this Court to transfer venue to the Western District of Washington pursuant to 28 U.S.C. § 1404.  This Court's Order granting the Defendant's Emergency Motion for a TRO, before hearing from the Defendant, did not maintain the status quo.  Instead, it has forced Mr. Shin to stop working for his new West Coast-based

---

[1] As explained below, Groupon's lawsuit is meritless.  He did not take anything proprietary and swore to that in a declaration. He gave Groupon two weeks' notice of his intent to resign, deleted all of its data from his devices, and asked it to identify concerns about any particular information so he could address them (e.g., inspection of his devices, at Groupon's expense). His new employer, Yelp, chimed in, asking Groupon to identify any alleged proprietary information so that Yelp could take steps above and beyond Mr. Shin's sworn declaration, but Groupon declined. Groupon's application for a TRO lacks any supporting evidence that Mr. Shin took a thing. And contrary to Groupon's mischaracterization, Mr. Shin never "refused" to return his bonus; in fact, he has already done so.

employer and has deprived him of both the right to work and the rights conferred upon him by the Washington legislature.[2]  Mr. Shin respectfully requests this Court to vacate its Order granting Groupon's TRO.

## II.      FACTS & PROCEDURAL HISTORY

Starting in March of this year (2021), Mr. Shin served as Groupon's Global Head of Advertising and Ancillary Revenue. (Groupon's Verified Complaint ("Complaint"), Dkt. No. 1, at ¶ 21). Mr. Shin signed the employment contract in Seattle, Washington, and the entirety of his employment with Groupon took place in his domicile in Seattle, Washington or Grapeview, Washington (hereinafter collectively referred to as "Seattle") via "remote" work.  (*See id.* at ¶¶ 5, 23; *see also* Declaration of Sung Shin ("Shin Declaration") at ¶¶ 3-5). Groupon's form employment agreement contained restrictive covenants, including a noncompete clause with an illegal choice of law provision and an illegal choice of forum clause, in violation of RCW 49.62.050. (*See id.* at ¶¶ 50, 57; *see also* Exhibit A to Complaint at ¶¶ 13, 23). Seven months later, on October 29, 2021, Mr. Shin announced his resignation and his intent to work for Yelp Inc., ("Yelp"), giving Groupon the customary two weeks' advance notice. (*See id.* at ¶ 60).  At the time of his resignation, Mr. Shin informed Groupon that his new employment with Yelp would begin on November 15, 2021.  (*See* Groupon's Emergency Motion for Temporary Restraining Order ("Groupon's TRO"), Dkt. No. 4, at p. 1, ¶ 1).

According to the case docket, on Mr. Shin's last day of employment, on November 12, 2021, Plaintiff Groupon filed: (1) a 98-page Verified Complaint; (2) a 5-page Notice of Emergency Motion for Temporary Restraining Order; (3) a 44-page Memorandum of Points and Authorities in support thereof; and (4) a Motion for Leave to File Oversized Brief in Support of its Emergency Motion for Temporary Restraining Order.  (Dkt. Nos. 1, 4, 5, 6).  Groupon then waited to serve counsel for defendant Shin with the pleadings (via email) until Sunday, November 14, 2021, the afternoon before Groupon knew Mr. Shin would begin working at Yelp. (Declaration of Jesse

---

[2] Illinois's newly amended Freedom to Work Act, 820 ILCS 90/5, *et seq.* which goes into effect January 1, 2022, though inapplicable to this case, reflects the public policy of Illinois against unreasonable restrictions on an employee's right to work.

Wing ("Wing Declaration") at ¶ 3). On Monday, November 15, 2021, Mr. Shin started his employment with Yelp. (Shin Declaration at ¶ 11.) Mr. Shin's position with Yelp has no comparable position to Groupon. Moreover, he has transited out from his previous marketing department position at Groupon into Yelp's technical department. (*See id*. at ¶¶ 12-15.)

Groupon's Verified Complaint includes only cursory allegations related to jurisdiction. Without delineation, Plaintiff broadly asserts that "Shin entered into a contract directly connected to Illinois and breached his contractual duties, the effects of which Groupon felt in Illinois." (Complaint, Dkt. No. 1, at ¶ 8.) The Complaint contains no further allegations purporting to establish jurisdiction over Mr. Shin other than one sentence that reads "Shin further acknowledged and represented that he has substantial material connections to Illinois by way of his employment with Groupon." (*Id*. at ¶ 57.) Groupon's bare factual allegations obscure a basic truth: Groupon hired a Washington resident, entitled to the protections of Washington noncompete law and without meaningful connection to Illinois and—now that he has quit working at Groupon seven months later—seeks to haul him halfway across the country, strip him of those protections, and litigate how he must earn a living back in Washington state. The facts set out below, each detailed in the accompanying sworn Declarations, provide a much more fulsome record for the Court to assess whether there is jurisdiction over Mr. Shin. In the face of these largely irrefutable facts, Groupon is unable to sustain its burden of establishing the Court's jurisdiction over Mr. Shin.

## III. ARGUMENT

### A. RCW 49.9.62 Controls, and Restrictive Covenants with Choice of Law and Choice of Forum Clauses are Expressly Forbidden

RCW 49.62 effectuates major reform of restrictive covenant law, including noncompetition covenants. *See* RCW 49.62.010(4). The Washington legislature specifically found that such covenants may be unreasonable contracts of adhesion, including because they limit workforce mobility that is important to Washington's economic growth and development. RCW 49.62.005 Because of those findings, the Legislature instructed the courts to construe the statute "liberally for the accomplishment of its purposes." RCW 49.62.110. RCW 49.62 imposes minimum

requirements, and covenants that fail to meet those minimum standards are *void and unenforceable*. The legislature re-wrote the rule of reasonableness, imposing a statutory penalty and shifting attorney fee recovery to employees subjected to overly broad covenants and covenants that fail to comply with statutory restrictions.

*RCW 49.62 prohibits an employer from requiring employees to agree to out-of-state choice of law and choice of forum clauses, circumventing the statute's protections for workers*. For "Washington-based" workers, an employer is prohibited from using a choice of law clause that "deprives the employee or independent contractor of the protections or benefits of this chapter" or "to adjudicate a noncompetition covenant outside of this state." 49.62.050(2).

Since Mr. Shin's contract is unenforceable under Washington law, the Illinois choice-of-law provision cannot be enforced by an Illinois court (or, indeed, by any court). A choice of law provision in a contract that would violate the express public policy of a state as embodied in its statutes, is unenforceable. A choice of law clause is unenforceable if it is unconscionable, immoral, illegal, contrary to public policy, or injures the public welfare. *Thomas v. Guardsmark Inc.,* 381 F.3d 701, 705–706 (7th Cir.2004); *Jackson v. Payday Fin*., LLC, 79 F. Supp.3d 779, 785 (N.D. Ill. 2015); *Hengel v. Asner,* 433 F. Supp. 825 (E.D. Va. 2021) (choice-of-forum unenforceable since it would violate public policy of Virginia against usurious loans); *Howting-Robinson Assocs., Inc. v. Bryan Custom Plastics*, 65 F. Supp.2d 610, 613 (E.D. Mich. 1999) ("Accordingly, the application of Ohio law, in this context, would be violative of a specific legislatively expressed public policy of the State of Michigan and therefore should not be enforced. The Michigan Legislature intended for its citizens to receive greater protections in the collection of their sales commissions, and this Court is constrained to agree. Accordingly, the MSRA is applicable to this matter. The only potential problem with this argument is that it is the forum state's public policy that is usually at issue.").

Here, it cannot be disputed that Mr. Shin, who resided in Washington for the entirety of his employment with Groupon, is a "Washington-based" employee. (Shin Declaration at ¶¶ 3-5; Complaint, Dkt. No. 1, at ¶ 23.) Groupon acknowledged that the Western District of Washington

recently held that a noncomplete clause such as Groupon's, requiring application of out-of-state law in an out-of-state forum, violates RCW 49.62 and therefore is void and unenforceable. *See CVS Pharmacy, Inc. v. Brown,* Case no. C21-306 MJP, 2021 U.S. Dist. LEXIS 49450 at * 3-4 (W.D. Wash., Mar. 16, 2021) (holding that the "Washington Noncompete Act renders CVS's noncompete unenforceable because it requires Brown to 'adjudicate a noncompetition covenant outside of' Washington'"). (*See* Groupon TRO, Dkt. No. 6, at p. 31 of 44.)

Groupon asserts that there is no practical difference between Washington and Illinois law, and it is not trying to deprive Mr. Shin of the benefits of the Washington Noncompete Act, but Groupon is wrong. The Washington Statute does not provide for a comparative analysis to determine whether another state's law is identical so can be applied; rather, the statute explicitly prohibits depriving a Washington-based employee of the benefits of Washington's law. But even if it did allow for such an approach, Washington provides unique protections. among other things, the Washington Noncompete Act gives Mr. Shin the right to recover his actual or statutory damages, and his reasonable attorneys' fees, if any non-compete violates the Act—as Groupon's does here. *See* RCW 49.62.080(2). The Act also provides Mr. Shin the right to recover his actual or statutory damages, and his reasonable attorneys' fees if the court reforms, rewrites, modifies, or only partially enforces any non-compete. *See* RCW 49.62.080(3). And—further reflecting Washington state's strong public policy against covenants like the one Groupon seeks to enforce here—the Act empowers the Washington Attorney General to investigate Groupon for its improper restraint of trade. *See* RCW 49.62.080(1).[3]

Groupon has no answer to its flagrant violation of Washington law, hauling Mr. Shin into Court in Illinois, asserting that Illinois law applies. The closest it comes is to assert that the parties chose Illinois to govern their contractual rights and duties. (Complaint, Dkt. No. 1, at ¶ 57.) But RCW 49.62 explicitly prohibits an employer from doing just that. Washington made it a condition

---

[3] Illinois has none of these remedies, although it too is changing. Effective January 1, 2022, employers will need to comply with new amendments to the Illinois Freedom to Work Act (the Act), and prevailing employees ""shall recover from the employer all costs and reasonable attorneys' fees." But even those soon to be implemented protections are not as strong as existing Washington law.

of hiring its residents that an employer *not* include a foreign choice of law or choice of forum clause in a noncompete. Applying Illinois law would be contrary to a fundamental Washington policy that expressly prohibits choice of law covenants to enforce noncompete covenants. *See CVS Pharmacy, Inc. v. Brown,* 2021 U.S. Dist. LEXIS 49450 at *4.

The Seventh Circuit has adopted the Restatement (Second) of Conflict of Laws § 187[4] when resolving conflict of laws issues. *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132–33 (7th Cir. 1990). The *Wright* Court explained that "following the Restatement, however, permits state public policy to override the contractual choice of law only if the state has a materially greater interest in the litigation than the contractually chosen state." *Id*. Here, Washington has a materially greater interest in litigating the matter under RCW 49.62. Groupon seeks to enforce performance of a noncompetition agreement in Illinois against a Washington employee in order to stop him from working for another company in Washington, in direct violation of RCW 49.62.050. For his entire employment with Groupon, Mr. Shin was in Washington. Mr. Shin interviewed for the position, negotiated his contract, signed his contract, and worked in Washington, where he lives. (Shin Declaration at ¶¶ 2-5.) Applying Illinois law would be contrary to a fundamental Washington policy that expressly prohibits choice of law covenants to enforce noncompete covenants. *See id*.; *see also CVS Pharmacy, Inc. v. Brown,* 2021 U.S. Dist. LEXIS 49450 at *4.

Groupon attempted to evade Washington law first by requiring Mr. Shin to sign a noncompete with forum and choice of law clauses that violate RCW 49.62, and second, by filing the instant action in the Northern District of Illinois and asserting that Illinois law applies. Groupon's actions directly contradict the letter of RCW 49.62 and the liberal construction the Washington Legislature requires. Groupon should be precluded from attempting to enforce the restrictive covenant outside of Washington and under Illinois law.

---

[4] The law of the state chosen by the parties will not govern their contractual rights and duties if the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2)(b) (1971).

**B.   This Court Should Dismiss Groupon's Complaint Because Groupon Cannot Establish Personal Jurisdiction**

Groupon must comply with Washington state law because it hired a Washington state employee who worked in Washington. Groupon's attempt to enforce its noncompete clause outside of the state of Washington is invalid.  RCW 49.62 invalidates the choice of law provision in the employment agreement and invalidates any claim of personal jurisdiction over Mr. Shin beyond the borders of Washington state.  The conclusory allegation that Mr. Shin's employment contract with Groupon (which is incorporated in Delaware) created sufficient contacts with the state Illinois, is insufficient to establish a prima facie basis for jurisdiction, either general or specific. (Complaint, Dkt. No. 1, at ¶ 8.)  Groupon has not met its burden to establish personal jurisdiction over Mr. Shin in the Northern District Court of Illinois.

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party.  *Id*.  Once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Montel Aetnastak, Inc., v. Miessen*, 998 F.Supp.2d 694, 707 (N.D. Ill. 2014) (citing *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).  In ruling on a Rule 12(b)(2) motion to dismiss, the Court may consider matters outside the pleadings.  *See id*.[5]

A federal court sitting in diversity in Illinois has personal jurisdiction over a defendant if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,* 536 F.3d 757, 760–61 (7th Cir. 2008).  The Illinois long-arm statute contains a catch-all provision that "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 714 (7th Cir. 2002) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 940 (7th Cir. 2000)).  The Seventh Circuit has found "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal

---

[5] When a defendant challenges facts in a pleading through a declaration, "the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Leong v. SAP America, Inc.*, 901 F. Supp. 2d 1058, 1061 (N.D. Ill. Oct. 3, 2012) (citing *Purdue Research Found.*, 338 F.3d at 783).

jurisdiction." *Montel Aetnastak, Inc.*, 998 F.Supp.2d at 708 (quoting *Hyatt Int'l Corp. v. Coco,* 302 F.3d at 714). A "federal court has personal jurisdiction only if a court of the state in which the federal court sits would have jurisdiction." *Leong v. SAP Am., Inc.*, 901 F.Supp.2d 1058, 1062 (N.D. Ill. 2012) (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010)).

"[T]he Court must determine whether [defendant has] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1062 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (explaining that "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being hailed into court' there") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). The Supreme Court has distinguished between general and specific personal jurisdiction. *Hyatt Int'l,* 302 F.3d at 713 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 nn. 8, 9 (1984)). General jurisdiction exists where a defendant has "continuous and systematic" contacts with the forum state. *Id.* Specific jurisdiction exists for "controversies that arise out of or are related to the defendant's forum contacts." *Id.* Groupon cannot establish either general or specific jurisdiction.

### 1. Groupon Cannot Establish General Jurisdiction

To determine whether the contacts of the defendant are sufficiently systematic and continuous, courts analyze the nature as well as the substantiality of the defendant's contacts with the forum state, such as whether and to what extent the defendant conducts business in the forum state. *See Montel Aetnastak, Inc.*, 998 F.Supp.2d at 709 (citing *Helicopteros Nacionales,* 466 U.S. at 416–18). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010). Groupon alleged that "Shin entered into a contract directly connected to Illinois." (Complaint, Dkt. No. 1, at ¶ 8.) The Complaint failed to mention that Mr. Shin signed the employment contract where he was domiciled in Washington. (*See* Shin Declaration ¶ 3; Complaint, Dkt. No. 1, at ¶ 23.) The Complaint contains no additional allegations purporting to

establish jurisdiction over Mr. Shin besides one sentence that reads "Shin further acknowledged and represented that he has substantial material connections to Illinois by way of his employment with Groupon." (Complaint, Dkt. No. 1, at ¶ 57.)

These allegations fall far short of providing a sufficient basis for the exercise of general jurisdiction. Mr. Shin resided in Washington for the entirety of his employment. (*See* Shin Declaration ¶¶ 2-5). As the Global Head of Advertising and Ancillary Revenue, Mr. Shin's responsibilities were not based out of Illinois or connected directly to Illinois. During his employment with Groupon, he never traveled to Illinois or physically entered the state. (*See id*. at ¶¶ 6, 10.) The majority of his communications were directed to supervisors and subordinates in Washington and California, to develop the business outside of Illinois. The communications with supervisors in Illinois were logistical "check in" meetings. (*See* Shin Declaration ¶ 6.) Back-office personnel management (Human Resources support) was located in Florida, not Illinois. (*See id*.) Since his resignation in October, and in light of his current employment with Yelp as of November 15, 2021, he continues to have no meaningful contact with Illinois. Mr. Shin's contacts with Illinois are therefore not "continuous or systematic" at the time of the events giving rise to this suit. The high threshold for general jurisdiction has not been met because Mr. Shin's contacts with Illinois are not "sufficiently extensive and pervasive to approximate physical presence." *Tamburo,* 601 F.3d at 701. This Court does not have general jurisdiction over Mr. Shin.

### 2. Groupon Cannot Establish Specific Jurisdiction

Specific jurisdiction exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l,* 302 F.3d at 713. "[S]pecific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir. 1995)). The Seventh Circuit has identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have

purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Savis, Inc. v. Cardenas*, 2018 WL 5279311 at *5 (N.D. Ill. Oct. 24, 2018) (quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted)). "The Seventh Circuit has held that in a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis." *Montel Aetnastak, Inc.*, 998 F.Supp.2d at 710 (quoting *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1278) (emphasis in original).

Here, as detailed above, the vast majority of the conduct giving rise to Groupon's claims occurred outside of Illinois. Mr. Shin signed the contract giving rise to this dispute in Washington, Mr. Shin lived and worked in Washington for the entirety of his employment with Groupon, and he communicated with supervisors and subordinates that resided in Washington state. (*See* Shin Declaration ¶¶ 2-6.) Mr. Shin did not purposefully avail himself of the privilege of conducting business in Illinois or purposefully direct his activities at the state. Mr. Shin conducted his Groupon work entirely in the state of Washington. (*See id*.) Mr. Shin foresaw and anticipated that any complaints regarding his employment would originate in the Washington-based Groupon office (*See id*. at ¶ 7), as Washington law requried. Groupon's information that it alleges he had possessed by virtue of his employment was likewise located on devices all located in Washington, which is where he removed all such information from his personal devices before starting at Yelp to ensure that he had no alleged Groupon confidential or proprietary information. (*See id*. at ¶¶ 12-15.)

Because personal jurisdiction can be established only based on "[t]he defendant's conduct in relation to the forum state, [and] not unilateral actions of the plaintiff," a defendant-employee's human resources connections with the forum state are insufficient to establish personal jurisdiction. *Commissioning Agents, Inc. v. Long*, 143 F.Supp.3d 775, 788-89 (S.D. Ind. 2015) (citing *Protective Ins. Co. v. Cody,* 882 F.Supp. 782, 786–87 (S.D. Ind. 1995) (quoting *Dehmlow*

*v. Austin Fireworks,* 963 F.2d 941, 946 (7th Cir. 1992)). Mr. Shin's working relationship centered around the Groupon's regional office on the West Coast rather than the Groupon's headquarters in Illinois. (*See* Shin Declaration ¶¶ 2-7.)

Groupon has cited *Liqui-Box Corp. v. Scholle IPN Corp.*, No. 1:19-cv-4069, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021); however, this case is distinguishable. Significantly, in *Liqui-box*, defendant Voelki travelled to Illinois on ***at least 26 occasions***. *Id.* at *6. Mr. Shin never travelled to Illinois during his tenure at Groupon. (*See* Shin Declaration ¶ 6.) Additionally, defendant Voelki had worked for Scholle for numerous years, and had obtained "trade secrets." *Luqui-Box*, 2021 WL 5006692 at *6. Mr. Shin worked for Groupon for less than seven (7) months. Any alleged proprietary information acquired during Mr. Shin's tenure has been removed from all devices. Mr. Shin offered Groupon a right of inspection of the devices to confirm no confidential information remained. This suit followed instead. (*See* Shin Declaration ¶¶ 2-15.) Groupon's anticipated reliance on *Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *1 (N.D. Ill. Oct. 7, 2020), is also misplaced. The choice of law and choice of forum provisions at issue in that case had not been codified by the legislature as illegal, as they have in the state of Washington. *Id.* at *1-2; *see also* RW 49.62.050. Therefore, the analysis surrounding choice of law is immaterial to this case. Consequently, Groupon's alleged injury has not arisen from the any Illinois-related activities, and the dispute centers on Groupon's noncompete clause and its unenforceability under Washington state law.

Further, the exercise of jurisdiction over an out-of-state defendant does not comport with traditional notions of fair play and substantial justice. *See Int'l Shoe Co.,* 326 U.S. at 316; *Felland,* 682 F.3d at 677–78; *Tamburo,* 601 F.3d at 702, 709–10. The following factors are relevant in making this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.*

To assert personal jurisdiction over Mr. Shin, who is a Washington state employee safeguarded by RCW 49.62, would directly contravene Washington law. Mr. Shin directed no contact to Illinois, never visited Illinois, and never purposefully availed himself to Illinois since the State of Washington had statutorily prohibited Groupon from requiring him to litigate any dispute over his non-compete in Illinois and under Illinois law. *See* Shin Declaration ¶¶ 2-7; RCW 49.62. Groupon's alleged injuries arose out of an illegal covenant that is unenforceable in the state of Washington. *See* RCW 49.62.050. Exercising personal jurisdiction over Mr. Shin would offend traditional notions of fair play and substantial justice.

Because Groupon's claims arise out of the general relationship between the parties rather than directly out of the specific contacts between Mr. Shin and the forum state and based on illegal forum and choice of law clauses, Groupon cannot meet the threshold for specific jurisdiction. Therefore, the Court does not have specific jurisdiction over Mr. Shin.

## IV. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO TRANSFER VENUE TO WASHINGTON PURSUANT TO 28 U.S.C. § 1404

If the Court is not inclined to dismiss the Complaint for lack of jurisdiction or venue, the Court nonetheless should transfer the action, pursuant to 28 U.S.C. § 1404, to the Western District of Washington where venue is more appropriate.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 34 (1988). By enacting section 1404(a), Congress intended to authorize the easy transfer of action to a more convenient forum, often as a simple housekeeping measure. *See Dusen v. Barrack*, 376 U.S. 612, 636-37 (1964). The underlying premise of section 1404(a) is that "courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of section 1404(a)." *In re Volkswagen of AM., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (*citing Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955)). To cure such problems, district courts have broad discretion on deciding whether to transfer an action to another better suited

district under section 1404(a).  *Id.* at 311; *see also Tice v. American Airlines, Inc.,* 162 F.3d 966, 974 (7th Cir.1998) (explaining that district courts receive substantial degree of deference to decide whether transfer is appropriate).  The Seventh Circuit considers the interests of justice and convenience in evaluating a transfer venue.  *See Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.,* 626 F.3d 973, 977-79 (7th Cir. 2010).  A showing of harassment and vexation is not necessary to support a district court's decision to transfer venue.  *See Dairy Industries Supply Ass'n v. La Buy*, 207 F.2d 554 (7th Cir. 1953).

**A.**     **Washington Has Personal Jurisdiction Over Groupon, Subject-Matter Jurisdiction Over this Controversy, and is the More Convenient Venue**

Congress recognized that in some cases like this one, a plaintiff could attempt to gain an unfair advantage over a defendant by abusing federal jurisdiction and venue rules. In other words, if it were not for § 1404(a), plaintiffs could file a lawsuit in the most inconvenient, burdensome, and oppressive venue for the defendant, and the defendant would then be forced to bear the burden and cost of the unreasonable venue without recourse.  Congress decided to forbid this kind of forum shopping and provide district judges with the power to transfer cases to a more convenient forum, even if jurisdiction and venue were proper in the forum initially chosen by the plaintiff.

As set forth above, to be subject to personal jurisdiction in a forum, a defendant must have sufficient "minimum contacts" with that forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. State of Wash, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  The familiar "minimum contacts" test requires that a defendant purposely engage in some significant activity within a state such that he could reasonably anticipate being hailed to court there.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  Furthermore, the test requires that the asserted cause of action "arises out of or has a substantial connection with that activity." *Hanson v. Denckla*, 357 U.S. 235, 250-253 (1958).  This test is satisfied here.  Mr. Shin lived in Washington and worked in Washington for the entire duration of his employment with Groupon.  (*See* Shin Declaration

¶¶ 2-5.)[6]  The claims asserted by Groupon's complaint arise directly out of its contacts with Mr. Shin in Washington.  Accordingly, the exercise of that court's jurisdiction would not offend traditional notions of fair play and substantial justice.

If, as Groupon asserts, this Court has subject-matter jurisdiction then the Western District of Washington does as well.

Federal law permits a plaintiff to bring a civil action in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  As Groupon acknowledged, Mr. Shin lived and worked in Seattle, Washington for the entirety of his employment.  (Complaint, Dkt. No. 1 at ¶¶ 5, 23; *see also* Shin Declaration at ¶¶ 2-5.)  Mr. Shin announced his resignation in King County, Washington, and started his employment with Yelp in King County, Washington.  (Shin Declaration at ¶¶ 8, 11.)  The Western District of Washington encompasses that county and is therefore a proper venue for this action.

**B.**     **The Interests of Justice Dictates Transfer to Washington District Court**

The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system.  *Research Automation, Inc.*, 626 F.3d at 978 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 626–27 (1964)).  For this element, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, *see Chicago, Rock Island & Pacific Railroad Co. v. Igoe,* 220 F.2d 299, 303 (7th Cir. 1955); each court's relative familiarity with the relevant law, *Van Dusen,* 376 U.S. at 645; the respective desirability of resolving controversies in each locale, *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.,* 200 F.Supp.2d 941, 946 (N.D. Ill. 2002); and the relationship of each

---

[6] Several other recent cases have, in fact, found jurisdiction in the remote employee's state where the employer more proactively engages the employee.  *See Cossart v. United Excel Corp*., 804 F.3d 13 (1st Cir. 2015) (finding personal jurisdiction over Kansas employer that recruited a Massachusetts resident for a sales employee position to conduct sales in Massachusetts); *Hall v. Rag-O-Rama, LLC,* 359 F.Supp.3d 499, 510 (E.D. Ky. 2019) (finding that the employer purposely availed itself where it "aggressively sought out" the employee to work in Kentucky for the company and provided computer equipment to the employee); *Stuart v. Churn LLC,* 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding purposeful availment where the New York employer hired the employee knowing that he would work remotely from his home, provided an allowance for office expenses, and knew the employee was working to expand the company's business in North Carolina); *Williams v. Preeminent Protective Servs., Inc.,* 81 F.Supp.3d 265, 272 (E.D.N.Y. 2015) (finding that the employer availed itself in the forum state when it hired plaintiff to conduct their marketing and communications in New York).

community to the controversy, see *Hanley v. Omarc, Inc.,* 6 F.Supp.2d 770, 777 (N.D.Ill.1998). *Research Automation, Inc.*, 626 F.3d at 978. The interest of justice may be determinative and warranting transfer even where the convenience of the parties and witnesses point toward the opposite result. *Id.* (citing *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–21 (7th Cir. 1986)). Here, the interests of justice factors favor sending this case to Washington district court.

- <u>Familiarity with Governing Law</u>: Washington law governs this dispute. *See* RCW 49.62. Washington Courts are more familiar with Washington law than Illinois Courts. That is particularly true considering that the law here is relatively new, and should be applied by courts in the state responsible for the law.

- <u>Respective Desirability of Resolving Controversies in Each Locale</u>: Washington has a stronger local interest in hearing this case because it concerns Washington law, Mr. Shin resides in Washington and the gravamen of the breach of contract claim concerns enforceability of a noncompete under RCW 49.62, and public policy rooted in RCW 49.62 explicitly states that an out of state employer cannot seek enforcement of restrictive covenants outside of Washington state. Again, Groupon seeks to restrict a Washington resident's future employment in Washington.

- <u>Relationship of Each Community to the Controversy</u>: RCW 49.62.050 expresses a bold and robust public policy against out-of-state forum selection clauses and choice of law clauses to enforce noncompetition agreements or restraints on trade explicitly prohibiting them for Washington employees. *Id.* In contrast, Illinois has no such statutory declaration of public policy in favor of protecting employees from choice of law covenants in order to protect against lawsuits beyond their domicile. *See* Ill. St. Chap. 820 § 90/5, *et seq.* Nor does Illinois have a deterrence provision permitting, let alone mandating (as Washington's statute does), attorney's fees, costs, or statutory penalties to discourage employers from drafting and attempting to enforce void or overly broad covenants. *See id.* This factor weighs heavily in favor of Washington as a venue.

- <u>Docket Congestion and Likely Speed to Trial</u>: As of June 2021, the average civil case docket per Judge is approximately 363 cases in the Northern District of Illinois, with an average of 48.1 months from filing to trial. The average civil case docket for the Western District

of Washington is 402, but with an average of 22.2 months from filing to trial.[7] This factor weighs in favor of transfer to Washington.

**C.     Convenience Necessitates Transfer to Washington District Court**

With respect to convenience, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. *Research Automation, Inc.*, 626 F.3d at 978 (citing *Schumacher v. Principal Life Insurance Co.,* 665 F.Supp.2d 970, 977 (N.D. Ind. 2009); *Jaramillo v. DineEquity, Inc.,* 664 F.Supp.2d 908, 913–15 (N.D. Ill. 2009)). Other related factors include the location of material events and the relative ease of access to sources of proof. *Id.* (citing *Sassy, Inc. v. Berry,* 406 F.Supp.2d 874, 876–77 (N.D. Ill. 2005); *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.,* 42 F.Supp.2d 821, 833–34 (N.D. Ill. 1999)).

- <u>Availability of and Access to Witnesses</u>: There were two product managers assigned to advertising that Mr. Shin frequently worked with, as well as the VP of Engineering, and the main Director of Advertising. All four were Seattle based. (Shin Declaration at ¶ 3.) Third-party witnesses from Mr. Shin's current employer, Yelp, will provide testimony on the differences in positions held at Groupon versus Yelp; they are located predominantly in San Francisco, California, not Illinois. (*See id.* at ¶¶ 4-16.)

- <u>Each Party's Access to and Distance from Resources in Each Forum and Location of Material Events and the Relative Ease of Access to Sources of Proof</u>: The dispute centers on Mr. Shin's human capital and knowledge. Groupon's attempt to enforce the noncompete covenant because of his employment with Yelp centers on Mr. Shin's expertise in advertising and any proprietary documentation or materials of Groupon in Mr. Shin's possession, custody, or control. (*See e.g.*, Complaint, Dkt. No. 1.) As such, the "resources" giving rise to the dispute reside with Mr. Shin in Washington.

---

[7] *United States District Courts – National Judicial Caseload Profile*, FEDERAL COURT MANAGEMENT STATISTICS, June 30, 2021, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.

The Washington legislature enacted RCW 49.62 so this exact scenario would not happen. Accordingly, in the spirit of 28 U.S.C. § 1404(a), this Court should further the interests of justice and convenience by transferring this action to the Western District of Washington.

## V. REQUEST TO VACATE TRO

A temporary restraining order, as opposed to a preliminary injunction, is sought and heard on an emergency basis. The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and consideration of a motion for a preliminary injunction. *Faust v. Vilsack*, 519 F.Supp.3d 470, 474 (E.D. Wis. June 10, 2021) (citing *Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*, 964 F.2d 599, 600 (7th Cir. 1992); *see also Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*, 833 F.Supp.2d 870, 877 (June 21, 2011) (denying TRO because "if this Court were to enter a TRO it would in fact alter the status quo rather than maintain it to prevent harm to the parties").

But as of *Monday, November 15, 2021, Mr. Shin had started his employment with Yelp*. (*See* Wing Declaration at ¶ 4). *Groupon seeks to alter the status quo* via an extraordinary remedy, in pleadings it served the day before Mr. Shin's employment begin at Yelp, (Shin Declaration at ¶¶ 11, 17), in an emergency order entered *after* he had already begun working for Yelp. Accordingly, Groupon bears the heightened burden of proving an immediate and irreparable injury, loss, or damage. *See e.g., Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006) (explaining "that Judge McConnell is arguing for making it harder to issue preliminary injunctions that change the status quo").

Importantly, this is not a case where a defendant employee unceremoniously quit and took materials out the door. Mr. Shin gave Groupon two weeks' notice of his intent to depart. Further, Mr. Shin proactively and voluntarily tried to address any concerns that Groupon supposedly has about alleged confidential or proprietary information by removing all such information from his personal devices, and swore a declaration stating as much. (Shin Declaration at ¶ 9.) And yet, despite continuing to grant Mr. Shin unfettered access to its internal systems, Groupon waited until his very last day to launch this action. Then Groupon waited some more—in a notable contrast to

Mr. Shin's two weeks advance notice—until the very last minute to serve its voluminous Complaint and an oversized memo in support that is more than double the page limit set forth in Local Rule 7.1. (Indeed, Groupon did not email Mr. Shin's counsel the materials, or alert counsel to the lawsuit, until after Mr. Shin's counsel wrote to Groupon's counsel on Sunday afternoon to memorialize a conversation they had had two days before, Wing Declaration at ¶ 3.) Mr. Shin intends to respond and oppose Groupon's motion for TRO and request for over-size briefing. Mr. Shin respectfully requests this Court to vacate its Order granting Groupon's TRO. (Dkt. No. 11.)

<p style="text-align:center;">**VI.**     <u>**CONCLUSION**</u></p>

Mr. Shin respectfully requests this Court to dismiss Plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(2). Therefore, In the alternative, Mr. Shin requests a transfer of venue pursuant to 28 U.S.C. § 1404. Either way, this Court should vacate the TRO.

Respectfully submitted this 17th day of November, 2021

<div style="margin-left:45%;">

*/s/ Jeffrey L. Taren*_____

Jeffrey L. Taren, Illinois BAR#2796821

MacDONALD HOAGUE & BAYLESS

705 Second Avenue, Suite 1500

Seattle, WA 98104

Phone: (206) 622-1604

Email:    jeffreyt@mhb.com

Attorneys for Defendant Sung Shin

</div>