IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROUPON, INC. ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21-cv-06082 |
| ) | |
| v. ) | Honorable Judge Charles P. Kocoras |
| ) | |
| SUNG SHIN, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF SUNG SHIN

I, Sung Shin, declare the following:

1. I am the defendant in the above-captioned case. I have read and reviewed Plaintiff Groupon's pleadings (Verified Complaint, Emergency Temporary Restraining Order ("TRO"), and accompanying documents). (*See* Dkt. Nos. 1, 4, 5, 6.) I hereby give this declaration in support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.

2. I interviewed with management at Groupon via satellite from my domicile in Washington state. During the interview process, the majority of the interviewers were Illinois based, but not all.

3. I signed the employment contract in Seattle, Washington. I began my employment with Groupon on or about March 23, 2021. My position at Groupon was Vice President, Global Head of Advertising and Ancillary Revenue. At the time I started working at Groupon, I had over 25 years of experience in advertising, marketing, sales, and product management. There were two product managers assigned to advertising that I frequently worked with, as well as the VP of Engineering, and the main Director of Advertising. All four were Seattle based.

-2-

4. The entirety of my employment with Groupon took place in my domicile in Washington State via "remote" work. In other words, my position was 100% remote.

5. At the time of hire, and throughout my employment, I was located in Seattle, Washington and Grapeview, Washington, which is where I was and have been domiciled.

6. When I was employed with Groupon, I never physically entered the state of Illinois. I did have remote meetings with other employees of Groupon who lived in Illinois. However, my duties as the Global Head of Advertising and Ancillary Revenue were not based out of Illinois or connected directly to Illinois. The majority of my communications were directed to supervisors and subordinates in Washington and California, to develop the business outside of Illinois. The communications with supervisors in Illinois were logistical "check in" meetings. Additionally, the back-office personnel management (Human Resources support) occurred in Florida, not Illinois.

7. In my experience with Groupon, I foresaw and anticipated that any complaints regarding my employment would originate in the Washington-based office.

8. I gave my notice of resignation on or about October 28, 2021 in King County, Washington, and I stated that I would be going to Yelp.

9. At the time of my notice of resignation, I had worked at Groupon for approximately seven (7) months. I told Groupon several times during the two weeks' advance notice of my intent to resign, in addition to my signing a declaration, that I did not take any proprietary information. I offered an inspection of my personal devices, at Groupon's expense, as needed.

10. Since the end of my employment with Groupon, I have not had any contact with people who reside in Illinois. Since the end of my employment with Groupon, I have not had any sales in Illinois. Since the end of my employment with Groupon, I have not have conducted any business in Illinois.

11. On Monday, November 15, 2021, I started my employment with Yelp in King County, Washington. On Tuesday, November 16, 2021, I returned my sign-on bonus to Groupon. At no time did I ever refuse to pay back the bonus.

12. My role at Groupon was as General Manager of the advertising business. I managed business operations and driving revenue. The Product and Technology Departments were not directly owned or supervised by me. The Product and Technology Departments were within the technology organization, which was under a completely different leader. At Yelp, I will be managing a Product Management team. At Yelp, Product Management is a technological role. Specifically, I will manage Yelp Audiences and Instore measurement, of which there is no comparable department or responsibilities at Groupon. I never held a role and/or responsibilities at Groupon that related to a technical role.

13. To the best of my knowledge, I never once saw a technical design document while working at Groupon. The Product and Engineering departments considered me to be accountable to the business side of Groupon. Therefore, there was never a need for me to view or acquire confidential or proprietary information or trade secrets.

14. Additionally, the platform and roadmap of Groupon were so basic, I cannot think of anything highly technical that would be legitimately considered trade secrets within our marketing and advertising industry. This basic roadmap was even referenced by Groupon executives and management as following an "eCommerce blueprint" that multiple eCommerce advertising platforms had implemented previously and that I had brought over through my decades of experience in the advertising industry as standard best practices. Moreover, based upon my training, knowledge and experience, Groupon was so far behind the curve that there was no "special sauce" that we could build until the foundational platform was built. That foundational platform does not require a highly technical expert to build. Most of the technology can be bought (a data platform, and email advertisement server). I believe that the knowledge that I brought to Groupon is considered "best practices" in the industry.

15. I herein aver that I have not taken any information or materials from Groupon, and that my new role renders my knowledge about Groupon's business unhelpful and generally irrelevant, particularly since my role is in a completely new technical department, to which Groupon has no equivalent, and due to the material differences to the business models between both companies. Groupon's information that it alleges I had possessed by virtue of my employment was located on devices all located in Washington. I removed all such information from my personal devices before starting at Yelp to ensure that I had no alleged Groupon confidential or proprietary information.

16. To the best of my knowledge, Yelp's headquarters are in San Francisco, California. The team that I manage is distributed across Hamburg, Germany, and New York, and not in Illinois. My employment with Yelp is also remote, and I complete my work for Yelp in Grapeview, Washington.

17. As of the Court's Order granting Groupon's Temporary Restraining Order, Dkt. No. 11, I will refrain from working at Yelp.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated this 17th day of November, 2021, at Grapeview, Washington.

*Sung Shin*
Sung Shin (Nov 17, 2021 19:31 PST)
Sung Shin