**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GROUPON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-06082 |
| | ) | |
| v. | ) | Honorable Judge Charles P. Kocoras |
| | ) | |
| SUNG SHIN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SUNG SHIN'S RESPONSE IN OPPOSITION TO PLAINTIFF**
**GROUPON'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ............................................................................1

II.     STATEMENT OF FACTS.............................................................3

III.    ARGUMENT....................................................................................5

      A.      Groupon Failed to Meet Its Burden for a TRO....................................5

            1.      Groupon Cannot Establish It is Likely to Prevail
                    on the Merits as to Any of Its Claims ........................................7

                  a.      The non-competition agreement is illegal and
                          unenforceable under both Washington Law and
                          Illinois Law (for different reasons).............................................7

                        (i)      Yelp is not a Meaningful Competitor of Groupon ........9

                              (a)      Yelp's Core Business is as an Open
                                    Social Networking Review Site .....................10

                            (b)      In Contrast, Groupon's Core Business
                                  is Coupons ......................................10

                            (c)      Differences Between the Companies .............10

                    b.      Plaintiff has not alleged any facts showing that
                            Defendant has violated any of the terms of the
                            restrictive covenant, even if it was enforceable .....................13

                    c.      Lack of Geographic Scope is Unreasonable ...........................14

                    d.      Groupon has Offered No Justification for an
                          18-month Duration ................................................14

                    e.      The Scope of the Non-Compete is Unreasonable ...................15

             2.      Under Illinois Law, the Non-Compete is Invalid
                      for Lack of Adequate Consideration Since Defendant
                      Worked at Groupon for Less Than Two Years ...................15

i

a.     Groupon is Not Likely to Succeed on its Claim for
        Violation of the Illinois Trade Secrets Act (ITSA) or
        Defend Trade Secrets Act (DTSA) ..........................................17

       (i)     Groupon has Failed to Identify Any Trade Secrets,
               Let Alone Any that Mr. Shin Possesses or Might
               Use in his Yelp Role ....................................................18

               (a)     Groupon has not Alleged Actual
                       Misappropriation .............................................20

               (b)     Groupon Fails to Show that the Doctrine
                       of Inevitable Disclosure Should Apply
                       Here.................................................................20

   3.     Groupon has Failed to Demonstrate Irreparable Harm .......................24

   4.     Groupon has an Adequate Remedy at Law ..........................................25

   5.     The Balance of Hardships Favor Mr. Shin ..........................................27

   6.     The Issuance of the TRO Harms the Public Interest ............................28

IV.     CONCLUSION..........................................................................................29

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*American Hosp. Supply v. Hospital Prod., Ltd.,*
    780 F.2d 589 (7th Cir.1986) ................................................................................ 27
*AMP Inc. v. Fleischhacker,*
    823 F.2d 1199 (7th Cir. 1987) ............................................................................ 21
*Associated Underwriters of Am. Agency v. McCarthy,*
    356 Ill. App.3d 1010, 826 N.E.2d 1160, 292 Ill. Dec. 724 (1st. Dist. 2005) .......................... 18
*Bally Manufacturing Corp. v. JS & A Group, Inc.,*
    88 Ill.App.3d 87 (1980) ...................................................................................... 26
*BDO Seidman v. Hirshberg,*
    712 N.E.2d 1220 (1999) ...................................................................................... 9
*Bridgeview Bank Grp. v. Meyer,*
    2016 IL App (1st) 160042, , 49 N.E.3d 916 .......................................................... 6
*Brown and Brown, Inc. v. Mudron,*
    379 Ill.App.3d 724, 887 N.E.2d 437 (3d. Dist. 2008) ...................................... 16, 17
*Brunner & Lay, Inc. v. Chapin,*
    29 Ill.App.2d 161, 172 N.E.2d 652 (1st Dist. 1961) .......................................... 28
*Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.,*
    378 Ill.App.3d 437 (2007) .................................................................................. 15
*ChemStation of Seattle, LLC v. Donahoe,*
    2018 WL 3625781 (Wash. App. July 30, 2018) ............................................. 9, 14
*Cintas Corp. v. Perry,*
    No. 03 C 8404, 2004 WL 2032124 (N.D. Ill. Aug. 20, 2004) ............................... 7
*Composite Marine Propellers, Inc. v. Van Der Woude,*
    962 F.2d 1263 (7th Cir. 1992) ............................................................................ 18
*Computer Associates Intern. v. Quest Software, Inc.,*
    333 F.Supp.2d 688 (N.D.Ill. 2004) ................................................................ 24, 26
*CVS Pharmacy, Inc. v. Brown,* case no. C21-306 MJP,
    2021 U.S. Dist. LEXIS 49450 at * 3-4 (W.D. Wash., Mar. 16, 2021) ............... 8, 29
*Danjaq LLC v. Sony Corp.,*
    50 U.S.P.Q. 2d 1638 (C.D. Cal. 1999) .............................................................. 24
*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.,*
    616 F. Supp. 2d 805 (N.D. Ill. 2009) ................................................................... 28
*East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,*
    414 F.3d 700 (7th Cir. 2005) .............................................................................. 24
*ELT Sight, Inc. v. EyeLight, Inc.,*
    No. LACV1905545JAKRAOX, 2020 WL 7862134 (C.D. Cal. Aug. 28, 2020) ............ 24
*Faust v. Vilsack,*
    519 F.Supp.3d 470 (E.D. Wis. June 10, 2021) ..................................................... 6
*Fifield v. Premier Dealer Servs. Inc.,*
    993 N.E.2d 938, 373 Ill.Dec. 379 (1st Dist. App. Ill. 2013) ............................... 16

*Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*,
  964 F.2d 599 (7th Cir. 1992) ............................................................................ 6
*GlobalTap LLC v. Elkay Mfg. Co.*,
  2015 WL 94235 (N.D. Ill. Jan. 5, 2015) ........................................................... 18
*Globespan, Inc. v. O'Neill*,
  151 F. Supp.2d 1229 (C.D. Cal. 2001) ............................................................. 23
*IDS Fin. Servs., Inc. v. Smithson*,
  843 F. Supp. 415 (N.D. Ill. 1994) ..................................................................... 26
*Incredible Technologies, Inc. v. Virtual Technologies, Inc.*,
  400 F.3d 1007 (7th Cir. 2005) ....................................................................... 5, 6
*Kessler v. Continental Cas. Co.*,
  132 Ill.App.3d 540 (1st. Dist. 1985) ................................................................. 26
*Knight, Vale & Gregory v. McDaniel*,
  37 Wn. App. 366, 680 P.2d 448 (1984) ............................................................ 8
*Labriola v. Pollard Group, Inc.*,
  152 Wn.2d 828, 100 P.2d 791 (2004) ............................................................... 8
*Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*,
  292 Ill.App.3d 131 (1997) ............................................................................... 15
*LKQ Corp. v. Fengler*,
  No. 12-CV-2741, 2012 WL 1405774 (N.D. Ill. Apr. 23, 2012) ............................. 7
*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ........................................................................................ 7
*McMann v. Pucinski*,
  218 Ill. App.3d 101, 161 Ill. Dec. 22 (1991) ...................................................... 6
*Mintel Int'l Grp., Ltd. v. Neergheen*,
  2008 WL 2782818 (N.D. Ill. July 16, 2008) ...................................................... 20
*Mission Measurement Corp. v. Blackbaud, Inc.*,
  216 F. Supp.3d 915 (N.D. Ill. 2016) ................................................................ 20
*Modumetal, Inc. v. Xtalic Corp.*,
  4 Wash. App. 2d 810, 425 P.3d 871 (2018) ..................................................... 23
*Moore v. Commercial Aircraft Interiors, LLC*,
  168 Wn. App. 502, 278 P.3d 197 (2012) ......................................................... 23
*Patrick Engineering, Inc. v. City of Naperville*,
  976 N.E.2d 318, 364 Ill. Dec. 40 (2012) ........................................................... 6
*PepsiCo, Inc. v. Redmond*,
  54 F.3d 1262 (7th Cir. 1995) .......................................................................... 21
*Perry v. Moran*,
  109 Wn.2d 691, 748 P.2d 224 (1987) .......................................................... 8, 28
*Power Integrations, Inc. v. De Lara*,
  No. 20-CV-410-MMA (DEB), 2020 WL 4582675 (S.D. Cal. Aug. 10, 2020) ............ 24
*PrimeSource Bldg. Prod., Inc. v. Huttig Bldg. Prod.*, Inc.,
  2017 WL 7795125 (N.D. Ill. Dec. 9, 2017) ....................................................... 18
*Reliable Fire Equipment Co. v. Arrendondo*,
  965 N.E.2d 393 (2011) .................................................................................... 9
*RKI, Inc. v. Grimes*,
  177 F.Supp.2d 859 (N.D.Ill. 2001) .................................................................. 21

*Robbins v. NuVasive, Inc.*,
 2020 WL 7081588 (E.D. Wash. Dec. 3, 2020) ...................................................... 9
*Roberge v. Qualitek Int'l, Inc.*,
 2002 U.S. Dist. LEXIS 1217, at *12, 2002 WL 109360 (N.D. Ill. Jan. 28, 2002).................. 28
*Saban v. Caremark Rx, L.L.C.*,
 780 F. Supp.2d 700 (N.D. Ill. 2011).......................................................... 7, 21, 29
*Service Ctrs. of Chi., Inc. v. Minogue*,
 180 Ill.App.3d 447, 129 Ill.Dec. 367, 535 N.E.2d 1132 (1989) (reversing............................. 18
*Strata Marketing, Inc. v. Murphy*,
 317 Ill.App.3d 1054, 251 Ill.Dec. 595, 740 N.E.2d 1166 (1st Dist. 2000) ............................ 22
*Traffic Tech, Inc. v. Kreiter*,
 2015 WL 9259544 (N.D. Ill. Dec. 18, 2015)..................................................... 19
*Trittipo v. O'Brien*,
 204 Ill. App.3d 662, 561 N.E.2d 1201 (3d. Dist. 1990) ........................................... 17
*Triumph Packaging Grp. v. Ward*,
 834 F. Supp.2d 796 (N.D. Ill. 2011)........................................................... 7, 21
*Trustees of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*,
 992 F.Supp.2d 870 (N.D. Ind. Jan. 21, 2014).................................................... 24
*Tyler Enterps. of Elwood, Inc. v. Shafer*,
 573 N.E.2d 863 (3d Dist. 1991)................................................................ 26
*Unisource Worldwide, Inc. v. Carrara*,
 244 F. Supp.2d 977 (C.D. Ill. 2003) ............................................................ 14
*Vencor, Inc. v. Webb*,
 33 F.3d 840 (7th Cir. 1994) ................................................................... 26
*Vendavo, Inc. v. Long*,
 397 F.Supp.3d 1115 (N.D. Ill. Aug. 20, 2019) ................................................... 18
*Vienna Beef Ltd. v. Red Hot Chicago, Inc*,
 833 F.Supp.2d 870 (N.D. Ill. 2011)............................................................. 24
*Winter v. National Resources Defense Council*,
 555 U.S. 7 (2008) ............................................................................. 5
*Wood v. May*,
 73 Wn.2d 307, 438 P.2d 587 (1968).......................................................... 8, 28

Statutes

18 U.S.C. § 1836(b)(3)(A)(i) .................................................................... 24
18 U.S.C. § 1839(6) ........................................................................... 20
18 USC § 1836(b)(3)(A) ....................................................................... 21
765 ILCS 1065(b)(1)........................................................................... 20
765 ILCS 1065(b)(2)(B) ....................................................................... 20
IL ST CH 820 § 90/5 .......................................................................... 16
RCW 49.62 ................................................................................. 7, 8, 28
RCW 49.62.025 ............................................................................... 29
RCW 49.62.050(2)............................................................................. 8

Other Authorities

Restatement (Second) of Contracts § 187 ................................................................................... 9
Restatement (Second) of Contracts § 188 ................................................................................... 9

## I.     **INTRODUCTION**

Plaintiff Groupon, Inc.'s ("Groupon") Motion for an Emergency Temporary Restraining Order prohibiting Defendant from working at his new job meets none of the requirements for issuance of this extraordinary relief and the TRO currently in place should be vacated.   The restrictive covenant agreement at issue in this case is invalid and unenforceable in its entirety under Washington Law, as Defendant Sung Shin ("Mr. Shin") explains in his pending Motion to Dismiss.[1]  This means that Groupon has no likelihood of success on the merits of his claim, and on that basis alone the Court should reject the injunctive relief Groupon seeks.  Nor is there any factual basis on which to permit any injunction.  The job that Mr. Shin had at Groupon is not the same as the job he accepted at Yelp.  The titles are different, the departments are different, and the functions do not overlap.  Groupon's fanciful claims otherwise cannot be credited – they are a compendium of speculation and nothing more.  This is a second reason why Groupon has no likelihood of success on the merits, and it also means that Groupon cannot show that it will suffer irreparable harm if Mr. Shin is permitted to earn a living in his new job at Yelp.

This especially is so since Groupon knows that Mr. Shin took no confidential or proprietary information with him when he left his job there.  Groupon does not allege that he took any propriety information, because he didn't.  Rather, Groupon relies once again on speculation – that Mr. Shin somehow inevitably will disclose information he has in his head from his seven months of working at Groupon when he goes to Yelp.  But, as detailed in the Declaration Yelp's Chief Product Officer, Vivek Patel, the business models of Groupon and Yelp are so different that the two companies cannot reasonably be considered competitors.  His new job at Yelp is as Vice President of Product Management—a product-focused development role—whereas his job at Groupon was managing advertising business operations and driving revenue.

---

[1] Defendant incorporates by reference his arguments in support of his Motion to Dismiss or Alternatively to Transfer Venue and the facts set forth in that motion.  Docket Nos. 12-16.

Furthermore, Mr. Shin provided Groupon with a sworn Declaration attesting to the fact that he had no Groupon propriety information and would not use any confidential information in his current position. Yelp has made clear to both Groupon and Mr. Shin that it has no interest in any Groupon confidential information. And in an effort to resolve any issues Groupon might have, Yelp's counsel asked Groupon to identify categories of information it was concerned about so that Yelp could make sure Mr. Shin would not be influenced by any such information in his new position. Rather than engage in a good-faith effort to work out its differences, Groupon raced into court and presented a one-sided and ultimately false picture of the situation to obtain a TRO. Remarkably, given the claims in the Complaint, Groupon never cut Mr. Shin off from its systems after his two-week notice period, refused to negotiate any potential terms with Yelp or Mr. Shin, failed to tell this Court about Yelp's and Shin's efforts to assuage its concerns, and filed a lawsuit and a TRO motion without warning – an act of gamesmanship rather than any good faith belief that its interests were in deep peril.

There is no emergency.[2] Groupon has identified no irreparable injury beyond its speculations and fancy. The company has identified no proprietary materials that have been taken or accessed by Mr. Shin. And there is absolutely no evidence at all establishing a probability of success on the claim that Mr. Shin has violated his employment contract or will inevitably violate the Defend Trade Secrets Act (DTSA). Mr. Shin had the legal right to take the Yelp job, and the facts show that his performing this non-overlapping job will not result in any competitive harm to Groupon. Even in Illinois, an employer must show such overlap to enforce a non-compete provision like the one in this case. Groupon cannot do that, and for this reason, too, the TRO should be vacated.

Defendant has filed a Motion to Dismiss based upon lack of personal jurisdiction and

---

[2] Groupon sought an extraordinary remedy on an *ex parte* basis. Mr. Shin gave Groupon two weeks' notice of his intent to depart and begin his new role at Yelp. Groupon then *waited* 15 days before it filed its motion for an Emergency Temporary Restraining Order ("TRO"), and another 2 days before serving it on defense counsel. (Dkt. No. 6.) Groupon served the motion for TRO on the evening of Sunday, November 14, 2021, the day before Defendant began his new position at Yelp. The company's delay is telling.

alternatively has requested that this Court transfer venue to the Western District of Washington. If this Court must reach the merits of Plaintiff's Motion for TRO, whether the claims are analyzed properly under Washington law or under Illinois law, Groupon's motion for injunctive relief must be denied.

Defendant submits as Exhibits in Support of this Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order:

A.  Declaration of Sung Shin;

B.  Declaration of Jesse Wing;

C.  Declaration of Vivek Patel; and

D.  Declaration of Senior Corporate Counsel of Yelp, James Daire.

Mr. Shin respectfully requests this Court to vacate its Order granting Groupon's TRO.

## II.    STATEMENT OF FACTS

Sung Shin began his employment with Groupon just seven months ago, on March 23, 2021.  His title at Groupon was Vice President, Global Head of Advertising and Ancillary Revenue.  At the time he started working at Groupon, he had over 25 years of experience in advertising, marketing, sales, and product management.  (Shin Declaration ¶ 3.)  Mr. Shin's role at Groupon was as General Manager of the *advertising* business, managing business operations. In contrast, Groupon's *Product and Technology* Department (analogous to the group he is joining at Yelp) resided in an entirely separate unit—Groupon's Technology organization— under completely different leadership.  (Shin Declaration ¶ 12.)

Mr. Shin had no technical responsibilities at Groupon.  Indeed, Mr. Shin believes he never saw a technical design document while working at Groupon.  (Shin Declaration ¶ 13.)  As stated in his Declaration and in the Sworn Statement he provided to Groupon, Mr. Shin did not take and has not used any proprietary information or trade secrets of Groupon.  (*See id.* at ¶¶ 6, 10, 13-24, 32; *see also* Daire Declaration at ¶ 7.)

After seven months at Groupon, Mr. Shin realized that the job was not a good fit for him. He found a job at Yelp and gave Groupon his two weeks' notice that he would be leaving his job

and taking a totally different position at Yelp. Out of an overabundance of caution, Mr. Shin removed all information related to Groupon from his personal devices before starting at Yelp and took no confidential or other documents, files, or information about Groupon with him. (Shin Declaration ¶ 15.) Mr. Shin has given those assurances to Groupon. (*See id.* at ¶ 24.) In addition, contrary to the allegation in the Complaint, Mr. Shin has fully repaid the signing bonus he received when joining Groupon. (*See id.* at ¶ 31.)

The job that the Defendant took and began at Yelp before the TRO issued is in a *product development* role: he is Yelp's Vice President of Product Management, Multi-Loc (which means multiple location). He leads development of new Yelp products like Yelp Store Visits (a technically complex machine learning product) and Yelp Audiences (Yelp's multi-platform advertising platform). (*See id.* at ¶¶ 11, 12; Patel Declaration at ¶¶ 16-18.) It is not an *advertising business operations* role, which is what he performed at Groupon. (*See id.* at ¶¶ 11, 12; *see also* Patel Declaration at ¶¶ 16-18.) There is no comparable department or responsibilities at Groupon. (Shin Declaration at ¶¶ 11, 12.) Nothing particular to Mr. Shin's job at Groupon is transferable to Mr. Shin's job at Yelp. (*See id.* at ¶ 12(b).)

Yelp, as a responsible employer, took steps to ensure that Mr. Shin would not bring or use any Groupon confidential information in his new job – starting with the knowledge that the jobs at Yelp would not overlap with what Shin did at Groupon. As detailed in the Declaration of Vivek Patel, Yelp's Chief Product Officer of Yelp (and Mr. Shin's new supervisor), Yelp is not a competitor of Groupon. (Patel Declaration at ¶¶ 10-20.) Yelp is an open platform for consumer reviews and business information whereas Groupon is a deal site. *Id.* The material differences between the companies are discussed below. *See infra* page 10 ("(c) Differences Between the Companies").

Yelp also required Mr. Shin to sign a sworn declaration reminding him of Yelp's policies that prohibit improper use or disclosure of information of prior employers. Likewise, Mr. Shin provided the same assurances to Yelp that he did to Groupon, that he did not possess any

proprietary information and would not share any confidential information. (Daire Declaration at ¶ 7.)

In response to a letter from Groupon to Mr. Shin on November 3, 2021, Yelp's in-house counsel, James Daire, explained that Yelp has no interest in any alleged Groupon confidential information, and asked Groupon to identify any such information (by file name or other means) so that Yelp could evaluate whether any further protective steps should be taken before Mr. Shin started at Yelp. (Daire Declaration at ¶ 3.) Groupon's counsel did not reply to this request, so Mr. Daire sent a follow-up email. (*See id.* at ¶ 5.) On November 11, 2021, counsel for Groupon said he would call Mr. Daire to discuss this further. (*See id.*) He did not. (*See id.* at ¶ 6.) Instead, without warning and with no recognition that both Mr. Shin and Yelp were trying to engage in a dialogue to assuage Groupon's concerns, Plaintiff rushed into court and filed its Motion for a TRO.

As Defendant explained in his motion to dismiss, this entire case violates the statutory law of Washington State. It is hard to fathom why Groupon is behaving unreasonably – it is not because there is any legitimate risk of harm to that company. Mr. Shin, as a citizen of Washington State, has the right to the protections of that state's clear and compelling law. The TRO must be vacated since Plaintiff does not come close to satisfying any of the elements necessary for issuance of a temporary injunction.

## III.   ARGUMENT

### A.   Groupon Failed to Meet Its Burden for a TRO

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. National Resources Defense Council*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must satisfy three elements: (1) it is likely to succeed on the merits of its claims; (2) it does not have an adequate remedy at law; and (3) the harm that will result if the injunction does not issue will be irreparable. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). Groupon bears the burden to establish each of these three elements. Then, this

Court must then examine whether the harm to the party seeking the relief outweighs that to the potentially enjoined party if the injunction were to issue.  *Id*.

Here, Groupon must also prove that this is an emergency that demands that Mr. Shin— who is a current Yelp employee and was working for Yelp at the time of the TRO (he has not worked for Yelp since he learned of the TRO)—be barred from working in his chosen field for his chosen employer.  (*See* Dkt. No. 14 at p. 22 of 23) ("A temporary restraining order, as opposed to a preliminary injunction, is sought and heard on an emergency basis. . . to preserve the status quo pending the complete briefing and consideration of a motion for a preliminary injunction." (citing *Faust v. Vilsack*, 519 F.Supp.3d 470, 474 (E.D. Wis. June 10, 2021) citing *Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs*., 964 F.2d 599, 600 (7th Cir. 1992))).  Groupon's Motion fails in every respect.

A TRO is an extraordinary remedy, so the party seeking it has to satisfy a high burden through well-pled facts showing entitlement to that relief.  *McMann v. Pucinski*, 218 Ill. App.3d 101, 108, 161 Ill. Dec. 22, 28 (1991). This requires allegations supported by specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 976 N.E.2d 318, 328, 364 Ill. Dec. 40, 50 (2012). Illinois courts have denied requests for a TRO where the plaintiff presented only vague, non-specific allegations.  *See, e.g., Bridgeview Bank Grp. v. Meyer*, 2016 IL App (1st) 160042, ¶¶ 14-15, 49 N.E.3d 916, 920–21 ("we note that there are virtually no well-pled facts in Bridgeview's complaint regarding information Meyer allegedly took with him or customers he solicited after he left.  Rather, the complaint is replete with nonspecific and conclusory allegations.").  In an analogous case, the court held that the plaintiff's claims of "unique marketing strategies" was simply too vague, and denied a TRO, in part for this reason.  *Id*. ("For example, Bridgeview alleged that it had developed 'unique marketing strategies, processes and information' without ever describing, even generally, the nature of those strategies, processes or information or what made them 'unique' in the banking industry.").

Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of

6

persuasion." *LKQ Corp. v. Fengler*, No. 12-CV-2741, 2012 WL 1405774, at *3 (N.D. Ill. Apr. 23, 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Groupon has not made such a showing. Courts in this District have not hesitated to deny requests for a TRO where, as here, the plaintiff-employer fails to show a likelihood of success through vague and unsupported allegations. *See, e.g., Saban v. Caremark Rx, L.L.C.*, 780 F. Supp.2d 700, 714 (N.D. Ill. 2011) (denying TRO against "top-level executive" where "the uncontested finding of fact indicated that Saban had not retained any confidential information, except for what he remembered" pursuant to Covenant not-to-compete and ITSA); *Cintas Corp. v. Perry*, No. 03 C 8404, 2004 WL 2032124, at *15 (N.D. Ill. Aug. 20, 2004) (denying TRO against former Vice President of Field Sales for the Western Division to work for direct competitor pursuant to Covenant not-to-compete); *Triumph Packaging Grp. v. Ward*, 834 F. Supp.2d 796, 804 (N.D. Ill. 2011) (denying TRO against former COO under ITSA).

1.      **Groupon Cannot Establish it is Likely to Prevail on the Merits as to any of its claims**

Dubiously, Groupon's motion is supported only by a Complaint. Although the Complaint is verified, Groupon's verification is ambiguous and opaque. Four individuals verify the entire 37-page Complaint, with no attribution among them as to which individual has personal knowledge of which facts, and on what basis. Beyond this deficiency, Groupon has not shown a likelihood that it will prevail on a single one of its claims.

a.      **The non-competition agreement is illegal and unenforceable under both Washington Law and Illinois Law (for different reasons)**

As set forth above and supported in Mr. Shin's Motion to Dismiss (Dkt. Nos. 12-16), the noncompetition clause, choice-of-forum clause, and choice-of-law clause all are illegal and unenforceable under Washington law. RCW 49.62. As argued in greater detail in Plaintiff's Motion to Dismiss, for "Washington-based" workers, an employer is prohibited from using a choice of law clause that "deprives the employee or independent contractor of the protections or benefits of this chapter" or "to adjudicate a noncompetition covenant outside of this state."

RCW 49.62.050(2). The Western District of Washington recently held that a noncompete clause such as Groupon's, requiring application of out-of-state law in an out-of-state forum, violates RCW 49.62 and therefore is void and unenforceable. *See CVS Pharmacy, Inc. v. Brown,* case no. C21-306 MJP, 2021 U.S. Dist. LEXIS 49450 at * 3-4 (W.D. Wash., Mar. 16, 2021) (holding that the "Washington Noncompete Act renders CVS's noncompete unenforceable because it requires Brown to 'adjudicate a noncompetition covenant outside of' Washington'"). (*See* Groupon TRO, Dkt. No. 6, at p. 31 of 44.)

If the Court denies Defendant's motion to dismiss or transfer venue, and hears the breach of contract claim on the merits, Groupon still cannot establish a likelihood of success: even if the noncompetition covenant was not illegal on its face, it is unreasonable under the facts here, and therefore unenforceable.

Washington courts will enforce a covenant not to compete only when the covenant is "validly formed" and "reasonable." *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 833, 100 P.2d 791, 793 (2004). Washington courts apply a three-factor test to determine whether a covenant not-to-compete is reasonable:

> (1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

*Perry v. Moran*, 109 Wn.2d 691, 698, 748 P.2d 224, 228-29 (1987), *modified on reconsideration*, 111 Wn.2d 885, 766 P.2d 1096 (1989) (citing *Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 369, 680 P.2d 448 (1984)). The reasonableness of the restriction imposed upon an employee by a covenant not-to-compete is determined based on the facts of each case. *Wood v. May,* 73 Wn.2d 307, 312, 438 P.2d 587, 590 (1968). To prevail, the plaintiff must prove that the geographic scope of the restraint and the time period for which an employee is restrained are not excessive. *Wood v. May*, 73 Wash.2d 307, 311, 438 P.2d 587, 590 (1968) (holding "we are constrained to believe that the restrictions were probably unreasonable both as

8

to area and time."); *ChemStation of Seattle, LLC v. Donahoe*, 2018 WL 3625781 at *5-6 (Wash. App. July 30, 2018) (holding that "the evidence in the record does not support the preliminary injunction as it is currently written [and that] [i]t was an abuse of discretion to grant a preliminary injunction with no geographical limitation"); *see also Robbins v. NuVasive, Inc.*, 2020 WL 7081588 at *7 (E.D. Wash. Dec. 3, 2020) (finding that "the noncompetition covenants are unenforceable pursuant to Chapter 49.62" and ultimately denying the "extraordinary and drastic remedy of a preliminary injunction" due to the unreasonableness of the nonsolicitation restrictive covenant).

In Illinois, "[t]he modern, prevailing common-law standard of reasonableness for employee agreements not to compete applies a three-pronged test." *Reliable Fire Equipment Co. v. Arrendondo*, 965 N.E.2d 393, 396 (2011) (quoting *BDO Seidman v. Hirshberg,* 712 N.E.2d 1220, 1223 (1999)). A restrictive covenant, assuming it is ancillary to a valid employment relationship, is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public. *Id.* (citing Restatement (Second) of Contracts § 187 cmt. b, § 188(1) & cmts. a, b, c (1981)). "Further, the extent of the employer's legitimate business interest may be limited by type of activity, geographical area, and time." *Id.* at 396-97 (citing Restatement (Second) of Contracts § 188 cmt. d (1981)). "This court long ago established the three-dimensional rule of reason in Illinois and has repeatedly acknowledged the requirement of the promisee's legitimate business interest down to the present day." *Id.* at 397.

Here, Groupon cannot show that its covenant is necessary to protect its business.

### (i)    Yelp is not a Meaningful Competitor of Groupon

Groupon has presented to the Court "significant misstatements regarding Yelp's business, Yelp's relationship to Groupon, Mr. Shin's role at Yelp, and the nature of internet advertising generally." (Patel Declaration at ¶ 3.)

9

        **(a)**     **Yelp's Core Business is as an Open Social Networking Review Site**

Yelp, founded in 2004, owns and operates Yelp.com, a popular social networking and search website, mobile website, and related mobile applications (collectively, "Yelp") for users to share information about their communities. Yelp provides and publishes a forum for members of the public to read and write reviews about local businesses, services, and other entities, including non-profits and government agencies. (Patel Declaration at ¶ 4.) Yelp strives to host a Yelp page for every brick and mortar business in the country, regardless of whether that business ever claims its Yelp page, is a Yelp advertiser, or generates any revenue for Yelp at all. (*See id.* at ¶ 10.)

        **(b)**     **In Contrast, Groupon's Core Business is Coupons**

Unlike Yelp, Groupon is not an open social networking and search website. Instead, Groupon is a subscription-based service that merchants and consumers both have to sign up for to use. (*See id.* at ¶ 9.) As Groupon admits in its Complaint and in its application for a temporary restraining order, the "core" of its business is "discounted vouchers that customers can purchase for merchant businesses" – akin to modern day coupons. (Complaint at ¶ 73; TRO at p. 19.) Businesses that advertise through Groupon are, by virtue of the very nature of Groupon's platform, attracting customers specifically looking for an initial discount for a good or service, regardless of whether they are ready. Not every business wants to offer a discount, but those that do will attract new customers specifically looking for a discount. (Patel Declaration at ¶ 11.)

        **(c)**     **Differences Between the Companies**

Yelp's and Groupon's differing purposes and business models have important implications for the differing types of consumers and advertisers that each attracts (Patel Declaration at ¶ 10):

*Core business functions*. Groupon provides discount vouchers for merchants. (*See* Complaint at ¶ 73.) Yelp is a site for reviews and photos of businesses. (Patel Decl. at ¶ 5.)

*Access to services*.  Groupon is available to the public via subscription-based service with registration.  (Patel Declaration at ¶ 9.)  Yelp is the exact opposite.  Yelp is available at no charge and without need for registration.  (Patel Declaration at ¶ 5.)

*Targeted audience*.  Groupon pitches its services to previously/potentially subscribed consumers who are specifically looking for and motivated by a discounted deal.  (Patel Declaration at ¶ 11.)  In contrast, Yelp is an open access search engine allowing anyone to look up businesses with the option to specify by region.  (Patel Declaration at ¶ 5.)

*Consumer's desire*.  Groupon's customers are looking specifically for an initial discount for a good or service, regardless of whether they are ready to buy.  (Patel Declaration at ¶ 11.)  In the alternative, Yelp's consumers tend to be convinced or near convinced they want to make a purchase.  A 2019 survey showed that 51% of Yelp users transact with the business they find within a day, and 90% transact within a week.  (Patel Declaration at ¶ 10.)

*Product management*.  Consumers use Groupon's platforms to search for and discover services and deals.  (*See* Complaint at ¶ 10.)  Yelp has not committed product management resources to its comparable Yelp Deals feature since at least 2017.  In 2020, Yelp Deals was responsible for less than 0.057% of Yelp's overall net revenue, with expected revenue returns even lower in 2021.  (Patel Declaration at ¶ 8.)

*List of competitors per company*.  A Google search for "Groupon competitors" shows top ten Groupon alternatives and competitors are other discount subscription-based services—deal sites:  Vagaro, Travelzoo, dealsaver, Localflavor, HalfOffDeals, Gilt, Deals.Today, and Glopal.  (Patel Declaration at ¶ 14.)  In contrast, a Google search for "Yelp competitors" produces results for Google itself, Bing, Facebook Recommendations, Zagat, TripAdvisor, and Angi, and the top five are Tripadvisor, Foursquare, Yahoo, OpenTable, and Yodle.  (Patel Declaration at ¶ 15.)

The closest thing to "competition" that Groupon alludes to is "Yelp Deals."  (Groupon TRO at p. 12.)  Over a decade ago, Yelp experimented with an advertising product called "Yelp Deals," offering daily deals from businesses, but as discussed above Yelp has pivoted *away* from

11

that product and it is an infinitesimal portion of Yelp's overall net revenue that is expected to further diminish. (Patel Decl. at ¶ 8.)

Additionally, Yelp's advertising products are generally performance-based, meaning that Yelp's advertising platform matches to individual consumers through auctions priced on a cost-per-click (or "CPC") basis. Groupon claims that *some* of it's advertising products are performance-based, but that's an insignificant similarity – like saying they compete because they both advertise on TV. Yelp and Groupon are not competitive with one another merely because they each offer performance-based advertising or use "metrics" for measurable advertising results. (Patel Declaration at ¶ 19.) Performance-based advertising is one of the most – if not the single most– common forms of advertising on the internet, inasmuch as it allows websites to make money without charging their users any upfront fees. Websites often offer advertising on a CPC or other metric-based basis. Amazon, eBay, Google, Yahoo!, and Microsoft each use a CPC model. Indeed, performance-based advertising is so well known – and associated with internet advertising – that there is a Wikipedia article describing it in detail.[3] (Patel Declaration at ¶ 20.)

Contrary to Groupon's representation, at *no* time did Mr. Shin identify Yelp as a competitor. (*Compare* Verified Complaint at ¶ 80 and Exhibits J and K to *id*. with Shin Declaration at ¶ 25.) Nor would it make sense for him to do so because the two companies' business models are completely different, and the functions of the two companies are distinct; indeed, they are complementary, rather than competitive. (Shin Declaration at ¶ 28; *see also* Exhibit H to Verified Complaint.) Indeed, Mr. Shin's two emails appended to Groupon's Complaint do not support Groupon's application for a TRO *at all*. With two weeks' advance notice of Mr. Shin's impending departure, Groupon presumably searched Mr. Shin's thousands (if not tens of thousands) of work emails amassed over seven months at Groupon and it came up with a grand total of two—neither of which actually describe Yelp and Groupon as competitors.

---

[3] https://en.wikipedia.org/wiki/Performance-based_advertising.

The emails show only that Groupon is unlikely to succeed in showing that Yelp and Groupon are real competitors.

The other exhibits to Groupon's Complaint show the same. Exhibit G to Groupon's Complaint purports to be a December 2017 snapshot created using data from a company called Comscore that shows "mobile reach"—a measurement of mobile browsing and mobile application—of various websites. Comscore does not evaluate potentially competitive relationships between websites; instead, it measures audience demographics and performance for websites—similar to the Nielsen ratings for television shows.

Likewise, neither of the third-party analyst reports that Groupon attached to its Complaint (Exhibits H and I) actually identify Yelp and Groupon as competitors. (Patel Declaration at ¶ 12; *see also* Shin Declaration at ¶¶ 27, 28.) Additionally, Exhibit F, which purports to be an internal Groupon PowerPoint slide, does not state anything about direct competition between Groupon and Yelp. The slide simply points out that Yelp uses its own social media account on Instagram to share holiday gift suggestions from local businesses. (Shin Declaration at ¶ 26.) This is weak evidence of competition indeed, and no one on Yelp's product management team had any connection to those branding efforts whatsoever. (Patel Declaration at ¶ 13.)

To find support for its motion, Groupon had two weeks in which to review its records, the internet, and Mr. Shin's devices. The result is only a collection of vague, ambiguous, and old (2017) documents on which Groupon rests its claim that Yelp is its direct competitor in the global market. That certainly is not enough for the extraordinary relief Groupon seeks.

**b. Plaintiff has not alleged any facts showing that Defendant has violated any of the terms of the restrictive covenant, even if it was enforceable**

Mr. Shin's employment agreement with Groupon specified that he would not solicit, accept on behalf of another, or attempt to entice any customer with whom he had contact in the course of his duties as a Groupon employee or any prospective customer of Groupon as defined in the agreement. (*See* Complaint at ¶ 50; *see also* Exhibit B to the Verified Complaint.)

But, aside from its fear that he will do so, Groupon has offered *nothing* to indicate that Mr. Shin has contacted any customers who would fall into either of these categories. Nor has it provided any evidence of customers being lured away to Yelp through an effort by Mr. Shin. By contrast, Mr. Shin has expressly declared that he has not done this, and will not do this. (Shin Declaration at ¶ 18.) He further declared that he does not have any contact information for Groupon clients (not even a LinkedIn connection). (*See id.* at ¶¶ 18, 19.) Moreover, he has explained that his role at Groupon was not to build customer relationships, and that in his very short tenure at the company he did not do so. (*See id.* at ¶ 19.)

### c. Lack of Geographic Scope is Unreasonable

Groupon's non-compete contains no boundaries. It literally prohibits Mr. Shin from working anywhere in the world that Groupon claims to do business. Absent far more evidence than Groupon has presented, this is unreasonable on its face. *ChemStation of Seattle, LLC v. Donahoe*, 2018 WL 3625781 at *5-6 (Wash. App. July 30, 2018) (holding " [i]t was an abuse of discretion to grant a preliminary injunction with no geographical limitation.").

### d. Groupon has Offered No Justification for an 18-month Duration

A restriction is permissible only for as long as it is needed to protect the employer. Here, Groupon has offered zero justification for an 18-month duration. We live in a fast-paced world with rapid changes in technology, the economy, and consumer interests – much of it driven by the internet. Advantages to particular approaches in eCommerce are especially temporary. This is exacerbated by the uncertainties caused by a global pandemic, during which Groupon imposed its noncompete. In this environment, Groupon has not explained how whatever special sauce it believes is in Mr. Shin's head has a useful shelf-life of a year and a half.

Groupon must show that the information it seeks to protect needs to be protected for that long. Almost 20 years ago, in *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp.2d 977, 982 (C.D. Ill. 2003), the court held that a non-compete lasting longer than a year in the employer's industry was unreasonable because the employer's information became "stale":

> The Court finds that, as applied to the industry at issue in this case, two years is an unreasonable period of time to impose in a covenant not to compete. This is because the prices, costs, and customer information governing Unisource's operations at any particular time are volatile. While some products' prices are more volatile than others, Unisource's Regional Vice President testified that changes are made within Unisource's price books about every six months, and internal pricing information is stale after twelve months.

Since Groupon has failed to identify any particular information that it seeks to protect, it has not alleged or shown the reasonable lifetime of its claimed protectible interest. (Shin Declaration at ¶ 24.)

### e. The Scope of the Non-Compete is Unreasonable

Groupon's non-compete purports to restrict Mr. Shin from working for "any entity which is in competition with Groupon in the Geographic Area." (Complaint, Exhibit Dkt. 1-2 at page 7.) But the agreement fails to define "competition." The agreement fails to provide any examples of entities that are in competition with Groupon. And the agreement gives prospective employees no guidance on what Groupon believes, or will contend, are entities with which it is in competition. Although the agreement purports to restrict its unbounded view of competition to jobs that are "positions with responsibilities similar to any position" held with Groupon, "similar" is just as undefined as "competition."

### 2. Under Illinois Law, the Non-Compete is Invalid for Lack of Adequate Consideration Since Defendant Worked at Groupon for Less Than Two Years.

Postemployment restrictive covenants are carefully scrutinized by Illinois courts because they operate as partial restrictions on trade. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.,* 378 Ill.App.3d 437, 447 (2007). In order for a restrictive covenant to be valid and enforceable, the terms of the covenant must be reasonable. *Id.* However, before even considering whether a restrictive covenant is reasonable, the court must make two determinations: (1) whether the restrictive covenant is ancillary to a valid contract; and (2) whether the restrictive covenant is supported by adequate consideration. *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.,* 292 Ill.App.3d 131, 137 (1997).

Illinois law is clear that merely employing someone for less than two years is not enough consideration to enforce a restrictive covenant against them. *Fifield v. Premier Dealer Servs. Inc.*, 993 N.E.2d 938, 373 Ill.Dec. 379 (1st Dist. App. Ill. 2013),[4] provided a bright line 2-year test, which the state legislature has codified in the Illinois Freedom to Work Act. The amendment to this Act, which will go into effect on January 1, 2022, reads "'[a]dequate consideration' means (1) **the employee worked for the employer for at least 2 years after the employee signed an agreement containing a covenant not to compete** or a covenant not to solicit or (2) the employer otherwise provided consideration adequate to support an agreement to not compete or to not solicit, which consideration can consist of a period of employment plus additional professional or financial benefits or merely professional or financial benefits adequate by themselves." IL ST CH 820 § 90/5 (emphasis added).

Here, since Mr. Shin did not work at Groupon for the requisite two-year period, Groupon must prove that it provided him additional consideration on top of only seven months of employment that is legally adequate consideration to take him out of the economic marketplace for 18 months. Groupon cannot meet this burden. First, it has offered no evidence that it provided him any additional consideration *in exchange for* the non-competition covenant. Rather, the company points merely to the elements of his compensation as evidence of such consideration. But his compensation was in exchange for his employment; Groupon has supplied no documentation or other evidence that any portion of what it paid him was specifically offered as consideration for the non-compete. *Brown and Brown, Inc. v. Mudron*, 379 Ill.App.3d 724, 729, 887 N.E.2d 437, 440-41 (3d. Dist. 2008). Like here, in *Brown*, the Plaintiff claimed that Defendant Gunderson received additional employee benefits as

---

[4] The Court explained that "Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant . . . [which] is maintained even if the employee resigns on his own instead of being terminated." *Id*. at 943. The *Fifield* Court explained that, "although the plaintiff claimed that the defendant received additional employee benefits as consideration for the restrictive covenant, there was no evidence to establish what the benefits were or how they differed from the benefits the defendant was already receiving." *Id*. at 942. Therefore, there the consideration was inadequate to support the restrictive covenants in the employment agreement.

consideration for the restrictive covenant, but presented no evidence establishing with specificity that the purported benefits were in exchange for the covenant not to compete. *See id*. As a result, the court concluded that the covenant was not supported by adequate consideration so was unenforceable. Thus, Groupon cannot now, *post hoc*, assert that it intended that some portion of his compensation to be consideration for the non-compete, because it had to be a meeting of the minds of the parties. *Trittipo v. O'Brien*, 204 Ill. App.3d 662, 672, 561 N.E.2d 1201, 1207 (3d. Dist. 1990) ("One of the elements essential to the formation of a contract is a manifestation of agreement or mutual assent by the parties to its terms.").

Second, Mr. Shin did not actually receive the additional compensation that Groupon cites as consideration. Groupon required him to return the signing bonus, which he has done, and the RSUs that the company offered him will not vest (since he stayed less than one year). (Shin Declaration at ¶¶ 5, 9, 10, 31; *see also* Complaint at ¶¶ 31, 32, 48; Exhibit B to Complaint.) Thus, Groupon's claim that it paid Mr. Shin these components of additional compensation is false. Its promise to pay these forms of compensation was illusory – they were self-evidently incentives for staying at Groupon, not consideration for refraining from working for eighteen months in the event that he left. Groupon does not pass the *Fifield* test.

This Court should not enforce a restraint where the circumstances indicate bad faith or deliberate overreaching on the part of the employer, which is the case here. Therefore, the entire noncompetition covenant should be declared unenforceable.

### a. Groupon Is Not Likely to Succeed on its Claim for Violation of the Illinois Trade Secrets Act (ITSA) or Defend Trade Secrets Act (DTSA)

Groupon has failed to establish a likelihood to succeed on the merits for either the ITSA or DTSA. To demonstrate that Mr. Shin has "misappropriated" its trade secrets in violation of Illinois law, Groupon must show three things: (1) that the information at issue was a secret; (2) that Mr. Shin misappropriated it; and (3) that he has used it in his new employment with Yelp.

*Associated Underwriters of Am. Agency v. McCarthy*, 356 Ill. App.3d 1010, 826 N.E.2d 1160, 1168, 292 Ill. Dec. 724 (1st. Dist. 2005).

Groupon has not shown any of the three elements of its claims. Its claim is premised solely on general, vague allegations that Mr. Shin has unspecified trade secrets in his head that he will inevitably be forced to use at Yelp. This is far from sufficient to satisfy the high burden when seeking a TRO.

> **(i)    Groupon has Failed to Identify any Trade Secrets, Let Alone Any That Mr. Shin Possesses or Might Use in His Yelp Role**

"As numerous courts have explained, where a plaintiff suggests that general categories of information are trade secrets, the lack of specificity greatly reduces its chances of demonstrating that a defendant has misappropriated its trade secrets." *Vendavo, Inc. v. Long*, 397 F.Supp.3d 1115, 1130 (N.D. Ill. Aug. 20, 2019); *see also PrimeSource Bldg. Prod., Inc. v. Huttig Bldg. Prod.*, Inc., 2017 WL 7795125, at *15 (N.D. Ill. Dec. 9, 2017); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (noting that the plaintiff must point to concrete secrets, not broad areas of technology, to prevail on trade secrets claim); *see also Service Ctrs. of Chi., Inc. v. Minogue*, 180 Ill.App.3d 447, 129 Ill.Dec. 367, 535 N.E.2d 1132, 1135 (1989) (reversing grant of preliminary injunction where plaintiff "consistently failed to identify with any degree of particularity the alleged trade secrets or confidential information in need of protection").

Such particularity is necessary because a plaintiff cannot prevail at trial under either the DTSA or ITSA unless it identifies its trade secrets in sufficient detail that the trier-of-fact can determine what information comprises the secret and whether it was disclosed. *GlobalTap LLC v. Elkay Mfg. Co.*, 2015 WL 94235, at *5–6 (N.D. Ill. Jan. 5, 2015). "[W]here a plaintiff cites [only] general categories of information, but 'never singles out any particular trade secret, explaining how it created and safeguarded that particular bit of information,' the lack of particularity renders it unlikely to succeed on its trade secrets misappropriation claim." *Long*, 397 F.Supp.3d at 1130 (citing *PrimeSource Bldg. Prod., Inc*, 2017 WL 7795125, at *15,

quoting *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *20 (N.D. Ill. Dec. 18, 2015)).

Groupon claims in conclusory and broad-brush fashion that "Yelp uses a near-identical advertising and marketing platform to compete in connecting consumers to business." (Verified Complaint, Dkt. No. 1, ¶ 1.) Groupon asserts vaguely that it "uses innovative marketing and advertising strategies . . . to reach consumers throughout the purchase cycle." (*Id.* at ¶ 18.) And Groupon alleges in cursory fashion that Mr. Shin synthesized various forms of proprietary information and developed a specialized expertise of Groupon's historic advertising practices and the metrics. (*See* Groupon's TRO at p. 21.) But Groupon's historic practices and advertising metrics are solely best practices that have been recognized in the eCommerce industry since the early 2000s. (Shin Declaration at ¶ 15.) Further, Mr. Shin's purported knowledge related to the alleged proprietary information would not be relevant to any business outside of Groupon, and not at all relevant to his new role at Yelp. (*See id.*) Finally, Groupon's generalized definitions of advertising and marketing platforms are so overbroad that they effectively characterize all eCommerce businesses in the 21st century. (Shin Declaration at ¶ 13.) For example, placing advertising in online search results and developing audiences to target are standard tactics in digital advertising. In fact, on or about August of 2021, Mr. Shin recalls Simon Goodall and Aaron Cooper (Groupon's Interim CEO) repeatedly stating that Groupon's model was following an "eCommerce advertising blueprint." Indeed it was, because the advertising model was fairly simplistic and not at all unique. It was the same model that is used across all eCommerce platforms, namely, to maximize return on ad spend ("ROAS") by using advertisement dollars to drive sales on the platform. This same model was used by Amazon when Mr. Shin worked there for eight years (from 2013-2021) immediately preceding his employment at Groupon. A generic Commerce Advertising "Blueprint" is no trade secret belonging to Groupon. (*See id.*) In other words, Groupon asks the Court to prevent Mr. Shin from relying on his 25-plus years of experience before he joined Groupon for a mere seven months, in his new employment with Yelp.

### (a) Groupon has not Alleged Actual Misappropriation

One can misappropriate trade secrets by "acquiring" them through improper means such as the breach of a confidential relationship.  *See* 765 ILCS 1065(b)(1).  Misappropriation also occurs when a defendant breaches a duty owed to protect the secrecy of its information or induces another party to do so.  *Mintel Int'l Grp., Ltd. v. Neergheen*, 2008 WL 2782818, at *3 (N.D. Ill. July 16, 2008) (citing 765 ILCS 1065(b)(2)(B)).  The DTSA defines misappropriation as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp.3d 915, 920 (N.D. Ill. 2016).  The statute further defines "improper means" as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  18 U.S.C. § 1839(6).

But Groupon makes none of these allegations against Mr. Shin.  This is because he has not taken any of its documents or data.  Instead, Groupon alleges that when he quit, Mr. Shin took with him what is in his head.  Nor does Groupon claim that Mr. Shin has disclosed or used what is in his head.  Under court precedent, that cannot reasonably be characterized as "misappropriation."  Groupon apparently recognizes this, so claims that at some point he will be unable to perform his new job without disclosing its secrets.

### (b) Groupon Fails to Show that the Doctrine of Inevitable Disclosure Should Apply Here

The Seventh Circuit has applied the doctrine of inevitable disclosure under ITSA, but does not appear to have ruled on whether it also applies under the DTSA.  The language of DTSA itself explicitly precludes using the statute as a basis for entering an injunction based on actual or threatened use of a trade secret that would "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on

evidence of threatened misappropriation and not merely on the information the person knows[.]" 18 USC § 1836(b)(3)(A).

Some district courts in this circuit have applied the doctrine, although they do so quite sparingly. "Courts do not often apply the inevitable disclosure doctrine, recognizing that 'a broad application would be an effective bar against employees taking similar positions with competitive entities.'" *Triumph Packaging Grp. v. Ward*, 834 F. Supp.2d 796, 809 (N.D. Ill. 2011) (citations omitted). For these reasons, a court should be "cautious in its application of this doctrine." *Id*.

The following factors are used by Illinois courts in determining whether disclosure of trade secrets are inevitable: "(1) the level of competition between the former employer and the new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions that the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *Saban v. Caremark Rx, L.L.C.*, 780 F.Supp.2d 700, 734 (N.D.Ill. 2011) (citing *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859, 873 (N.D.Ill. 2001)).

"[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose. . . trade secret information' so as to 'demonstrate irreparable injury.'" *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (quoting *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1207 (7th Cir. 1987)). "Moreover, the employer's fear that its former employee will use the trade secrets in his new position is insufficient to justify application of the inevitable disclosure doctrine." *Triumph Packaging Grp. v. Ward*, 834 F. Supp.2d 796, 809–13 (N.D. Ill. 2011) (citing *Saban*, 780 F.Supp.2d at 734 (citing *PepsiCo*, 54 F.3d at 1268–69). "Instead, the employer must demonstrate a '**high probability**' that the former employee will use them." *Id*. (citing *Saban* (citing PepsiCo, 54 F.3d at 1268–69) (emphasis added).

To succeed in stating a claim for inevitable disclosure, Groupon needs to show that Mr. Shin could not "operate or function" in his new position without relying on the trade secrets.

*Strata Marketing, Inc. v. Murphy*, 317 Ill.App.3d 1054, 251 Ill.Dec. 595, 740 N.E.2d 1166, 1179 (1st Dist. 2000). Groupon cannot demonstrate this because Mr. Shin took a completely different type of job at Yelp – one that has no use for any information he may have come across at Groupon. Consequently, Groupon cannot show that merely by performing his job at Yelp it is inevitable that he will have to disclose some secret that Groupon claims he learned in its employ.

*First*, Groupon's characterization of the scope of its competitors is unsupportably overbroad. In describing its eCommerce functions, Groupon claims that it "provides marketing and advertising products to help its merchants and clients reach large audiences, advertise their products, and drive conversion of their services." (Complaint at ¶ 63.) That description ecompasses essentially every eCommerce business today.

As set forth in detail above, when the core purposes of Groupon's and Yelp's eCommerce platforms are compared, they are not in competition. Yelp's and Groupon's differing purposes and business models have important implications for the differing types of consumers and advertisers that each attracts. (Patel Declaration at ¶ 10.) Yelp is an open website for customers to write or read business reviews. (*See id*. at ¶ 4.) In contrast, Groupon is a membership-only website that provides its consumers coupons. (*See id.* at ¶¶ 9-11; *see also* Complaint at ¶ 73; TRO at p. 19.) Yelp Deals, the only Yelp feature comparable to Groupon's business, constituted less than 0.057% of Yelp's overall net revenue in 2020, with expected returns even lower in 2021. (Patel Declaration at ¶ 8.) Any alleged competition between Yelp and Groupon is negligible.

*Second*, Mr. Shin's role *and* department at Yelp differs completely from his role and department at Groupon. At Groupon, Mr. Shin was a General Manager of the advertising business to drive revenue. (Shin Declaration at ¶¶ 11, 12.) The main *advertising* business there related to sponsored ads in email, and display advertisements on the desktop/mobile websites. (*See id*. at ¶ 12,) The product and technology Departments at Groupon were not owned or supervised by Mr. Shin, which were under a completely different manager. (*See id*. at ¶ 11(a).)

Mr. Shin's *advertising business operations* role at Groupon *does not* overlap with his new *product development* role in the Technical Department at Yelp. Yelp hired Mr. Shin as its Vice President of Product Management, Multi-Loc. (Patel Declaration at ¶¶ 16, 17.) Mr. Shin will have no responsibilities whatsoever relating in any way to Yelp Deals, which has not had a Yelp product manager assigned to it in the past four years, since at least 2017. (*See id.* at ¶ 18.) That is an eternity in modern ecommerce. In sum, because Mr. Shin will manage a product development team, his new role is entirely different from his prior position at Groupon; indeed, there is no comparable department or responsibilities at Groupon. (Shin Declaration at ¶ 12(b).)

*Third*, Yelp took its own steps in response to Groupon's allegations and required Mr. Shin to sign a sworn declaration reminding him of Yelp's policies that prohibit improper use or disclosure of information from prior employers. Mr. Shin provided the same assurances, that he did not possess any proprietary information and would be sharing no confidential information at all via sworn declaration. (Daire Declaration at ¶ 7.) Yelp received Mr. Shin's sworn declaration from his counsel on November 14, 2021, before he started working for Yelp on November 15, 2021. (*See id.*) Yelp has taken every precaution, with the full cooperation of Mr. Shin, to prevent the disclosure of trade secrets, if any exist, of Groupon. (Shin Declaration at ¶¶ 24, 32.)

If the Court applies Washington law or the law in the Ninth Circuit as it would apply to DTSA, the outcome is no more favorable to Groupon. "Washington has neither adopted nor rejected the inevitable disclosure doctrine." *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 828, 425 P.3d 871, 881 (2018) (citing *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 513, 278 P.3d 197 (2012)). But given Washington's major statutory reform of non-compete law effective January 2020, creating robust protections for employees to foster employee mobility, there is good reason to believe it would follow California's lead on the issue. *See Globespan, Inc. v. O'Neill*, 151 F. Supp.2d 1229, 1234 (C.D. Cal. 2001) ("The 'theory of inevitable disclosure' relied on by Plaintiff 'creates a de facto covenant not to compete [and] run[s] counter to the strong public policy in California favoring employee mobility.'").

Similarly, district courts in the Ninth Circuit consistently reject the doctrine of inevitable disclosure. *See, e.g., Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (DEB), 2020 WL 4582675, at *12 (S.D. Cal. Aug. 10, 2020) ("The DTSA permits a court to enjoin 'any actual or threatened misappropriation.'") (quoting 18 U.S.C. § 1836(b)(3)(A)(i)); *ELT Sight, Inc. v. EyeLight, Inc.*, No. LACV1905545JAKRAOX, 2020 WL 7862134, at *16 (C.D. Cal. Aug. 28, 2020) ("the application of the inevitable disclosure doctrine in California has been rejected by courts addressing both DTSA and CUTSA claims."); *Danjaq LLC v. Sony Corp.*, 50 U.S.P.Q. 2d 1638, 1640 n.1 (C.D. Cal. 1999) (holding that inevitable disclosure doctrine "is not the law of the State of California or the Ninth Circuit").

Consequently, Groupon failed it to establish inevitable disclosure, undermining its ability to show any likelihood of success on the merits of its ITSA and DTSA claims.

### 3. Groupon has Failed to Demonstrate Irreparable Harm

Groupon relies entirely on its presumption that harm will occur, rather than demonstrating how it will actually be harmed. Although harm may be presumed in some instances, those presumptions are rebuttable by a showing that the movant will not suffer any harm in the absence of an injunction. *Vienna Beef Ltd. v. Red Hot Chicago, Inc¸* 833 F.Supp.2d 870, 876 (N.D. Ill. 2011) (citing *Computer Associates Intern. v. Quest Software, Inc.,* 333 F.Supp.2d 688, 700 (N.D.Ill. 2004)). Groupon's argument that Mr. Shin accepted employment at its "direct competitor" in a role where he will "necessarily rely upon and Divulge Groupon's trade secrets" is false and unsupported by anything other than its speculation. (Groupon TRO at p. 32.) "[S]peculative injuries do not justify this extraordinary remedy," and "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *Trustees of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*, 992 F.Supp.2d 870, 879 (N.D. Ind. Jan. 21, 2014) (quoting *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005)).

As detailed above, Yelp is not a direct competitor of Groupon and Mr. Shin's seven-month experience at Groupon did not expose him to any proprietary information that is of any

value in his new role at Yelp. Mr. Shin used his previous 25 years of experience to employ a standard best practices eCommcere playbook so nothing he learned or created for Groupon was unique, or involved specialized knowledge that is not already known publically. He is working for Yelp in a different role, in a different department, and he and Yelp have taken steps to protect against any disclosure of Groupon's claimed secrets, and given Groupon assurances that its information will not be used.

Groupon's allegation of irreparable injury is severely undercut by its failure to take any steps indicating a real concern about confidentiality before filing suit. Groupon continued to employ Mr. Shin (virtually) in Washington each day during the notice period without implementing any restriction on his access to Group's information despite knowing that Mr. Shin would start his employment with Yelp on November 15, 2021. Groupon also obdurately refused to engage in any real dialogue with Shin or Yelp to address its supposed concerns. That is not the behavior of a company with legitimate concerns; rather, it bespeaks gamesmanship and spite. Not until Mr. Shin's last day of employment did Groupon file this lawsuit, almost 15 days after Mr. Shin provided notice of his intent to work at Yelp. (Shin Declaration at ¶ 9; Dkt. No. 1.) The harm to Mr. Shin from being unable to work far outweighs the unsupported risk to Groupon that he will disclose any confidential information, which he already declared he does not have, and would not do. (Shin Declaration at ¶¶ 17, 22, 24, 32.)

Groupon repeatedly failed to engage with counsel for Yelp and for Mr. Shin when they asked it to identify any alleged trade secrets or confidential information that it was concerned about so they could taken any further steps to protect against disclosure. Its failure further undercuts Groupon's assertion that it will suffer harm in the absence of a TRO.

### 4.    Groupon Has an Adequate Remedy at Law

Groupon has failed to establish why it could not be adequately compensated with money damages for any harm shown if it could ultimately establish a breach. In conclusory fashion, Groupon alleged that its "injuries resulting from Shin's conduct are not easily ascertainable."

(Groupon TRO at p. 33.) This is insufficient. Groupon has failed to concretely identify even one reason why this dispute renders a financial remedy inadequate.

In order to establish irreparable injury, Groupon bears the burden to show that its legal remedy is inadequate in that money damages will not be adequate compensation or the damages escape pecuniary valuation. *Kessler v. Continental Cas. Co.*, 132 Ill.App.3d 540, 545 (1st. Dist. 1985) (citing *Bally Manufacturing Corp. v. JS & A Group, Inc.*, 88 Ill.App.3d 87, 94 (1980).

Groupon's reliance on *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994) ") and *Tyler Enterps. of Elwood, Inc. v. Shafer*, 573 N.E.2d 863, 866 (3d Dist. 1991) are misplaced. In both cases, the defendant had access to confidential information, lured away clients, and worked for a direct competitor. This is in contrast to the facts here. Mr. Shin had access to standard eCommerce strategies that he brought to Groupon through his 25 years of experience in the industry. Mr. Shin has not lured any clients away and has declared that he will not do so. (Shin Declaration at ¶¶ 13-24, 32.) Moreover, Yelp and Groupon are not direct competitors. (*See id*. at ¶¶ 25-29; *see also* Patel Declaration ¶¶ 3-20.) Groupon's reliance on *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004) and *IDS Fin. Servs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) similarly fail, as Mr. Shin has not appropriated or misused any of Groupon's alleged trade secrets. (Shin Declaration at ¶¶ 13-24, 32.) Yelp has also affirmatively enforced its own policies that prohibit improper use or disclosure of information of prior employers. (Daire Declaration at ¶ 7.)

The undisputed facts here show that Groupon will not be irreparably harmed in the absence of a TRO. Despite advance notice that Mr. Shin was leaving, the company did not cut of his access to any alleged trade secets and did not identify any such secrets when requested by counsel for Yelp and Mr. Shin when they offered to take additional precautions to protect such information. Groupon concedes that Mr. Shin took nothing from Groupon and does not contend that he has disclosed any secrets to anyone or that he intends to. Its unsupported hypothesis of inevitable disclosure is simply too speculative to amount to any showing of irreparable harm.

26

5.       **The Balance of Hardships Favor Mr. Shin**

The logical consequence of Groupon's Motion is to prevent Mr. Shin from working for any company that uses standard internet advertising techniques to connect consumers with businesses.  In Mr. Shin's areas of expertise, that is the same as preventing him from working at all, anywhere.  The enhanced yoke that Groupon is attemping to place on Mr. Shin is to:  (1) work indefinitely for Groupon until it decides that his new place of employment is not a competitor (Complaint at ¶ 1); (2) never disclose any pre-Groupon knowledge and expertise (Complaint at ¶ 2; Shin Declaration at ¶¶ 13-24); and (3) restrict him from working anywhewre since there are "no geographic parameters" given his "Global" title.  (Groupon Motion for TRO at p. 22.)  Groupon argues that the TRO request is to "require Shin to adhere to and uphold his contractual obligations . . . [to] be prohibited from holding a role with similar responsibilities as he held at Groupon."  (*Id*. at p. 35.)  But Mr. Shin is already doing this.  He does *not* have a similar role at Yelp.  He does *not* have similar responsibilities at Yelp.  (Patel Declaration at ¶¶ 16-18; Shin Declaration at ¶¶ 11, 12, 25-29, 32.)  And he has made clear he will not solicit Groupon clients in his new role.

In considering a request for a preliminary injunction, a district judge must choose the course of action that will minimize the cost of being mistaken. *American Hosp. Supply v. Hospital Prod., Ltd.,* 780 F.2d 589, 593 (7th Cir.1986).  On balance, the greater harm would result from enjoining Mr. Shin from working.  Groupon is far more economically resilient.  The financial disparity between the parties is huge.  Given its annual revenue, any potential loss to Groupon pales in comparison to Mr. Shin's loss of livelihood.

Given how, speculative, vague, and unsupported Plaintiff's claims regarding misappropriation of trade secrets and confidential information any hardship to Groupon is too amorphous to credit.  Furthermore, since Yelp and Groupon are not direct competitors, and Mr. Shin's new role at Yelp is entirely different and in a completely different department, the hardship is even harder to imagine.

27

If the Court does not vacate the TRO, Mr. Shin will be out of work, barred from using decades of non-Groupon-related knowledge and experience to earn a living in the profession to which he has dedicated the last 25 years of his life. (Shin Delcaration at ¶ 35.)

### 6. The Issuance of the TRO Harms the Public Interest

Both Washington and Illinois have strong public interests in protecting an employee's right to work. *Brunner & Lay, Inc. v. Chapin*, 29 Ill.App.2d 161, 167, 172 N.E.2d 652, 655 (1st Dist. 1961) (explaining that "[d]epriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer," and finding that the chancellor "erred in ordering the issuance of the temporary injunction" thereby reversing the temporary injunction"); *Wood v. May*, 73 Wash.2d 307, 311, 438 P.2d 587, 590 (1968) (holding the restrictive covenant to be in violation of public policy and that "[i]t was correct to refuse to enforce this restriction as written, since it is both unduly harsh to respondent in curtailing his legitimate efforts to earn a livelihood and unnecessary for the protection of the legitimate interests of appellant").

Indeed, "In Illinois, restrictive covenants are disfavored in the law and closely scrutinized because they are repugnant to the public policy encouraging an open and competitive marketplace." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 817 (N.D. Ill. 2009), on reconsideration in part (May 13, 2009) (quoting *Roberge v. Qualitek Int'l, Inc.*, 2002 U.S. Dist. LEXIS 1217, at *12, 2002 WL 109360, *4 (N.D. Ill. Jan. 28, 2002) (invalidating an employee's non-compete agreement). Indeed, "As a general rule, Illinois courts are reluctant to enforce restrictive covenants." *Id.*

Covenants are likewise disfavored in Washington. *See Perry v. Moran*, 109 Wash.2d 691, 706, 748 P.2d 224, 232 (1987), modified on reconsideration, 111 Wash. 2d 885, 766 P.2d 1096 (1989) (concurrence) ("Well established public policy in Washington disfavors contracts in restraint of trade."); RCW 49.62 (effectuated major reform of restrictive covenant law based on the Washington legislature's finding covenants unreasonable contracts of adhesion where they do not meet multiple minimum requirements because they limit workforce mobility that is

important to Washington's economic growth and development, so statute to be construed "liberally for the accomplishment of its purposes." RCW 49.62.025, .110; *CVS Pharmacy, Inc. v. Brown*, Case no. C21-306 MJP, 2021 U.S. Dist. LEXIS 49450 at * 3-4 (W.D. Wash., Mar. 16, 2021) (holding that the "Washington Noncompete Act renders CVS's noncompete unenforceable because it requires Brown to 'adjudicate a noncompetition covenant outside of' Washington'").

Accordingly, the public interest eschews enforcement of a non-compete that may be illegal, overbroad, excessive, or otherwise unreasonable. A TRO should be entered only when the plaintiff has met the high burden of showing it is likely to prevail at trial and, in the absence of a preemptive order preventing the employee from working, the employer will suffer an immediate harm. Groupon has come nowhere close to meeting this burden to show it is in the public interest to strip Mr. Shin of his current employment during the pendency of this lawsuit. The existing TRO altered the status quo, and deprived Mr. Shin of both the right to work and the rights conferred upon him by the Washington legislature. Preventing a person from engaging in gainful employment under an overbroad and unenforceable noncompete convenant is contrary to Illinois's policy rationale disfavoring these restrictive covenants. *See Saban v. Caremark Rx, LLC*, 780 F.Supp.2d 700, 737 (N.D. Ill. April 11, 2011) (holding that "the effect of an injunction on Saban would result in an unreasonable restraint on trade and competition, which harms the public interest").

## IV. CONCLUSION

Mr. Shin respectfully requests that this Court vacate the TRO.

DATED: November 21, 2021

> */s/ Jeffrey L. Taren*
> Jeffrey Taren, Illinois BAR#2796821
> MacDONALD HOAGUE & BAYLESS
> 705 Second Avenue, Suite 1500
> Seattle, WA 98104
> Phone: (206) 622-1604
> Email: jeffreyt@mhb.com
> Attorneys for Defendant Sung Shin