# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GROUPON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-06082 |
| v. | ) | |
| | ) | Honorable Judge Charles P. Kocoras |
| SUNG SHIN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF GROUPON, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SUNG SHIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2), OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404; AND REQUEST FOR ORDER <u>VACATING TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL SUPPLEMENT ....................................................................................................2

ARGUMENT ..........................................................................................................................4

    I.     SHIN'S OBJECTIONS TO JURISDICTION LACK FACTUAL AND LEGAL BASES. ...............................................................................................4

          A.     Shin's Substantial Illinois Contacts Establish Personal Jurisdiction...........4

               1.     Shin's Illinois ties are more than sufficient to confer specific jurisdiction...................................................................................4

               2.     Illinois law supports the Court's personal jurisdiction over Shin. ......................................................................................7

    II.     SHIN'S ARGUMENTS TO AVOID THE AGREEMENT'S LEGITIMATE FORUM SELECTION CLAUSE ARE WITHOUT MERIT. ..................................................................................................9

          A.     Shin's reliance on CVS Pharmacy v. Brown to avoid Illinois law and Illinois forum is misplaced. ............................................................9

          B.     Shin misstates and misrepresents the plain language of Washington's statute in an attempt to avoid a legitimate forum selection provision.................................................................10

    III.    SHIN'S REQUEST FOR A VENUE TRANSFER ALSO FAILS. .....................13

CONCLUSION......................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*A&R Logistics Holdings, Inc. v. Curl*
   No. 19-cv-6867, 2015 WL 5561179 (N.D. Ill. 2015) ............................................. 8

*Coffey v. Van Dorn Iron Works*
   796 F.2d 217 (7th Cir. 1986) ............................................. 13

*CVS Pharmacy v. Brown*
   No. C21-306 MJP, 2021 WL 807666 (W.D. Wash., Mar. 16, 2021) ..................... 9

*Felland v. Clifton*
   682 F.3d 665 (7th Cir. 2012) ............................................. 8

*G & S Holdings LLC v. Cont'l Cas. Co.*
   697 F.3d 534 (7th Cir. 2012) ............................................. 13

*Gehrett v. Lexus*
   2012 WL 3644008 (N.D. Ill. 2012) ............................................. 15

*Graham v. United Parcel Serv.*
   519 F. Supp. 2d 801 (N.D. Ill. 2007) ............................................. 15

*IFC Credit Corp. v. Rieker Shoe Corp.*
   378 Ill. App. 3d 77 (1st Dist. 2007) ............................................. 6

*Illinois v. Hemi Group LLC*
   622 F.3d 754 (7th Cir. 2010) ............................................. 5

*Int'l Molding Mach. Co. v. St. Louis Conveyor Co.*
   01 C 8305, 2002 WL 1838130 (N.D. Ill. Aug. 9, 2002) ............................ 15

*Judge v. UniGroup, Inc.*
   2017 U.S. Dist. LEXIS 9826, 2017 WL 345561 (N.D. Ill. 2017) ................... 14

*Law Bulletin Publ'g Co. v. LRP Publ'ns Inc.*
   992 F. Supp. 1014 (N.D. Ill. 1998) ............................................. 13

*Liqui-Box Corp. v. Scholle IPN Corp.*
   No. 1:19-cv-4069, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ................... 7

*Oelze v. Score Sports Venture, LLC*
   401 Ill. App. 3d 110 (1st Dist. 2010) ............................................. 6

*Reeve v. Ocean Ships, Inc.*
    Case No. 10 C 8147, 2011 WL 3165765 (N.D. Ill. July 27, 2011).........................4

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*
    626 F.3d 973 (7th Cir. 2010) ...............................................................13

*Rexa, Inc. v. Chester*
    No. 17 C 8716, 2021 WL 826629 (N.D. Ill. Mar. 2, 2021)..................................12

*Russell v. SNFA*
    2013 IL 113909 ...............................................................................4

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*
    155 F. Supp. 3d 772 (N.D. Ill. 2016)........................................................6

*Ski Acres v. Kittitas County*
    118 Wn. 2d 852 (Wash. 1992) ...............................................................11

*Soh v. Target Mkt Sys.*
    353 Ill. App. 3d 126 (1st Dist. 2004)......................................................11

*Tekway, Inc. v. Agarwal*
    No. 19-CV-6867, 2020 WL 5946973 (N.D. Ill. Oct. 7, 2020) .........................7, 8, 9

*Thurner Heat Treating Corp. v. National Labor Relations Board*
    704 F.2d 347 (7th Cir. 1983) ...............................................................11

*United States v. Diggs*
    385 F. Supp. 3d 648 (N.D. Ill. 2019), reconsideration denied, No. 18 CR 185, 2020
    WL 208826 (N.D. Ill. Jan. 14, 2020) .......................................................10

*United States v. Glaser*
    14 F.3d 1213 (7th Cir. 1994) ...............................................................10

*WAV, Inc. v. Walpole Island First Nation*
    47 F. Supp. 3d 720 (N.D. Ill. 2014) .........................................................7

*Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*
    2017 WL 11559788 (N.D. Ill. August 16, 2017)............................................14, 15

<u>Statutes</u>

28 U.S.C. § 1401(a) ...............................................................................14

28 U.S.C. § 1404 .................................................................................1, 15

28 U.S.C. § 1404(a) ...............................................................................13

RCW 49.62.020 ...............................................................................10, 12, 13

RCW 49.62.020(1)(a)(i) ............................................................................ 12, 13

RCW 49.62.020(1)(a)(ii) ................................................................................ 12

RCW 49.62.020(1)(b) ..................................................................................... 12

RCW 49.62.020(1)(c) ...................................................................................... 12

RCW 49.62.020(2) .......................................................................................... 13

RCW 49.62.050 .......................................................................... 1, 10, 11, 13

RCW 49.62.050(1) .......................................................................................... 11

RCW 49.62.050(2) .......................................................................................... 11

Rules

Fed. R. Civ. P. 12(b)(2) ............................................................................ 1, 15

Plaintiff, Groupon, Inc. respectfully submits the following Response in Opposition to Defendant Sung Shin's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404; and Request for Order Vacating Temporary Restraining Order (the "Motion"):

## **INTRODUCTION**

Shin misstates fact and law in an attempt to evade this Court's invocation of jurisdiction and its November 16, 2021 Order ("Order") granting Groupon's Emergency Motion for Temporary Restraining Order ("TRO Motion"). Shin's misstatements go so far as to *deliberately* misquote a key statute; he changes "and" to "or" in RCW 49.62.050. This action is properly before the Court, which rightly granted Groupon's record-based application for a TRO. The Court should continue to exercise jurisdiction, deny the request to transfer, and extend the TRO.

In granting the TRO, the Court reviewed Groupon's moving papers, including the legion of facts connecting Shin and this action to Illinois, and entered the TRO. Shin does not, and cannot, dispute any of those facts. Shin instead wrongly claims Groupon invokes the Court's jurisdiction solely on the basis of a venue-selection clause in the Confidentiality, Intellectual Property and Restrictive Covenants Agreement (the "Agreement"). He selectively omits and ignores his substantive Illinois contacts and the significant benefits he reaped from his Illinois-based employment, all of which are in the record.

Shin, in the alternative, seeks to transfer this action to the Western District of Washington. There is no legal basis to do so. The private and public interest factors disfavor transfer. Shin's Washington residency is that state's only connection to the litigation. Shin's substantive Illinois contacts give Illinois a materially greater interest in adjudicating the action. Nothing under Illinois law or in the Agreement, the terms of which Shin knowingly and voluntarily accepted, deprives Shin of any rights in Washington. Shin's *deliberate* misquote of the Washington non-compete

statute underscores the impropriety of this argument. Nowhere does the statute require application of Washington law or selection of a Washington venue for adjudication.

Moreover, Shin's request to vacate the Court's Order granting Groupon's Motion is procedurally improper and simply inadequate under Illinois law[1]. Groupon's record evidence supporting the Court's TRO remains unrebutted.

## **FACTUAL SUPPLEMENT**

Shin's Declaration selectively omits and outright misstates the circumstances of his employment in an attempt to minimize his Illinois contacts. Shin disingenuously describes his Groupon duties (*i.e.*, those duties arising from his Illinois-based employment) as "not based out of Illinois or connected directly to Illinois" or just "logistical" check-ins. (Decl., ¶ 6). This is inaccurate. As Groupon's head of advertising, Shin's duties and responsibilities were inextricably tied to Groupon's collective business operations in Illinois, and his efforts directly connected to Groupon's headquarters in Illinois. Further, Shin headed one of Groupon's core strategic initiatives, with its roots, implementation, and effects centrally based in Illinois. *See* Declaration of Simon Goodall, attached hereto as **Exhibit A,** ¶ 16. Shin also directed several Illinois-based subordinates to implement his advertising initiatives, and Shin's direct supervisor, Groupon's Illinois-based Chief Revenue Officer Simon Goodall, conducted all of his management duties out of Illinois which included regular strategic meetings, and analysis and review of Shin's work. *Id.* at ¶¶ 14, 16, 18.

Next, Shin misrepresents the nature and scope of his Groupon communications. Shin incorrectly claims "[t]he majority of my communications were directed to supervisors and

---

[1] Because Shin filed a Response in Opposition to Groupon's Emergency Motion for Temporary Restraining Order in the early hours of November 22, 2021 and Groupon intends to submit a short reply in support of its Motion, Groupon does not address Shin's arguments to "vacate" in detail in this submission.

subordinates in Washington and California, to develop the business outside of Illinois." (Decl., ¶ 6). Shin communicated regularly with Goodall, as well as Shin's five direct reports, the majority of whom reside in Illinois. *See* **Exhibit A,** ¶ 14. Shin conveniently refers to direct reports *outside* of Illinois but fails to cite to the three direct reports in Illinois he supervised. *See id.* Additionally, Shin's meetings with Goodall were not mere "logistical 'check in' meetings." The meetings often concerned Groupon's advertising performance metrics, from which Shin developed and implemented advertising strategies. *See id.,* ¶ 16. Goodall interacted multiple times per week with Shin concerning topics including advertising strategy, advertising business performance, Groupon's Coupons business performance, and total Company performance. *See id.* This is not surprising, as Goodall was Shin's direct supervisor and is a member of Groupon's S-TEAM. Shin also participated in global weekly and monthly business reviews which were led by Illinois-based employees. *See id.,* ¶ 17.

Shin further omits that he accepted trade secrets and confidential information generated and originated in Illinois. Groupon's leadership, including Goodall and the Company's interim Chief Executive Officer, its Chief People Officer, its interim Chief Financial Officer, its Chief Commercial Officer, and its Chief Administrative Officer, are all based in Illinois. Moreover, Shin's compensation was paid from Illinois, and his RSUs represented equity in an Illinois company. *See* **Ex. A**, ¶¶ 10, 12.

Shin could not have reasonably anticipated litigating in a forum other than Illinois. He knowingly and voluntarily entered into the Agreement, which contains clear Illinois choice of law and venue provisions.

Shin also mischaracterizes his role at Groupon to minimize its inherently competitive dynamic with his position at Yelp. Shin regularly analyzed merchant-by-merchant analyses of

advertising spend, return on advertising spend and advertising profitability to develop and implement Groupon's advertising strategies, belying Shin's contention that his Groupon role did not require he access confidential information. (Decl., ¶ 13). Shin also ignores the troves of merchant-specific metrics he regularly studied to target merchants with customized advertising strategies. These are the *same* merchants Yelp targets for advertising spend. (Cmplt., ¶¶ 71, 72).

## ARGUMENT

I.   **SHIN'S OBJECTIONS TO JURISDICTION LACK FACTUAL AND LEGAL BASES.**

   *A.   Shin's Substantial Illinois Contacts Establish Personal Jurisdiction.*

   1.   Shin's Illinois ties are more than sufficient to confer specific jurisdiction[2].

As detailed in Groupon's TRO Motion and supporting papers, Shin has more than sufficient minimum contacts to confer specific jurisdiction. Under Illinois's long-arm statute, a nonresident submits to the jurisdiction of the Illinois courts by (i) transacting business within the state and (ii) making a promise substantially connected with Illinois. *See Reeve v. Ocean Ships, Inc.*, Case No. 10 C 8147, 2011 WL 3165765 (N.D. Ill. July 27, 2011). Both factors are satisfied.

Shin had substantive Illinois connections by virtue of his Groupon employment. Specifically:

- Shin knowingly sought and accepted employment with an Illinois-based company;

- During the interview process, Shin interviewed with Groupon employees (save one) who were based in Illinois;

- Shin received an ample compensation package, including a $100,000 sign-on bonus[3], a $275,000 base salary, eligibility for an annual bonus with a target of 40% of this base

---

[2] Shin's references to general jurisdiction are off-point. Groupon does not need to demonstrate that Shin's Illinois contacts confer this Court with *both* general and specific jurisdiction. *See Russell v. SNFA*, 2013 IL 113909, P1 (explaining that determining whether "the minimum contacts test has been satisfied depends on what category of personal jurisdiction is being sought—*either* general *or* specific") (emphases added).
[3] Shin's Offer Letter explained that if Shin's employment with Groupon were to terminate within two years, he would be required to repay the signing bonus. Shin initially refused to repay the signing bonus. Shin only repaid it *after* Groupon sued him and the Court granted Groupon's Motion.

salary, all of which were paid from Illinois;

- Shin received Restricted Share Units valued at $700,000 in an Illinois company;

- Shin accessed Groupon's trade secrets and confidential information (solely by virtue of employment with his Illinois employer) that generated and originated from Illinois;

- Shin reported directly to Groupon's Chief Revenue Officer, who is based in Illinois;

- Groupon's senior leadership, including its interim Chief Executive Officer, Chief People Officer, interim Chief Financial Officer, Chief Commercial Officer, and Chief Administrative Officer are all based in Illinois;

- Shin participated in Groupon's strategic weekly and monthly business reviews led by Illinois-based employees;

- Shin's duties as Global Head of Advertising were directly connected to Illinois, where all his services and efforts materialized through Groupon's headquarters in Illinois;

- Shin regularly communicated with Groupon's Illinois-based employees, including a majority of his direct reports;

- Shin met multiple times per week with his Illinois-based supervisor concerning topics such as advertising strategy, advertising business performance, coupons business performance and total company performance;

- Shin led a presentation to the entire senior leadership ("S-TEAM"), including among others, Groupon's Interim CEO, CFO, and CCO, all based in Illinois, on Groupon's business advertising strategy;

- Shin attended the Company's Global and Monthly Business Review Meetings, led by Illinois-based employees; and

- Shin knowingly and voluntarily entered into the Agreement which clearly and expressly designated an Illinois forum and application of Illinois law. **Ex. A**, ¶¶ 6-8, 10-12, 13, 14, 16-18.

Based on these significant contacts, the Court rightly determined it has personal jurisdiction over Shin. *See Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (finding personal jurisdiction over the non-resident defendant and explaining that the defendant "wants to have its cake and eat it, too: it wants the benefit of [conducting business in Illinois] with none of the exposure"). Shin attempts to downplay his significant Illinois contacts, wrongly contending he

communicated primarily with Washington- and California-based Groupon employees, only had "logistical" check-ins with Illinois supervisors, and assumed responsibilities not based in or directly connected to Illinois.[4] (Mtn., p. 9). Even if Shin's characterizations were true, they are countered by the litany of other Illinois connections he ignores. If all of these other facts are disregarded, at most, Shin's contention regarding employee communication creates a question of fact precluding dismissal. *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 789 (N.D. Ill. 2016) (finding questions of fact are inappropriate for resolution on a motion to dismiss).

Shin also made a promise substantially connected with Illinois when he knowingly and voluntarily entered into the Agreement designating an Illinois forum and choice of law. His contention that he anticipated litigating in Washington is disingenuous. (Decl., ¶ 7). He did not dispute application of Illinois law or venue. He did not tell Groupon he wanted the Agreement governed by Washington law. **Ex. A,** ¶ 9. Shin is a sophisticated and highly educated businessman. *Id.* He negotiated his salary and could have negotiated other terms. *Id.* He did not. *Id.* Shin had a general duty to read documents before he signed them, and his failure to do so does not render the Agreement unenforceable. *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110 (1st Dist. 2010); *see IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 93 (1st Dist. 2007) (holding there is a presumption the party read and understood and agreed to be bound by the terms). By executing the Agreement, Shin acknowledged:

> ***I have substantial material connections to Illinois*** by way of my employment with Groupon. As such, I agree that this Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Illinois.

---

[4] In the event Shin attempts to rely on the *CVS* Rhode Island action, the facts here are far different, No. 21-070 WES, 2021 U.S. Dist. LEXIS 39688 (Mar. 3, 2021). There, the employee joined and accepted stock in a Connecticut company subsequently acquired by a Rhode Island company. Here, Shin knowingly joined an Illinois company. He knowingly and voluntarily chose to accept a significant salary, a signing bonus, and stock from and in an Illinois company.

Each of the parties irrevocably consents to the exclusive personal and subject matter jurisdiction of the federal and state courts located in Illinois . . . for any matter arising out of or relating to this Agreement. . . Cmplt., Ex. A, ¶ 23 (emphasis added).

Shin further promised to abide by the Agreement's terms, and he received valuable and sufficient consideration in exchange for such agreement, including over a million dollar compensation package and access to Groupon's Illinois-based trade secrets. *See WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720, 728 (N.D. Ill. 2014) (finding personal jurisdiction where the defendant's "refusal to perform the obligations of a contract it negotiated and entered with [plaintiff], an Illinois company, gives rise to the claim"). Groupon is not taking action against a low-level, unsophisticated employee with no connection to Illinois. Groupon seeks only to prevent a highly compensated Vice President from going to its direct competitor, Yelp, to drive the very same business strategy he drove at Groupon and through which he had overwhelming and regular connections in Illinois.

### 2. Illinois law supports the Court's personal jurisdiction over Shin.

Shin's efforts to distinguish *Liqui-Box Corp. v. Scholle IPN Corp.*, No. 1:19-cv-4069, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021), and *Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *1 (N.D. Ill. Oct. 7, 2020) are unavailing. Shin wrongly argues *Liqui-Box* is distinguishable because of two stray facts: (1) Shin did not travel to Illinois, and (2) he worked for Groupon for just under seven months. Despite Shin's efforts to parse and distort the *Liqui-Box* decision, the Court considered the defendant's Illinois contacts collectively, not individually. The Court in *Liqui-Box* found substantial connections with Illinois based on a number of factors present here. There, as here, the defendant regularly communicated with the employer's Illinois employees, reported to an Illinois-based supervisor, was paid from the employer's Illinois bank accounts, and accessed confidential information and emails stored in the employer's Illinois servers. *See generally Liqui-Box*, 2021 WL 5006692. Illinois law does not require a defendant to

physically enter Illinois to confer jurisdiction over him. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (stating personal jurisdiction "cannot be avoided simply because a defendant did not physically enter the forum state")[5].

Shin mischaracterizes *Tekway* as "distinguishable" on the strained grounds that "[t]he choice of law and choice of forum provisions at issue in that case had not been codified by the legislature as illegal, as they have in the state of Washington." (Mtn., p. 11). The Agreement's selection of an Illinois forum and choice of law is not "illegal" under Washington law. Nothing in the Washington statute requires application of Washington law, and nothing in the Washington statute requires selection of a Washington venue. *Tekway* is on all fours with this case and supports this Court's invocation of personal jurisdiction over Shin. *See Tekway,* 2020 WL 5946973, at *1 (finding personal jurisdiction over the Colorado-based defendant where he entered into an employment relationship with an Illinois company and the claims arose out of the relationship).

This Court's decision in *A&R Logistics Holdings, Inc. v. Curl* provides further support for the Court's invocation of personal jurisdiction over Shin. In *A&R Logistics*, the employer alleged the out-of-state employee breached a non-compete agreement, and the employee moved to dismiss for lack of personal jurisdiction. No. 19-cv-6867, 2015 WL 5561179 (N.D. Ill. 2015). The court denied the motion, finding the employee's Illinois ties sufficient to establish personal jurisdiction. Specifically, the court explained the employee was "well aware that he undertook [] responsibilities at the behest of a corporation headquartered in Illinois." 2020 WL 5946973, at *3. Although the employee executed his job responsibilities outside of Illinois (like Shin), the court reasoned he "knew that his continued employment and agreement to the non-compete and nondisclosure clauses in the stock options agreement would have substantial effect in Illinois

---

[5] But for the COVID-19 pandemic, Shin would have regularly traveled to Groupon's Illinois headquarters for these monthly management meetings. **Ex. A**, ¶19.

because [his employer's] operations headquarters [were] located there." *Id.* The court concluded "traditional notions of fair play and substantial justice" are not offended by requiring an employee who, like Shin, "had frequent and substantial contact with his out-of-state employer to be subject to the jurisdiction of courts in his employer's home state." *Id.* (internal quotations omitted). Shin's employment with Illinois-based Groupon similarly was "to a large degree [] associated with Illinois." *Id.* The court's analysis in *Curl* equally applies here, and the Court has personal jurisdiction over Shin.

## II. SHIN'S ARGUMENTS TO AVOID THE AGREEMENT'S LEGITIMATE FORUM SELECTION CLAUSE ARE WITHOUT MERIT.

### A. *Shin's reliance on CVS Pharmacy v. Brown to avoid Illinois law and Illinois forum is misplaced.*

As Groupon predicted, Shin attempts to rely on a *single,* stray comment in a decision from the Western District of Washington, *CVS Pharmacy v. Brown*, to argue the Agreement is invalid under Washington law. The *CVS* court's unexplained reading of the Washington non-compete statute is belied by the statute's plain language. In *CVS,* the court found CVS's entire non-competition clause unenforceable because it contained a Rhode Island venue and choice of law provision. No. C21-306 MJP, 2021 WL 807666 (W.D. Wash., Mar. 16, 2021). The CVS court did so in a single sentence embedded in a choice of law analysis and did not engage in any analysis of the statute or application of the facts to the statute.

The *CVS* court's finding is inconsistent with the Washington statute's plain language. As explained in more detail below, the Washington statute expressly provides "[a] provision in a noncompetition covenant . . . is void and unenforceable: (1) If the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state; and (2) To the extent it deprives the employee or independent contractor of the protections or benefits of

this chapter."[6]  Shin's reliance on *CVS* to evade Illinois law and this Court's jurisdiction is unavailing.

**B.**    ***Shin misstates and misrepresents the plain language of Washington's statute in an attempt to avoid a legitimate forum selection provision.***

Shin wrongly claims the Agreement's selection of an Illinois forum and choice of law is unenforceable because it violates a fundamental Washington public policy. (Mtn., p. 4).  Nothing in the Agreement violates Washington public policy, and Illinois non-compete law is entirely consistent with Washington's non-compete law. Shin has not been deprived of any rights under Washington law, and there is no public policy requiring disposition in Washington. In support of his faulty proposition, Shin's Motion conflates two provisions of Washington's non-compete act: RCW 49.62.050 (governing enforceability of "a *provision* in a non-competition covenant") and RCW 49.62.020 (governing enforceability of "a *non-competition covenant*").

Shin's reading of the statute's forum provision (RCW 49.62.050) contravenes the statute's plain language.  Rather than quote the full statutory language, Shin advances his own, errant rendition of the statutory provision by selectively quoting the statute and omitting dispositive statutory terms within that statute that doom his arguments.  He does not quote the most critical words.  First, Shin mis-paraphrases this portion of the statute as "prohibit[ing] an employer from requiring employees to agree to out-of-state choice of law and choice of forum clauses."  (Mtn., p. 4).  Second, he substitutes an "or" for what clearly appears in the statute as an "and" in an attempt to rewrite the statute in a way favorable to his arguments.  But the plain language of the statute refutes his arguments.

---

[6] Moreover, the Washington court's decision is not binding on this Court.  *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("Opinions 'bind' only within a vertical hierarchy."); *United States v. Diggs*, 385 F. Supp. 3d 648, 659 (N.D. Ill. 2019), reconsideration denied, No. 18 CR 185, 2020 WL 208826 (N.D. Ill. Jan. 14, 2020) (clarifying decisions in one circuit are not binding on district courts in another).

Groupon is entirely within its rights under the Washington law to bring suit here in Illinois, and the Court does not run afoul of Washington law by enforcing Groupon's rights and denying Shin's Motion. Even a cursory review of the Washington statute confirms Groupon's position is correct. The statute provides:

A ***provision*** in a noncompetition covenant signed by an employee or independent contractor who is Washington-based is void and unenforceable:

(1) If the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state; ***and***

(2) To the extent it deprives the employee or independent contractor of the protections or benefits of this chapter. (RCW 49.62.050) (emphases added).

As the plain language makes clear, a forum selection *clause* is only void and unenforceable if it requires adjudication outside of Washington ***and*** it deprives the employee of the protections or benefits of the chapter. Nowhere does the statute require application of Washington law and nowhere does the statute require selection of Washington venue for adjudication.

Adopting Shin's distorted reading of the statute would render prong (2) of RCW 49.62.050 superfluous. The statute expressly provides that "[a] provision in a non-competition covenant" is void and unenforceable where both RCW 49.62.050(1) "*and*" RCW 49.62.050(2) are met. *See Thurner Heat Treating Corp. v. National Labor Relations Board*, 704 F.2d 347 (7th Cir. 1983) ("It is a basic rule of statutory construction that, if possible, effect is given to each and every word, clause, and sentence in a statute and a construction that results in any portion of a statute being held superfluous should be avoided."); *Soh v. Target Mkt Sys.,* 353 Ill. App. 3d 126 (1st Dist. 2004) ("As a general rule, the use of the conjunctive as in the word 'and,' indicates that the legislature intended for all of the listed requirements to be met."); *Ski Acres v. Kittitas County*, 118 Wn. 2d 852 (Wash. 1992) ("Where a statute contains an 'and' and not an 'or,' we thus read 'and' to mean the conjunctive, rather than the disjunctive which 'or' would have implied.").

The Agreement does not deprive Shin of any benefits or protections under the Washington statute. The terms of the Agreement fully comply with Washington's statutory requirements.[7] The Washington statute provides a non-competition covenant is void and unenforceable against an employee *unless* (1) the terms of the covenant are disclosed in writing to the prospective employee no later than the time of the acceptance of the offer of employment; (2) the employee's earnings from the party seeking enforcement, when annualized, exceed one hundred thousand dollars per year (this dollar amount is adjusted annually in accordance with the statute); and (3) it does not exceed eighteen months in duration after termination of employment. If these conditions are not satisfied, the employee is deprived of the rights and benefits conferred by the statute. *See generally* RCW 49.62.020.[8]

The Agreement complies with RCW 49.62.020 in every respect. Shin earned $275,000 annually as base compensation, well in excess of the $100,000 threshold, satisfying RCW 49.62.020(1)(b). The non-compete covenant's restricted period is eighteen (18) months post-

---

[7] The damages available under Washington's non-compete statute have no bearing on, or relation to, the Agreement's validity and enforceability under the statute. (Mtn., p. 5). Even so, if the court determines Groupon's claims are brought in bad faith , "federal courts have inherent power to award attorney's fees in a narrow set of circumstances, including when a party brings an action in bad faith." *Rexa, Inc. v. Chester*, No. 17 C 8716, 2021 WL 826629, at *3 (N.D. Ill. Mar. 2, 2021) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)).

[8] The statute also deems a noncompetition covenant void and unenforceable if the employee is terminated as a result of a layoff and enforcement of the noncompetition covenant does not include compensation equivalent to the employee's base salary at the time of termination for the period of enforcement minus compensation earned through subsequent employment during the period of enforcement. *See* RCW 49.62.020(1)(c). This requirement is inapplicable here because Shin was not terminated as a result of a layoff. Shin voluntarily resigned his employment with Groupon. Additionally, like Illinois, the statute deems a noncompetition covenant void and unenforceable if the covenant is entered into after the commencement of employment unless the employment provides independent consideration for the covenant. *See* RCW 49.62.020(1)(a)(ii). This requirement is inapplicable here because the Agreement was not entered into after the commencement of Shin's employment. The Agreement was disclosed to Shin in writing concurrent with his offer of employment and before he accepted the offer of employment, in compliance with RCW 49.62.020(1)(a)(i) and he was afforded sufficient consideration in exchange for his execution of the Agreement, namely the handsome compensation package detailed above.

employment, satisfying RCW 49.62.020(2). And, Groupon disclosed the Agreement to Shin concurrently with his offer of employment and before Shin accepted the offer of employment, satisfying RCW 49.62.020(1)(a)(i). Shin does not dispute these facts in his Declaration.

Notably, Shin does not argue the Agreement is non-compliant with RCW 49.62.020. *Compare* 49.62.020 (governing the enforceability of "non-competition *covenant[s]*")[9] *with* RCW 49.62.050 (governing "*provision[s]* in a noncompetition covenant") (emphases added). Shin's Washington residency is that state's only connection to the litigation, and it is outweighed by myriad other facts connecting this matter to Illinois. Shin's misrepresentations of Washington law do not – and cannot – divest this Court of personal jurisdiction.

## III.   SHIN'S REQUEST FOR A VENUE TRANSFER ALSO FAILS.

As an alternative, Shin asks the Court to transfer the action to the Western District of Washington. Neither private nor public interests warrant a transfer. For the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). A transfer under § 1404(a) is only appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Law Bulletin Publ'g Co. v. LRP Publ'ns Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998); *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). "[S]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to [a] case-by-case consideration of convenience and fairness." *Research Automation, Inc. v. Schrader-*

---

[9] Not that it matters given the Agreement's full compliance with and Illinois's accord with Washington law, but Shin has also waived any such argument by failing to raise it in his Motion. *See generally G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. . . . That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.").

*Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (internal quotations omitted).

Here, each of the Section 1401(a) factors weigh heavily against transfer. There is a "strong presumption in favor of the plaintiff's choice of forum if, as here, it is where the plaintiff resides." *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 2017 WL 11559788 (N.D. Ill. August 16, 2017). As the moving party, Shin has the burden of demonstrating the transferee forum as "clearly more convenient*"* and "must demonstrate that the balance of the factors weigh heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Id; Judge v. UniGroup, Inc*., 2017 U.S. Dist. LEXIS 9826, 2017 WL 345561, at *2 (N.D. Ill. 2017).

Here, the convenience of parties and witnesses strongly disfavor transfer. Because Groupon's "principal place of business is located in Illinois, the location of the material events weighs in its favor." *Zurich*, 2017 WL 11559788. Shin omits material facts in claiming Washington is more convenient for parties and witnesses because Shin's "resources . . . reside with him in Washington" and some employees with whom he interacted may reside in Washington. (Mtn., p. 16). While Washington may be more convenient for Shin, it is not for Groupon and it is not for nearly every witness likely to be called in this matter.

Groupon is headquartered in Illinois. Its executives, including Shin's supervisor, Goodall, the interim Chief Executive Officer, Chief People Officer, interim Chief Financial Officer, Chief Commercial Officer and Chief Administrative Officer, are all based in Illinois. The majority of Shin's direct reports also reside in Illinois. Further, the consequences of Shin's actions (*i.e.*, the competitive disadvantage an Illinois-based company has and will continue to suffer due to his breach) "occurred primarily, if not exclusively, in Illinois . . . weigh[ing] heavily against transfer." *Zurich,* 2017 WL 11559788. It is well-settled that "[t]ransfer is not appropriate where it would merely shift inconvenience from one party to another," which is exactly what Shin attempts to do.

*Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 810 (N.D. Ill. 2007).

The public interests also weigh against transfer. Shin knowingly and voluntarily executed the Agreement. In doing so, he agreed to the Agreement's clear and unambiguous Illinois forum and choice of law provisions. "Illinois has a strong interest in adjudicating injuries that occur within its borders. This interest extends to disputes that arise out of business relationships formed between Illinois residents and nonresidents." *Int'l Molding Mach. Co. v. St. Louis Conveyor Co.*, 01 C 8305, 2002 WL 1838130, at *5 (N.D. Ill. Aug. 9, 2002). Illinois undoubtedly has the greatest interest in adjudicating this dispute arising from Shin's breach of his noncompetition covenant and his threatened misappropriation of his Illinois-based employer's trade secrets. *See Int'l Molding Mach. Co.*, 2002 WL 1838130, at *5 (finding Illinois has a strong interest in adjudicating disputes concerning its corporate resident's trade secrets).

To the extent Shin's Washington residency gives that state some interest in the litigation, Groupon's Illinois residency, its Illinois-based trade secrets and confidential information, and its executives and other employees' Illinois residency give Illinois a more compelling interest. As a general rule, "a plaintiff's choice of forum should be disturbed only if the balance of the public and private interest factors strongly favors the defendant." *Zurich,* 2017 WL 11559788; *see also Gehrett v. Lexus*, 2012 WL 3644008, at * 2 (N.D. Ill. 2012). The private and public interests disfavor transfer to Washington.

## CONCLUSION

For the foregoing reasons, Plaintiff Groupon, Inc. respectfully requests this Court deny Defendant Sung Shin's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404; and Request for Order Vacating Temporary Restraining Order in its entirety, and award any other relief this Court deems equitable and just.

Dated:  November 22, 2021

Respectfully submitted,

GROUPON, INC.

By:  */s/ Kevin M. Cloutier*
One of Its Attorneys

Kevin M. Cloutier (6273805)
Shawn D. Fabian (6310637)
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
Tel: (312) 499-6300
Fax: (312) 499-6301
kcloutier@sheppardmullin.com
sfabian@sheppardmullin.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 22, 2021, a copy of the foregoing was

filed with the Court's CM/ECF system, which will serve all counsel of record.


    */s/ Kevin M. Cloutier*

    Kevin M. Cloutier