# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROUPON, INC., <br><br>     Plaintiff, <br><br> v. <br><br> SUNG SHIN, <br><br>     Defendant. | Case No. 21-cv-06082 <br><br> Honorable Judge Charles P. Kocoras |

## DECLARATION OF SIMON GOODALL

I, Simon Goodall, declare as follows:

1. I am the Chief Revenue Officer for Groupon, Inc. ("Groupon").

2. I have held the Chief Revenue Officer role for eleven months, and have been employed with Groupon since June 2011. Prior to serving as Chief Revenue Officer, I served as Chief Commercial Officer.

3. In my role as Chief Revenue Officer, my primary duties and responsibilities include overseeing Global Revenue Management, Global Advertising, North American Goods, and Coupons and driving overall global profit and loss delivery.

4. Groupon is an Illinois-based company, and it holds itself out to be an Illinois-based company. Groupon's headquarters are located at 600 W. Chicago Avenue, Chicago, Illinois 60654.

5. Groupon hired Sung Shin ("Mr. Shin") in February 2021 as its Vice President, Global Head of Advertising and Ancillary Revenue. Mr. Shin commenced employment with Groupon in March 2021.

6. During his interview process, Mr. Shin interviewed with Groupon employees (save one) who were based in Illinois.

7. In exchange for a base salary of $275,000, a $100,000 sign-on bonus, Restricted Share Units valued at $700,000, an annual bonus target of 40% of his base salary ($110,000), and access to Groupon's trade secrets and proprietary information, Mr. Shin executed the Confidentiality, Intellectual Property and Restrictive Covenants Agreement (the "Agreement"). In executing the Agreement, Mr. Shin agreed to an Illinois choice of law and Illinois forum for adjudication.

8. Mr. Shin voluntarily accepted employment with Groupon knowing Groupon was based in Illinois and knowing that most of its employees were located in Illinois.

9. Mr. Shin did not tell me he wanted the Agreement governed by Washington law. He is a sophisticated and highly educated businessman. He negotiated his salary and could have negotiated other terms of the Agreement, but he did not.

10. During Mr. Shin's employment with Groupon, I was his direct supervisor. I am based in Illinois. A majority of Groupon's leadership is based in its headquarters in Illinois, including Groupon's interim Chief Executive Officer, Aaron Cooper, its Chief People Officer, Claudine Kourkoumelis, its interim Chief Financial Officer, Damien Schmitz, its Chief Commercial Officer, Brian Fields, and its General Counsel and Chief Administrative Officer, Dane Drobny.

11. Mr. Shin accessed Groupon's confidential information and trade secrets solely by virtue of his employment with Illinois-based Groupon. The confidential information and trade secrets he obtained during his employment generated and originated from Groupon's headquarters in Illinois.

12. His compensation, including his salary and sign-on bonus, generated from Illinois. His RSUs represented equity in an Illinois-based company.

13. Mr. Shin's duties as Groupon's Vice President, Global Head of Advertising and Ancillary Revenue were directly connected to Illinois, where all his services and efforts materialized through Groupon's headquarters in Illinois.

14. Mr. Shin regularly communicated with Groupon's Illinois-based employees, including with me and with a majority of his direct reports. He supervised Illinois-based employees, and his entire management chain was located in Illinois.

15. Mr. Shin's duties and responsibilities were inextricably tied to Groupon's collective business operations in Illinois, and his efforts directly connected to Groupon's headquarters in Illinois.

16. My meetings with Mr. Shin and those that he attended were not simple "logistical" check-ins. We interacted multiple times per week concerning topics including Advertising Strategy, Advertising Business Performance, Coupons Business Performance, and total Company Performance. Mr. Shin's meetings with me often regarded Groupon's holistic and advertising-specific performance metrics, from which Mr. Shin developed and implemented advertising strategies. Groupon's advertising platform showcasing merchants' multi-location, enterprise, and local offerings, for which Mr. Shin developed and implemented strategies, is one of the core strategic initiatives for critical growth, and its roots, implementation, and effects were centrally based in Illinois.

17. Mr. Shin led a presentation to the entire senior leadership team, including among others, Groupon's Interim Chief Executive Officer, Chief Financial Officer, and Chief Commercial Officer, all based in Illinois, on Groupon's business advertising strategy.

18. Mr. Shin participated in Groupon's Global Weekly Business Reviews and Monthly Business Reviews. These meetings were led by Groupon employees based in Illinois.

19. Mr. Shin led the advertising for an Illinois-based company, and if it were not for the COVID-19 pandemic, Groupon would have expected Mr. Shin to have travelled to Illinois frequently.

I swear under penalty of perjury that the preceding information is true and correct to the best of my knowledge and belief.

By: *Simon Goodall*  
Name: Simon Goodall

November 22, 2021  
Date

4