# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROUPON, INC., | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 21-cv-06082 ) |
| SUNG SHIN, | ) Honorable Judge Charles P. Kocoras ) |
| Defendant. | ) ) ) |

## DECLARATION OF KEVIN M. CLOUTIER

I, Kevin M. Cloutier, declare as follows:

1. I am a Partner at Sheppard Mullin Richter & Hampton, LLP, and one of the attorneys representing Groupon, Inc. ("Groupon") in the above-referenced matter.

2. On November 3, 2021, our office sent Sung Shin a letter via email and overnight mail reminding him of his post-employment contractual obligations to Groupon and advising him that his prospective employment with Yelp, Inc. ("Yelp") would, among other things, violate his post-employment non-compete commitments to Groupon. Yelp's Chief Administrative Officer and General Counsel was copied on that letter. A true and accurate copy of the November 3, 2021 letter is annexed hereto as <u>Exhibit A</u>.

3. On November 5, 2021, I received a response from James Daire, in-house Litigation Counsel to Yelp.

4. On November 8, 2021, Mr. Daire and I had a discussion about our respective letters and clients' respective positions. On the call, Mr. Daire made the request that Groupon identify each and every trade secret it contended Mr. Shin had taken and to which Mr. Shin had access during his employment with Groupon. He told me that he expected a written disclosure from Groupon akin to California Code of Civil Procedure § 2019.210, which requires detailed

description of trade secrets on a pre-discovery basis in litigation involving the California Uniform Trade Secrets Act. I informed Mr. Daire that we believed his request was unreasonable at this stage of what I hoped would be pre-litigation discussions (and because we are not in California) and further provided him context for Groupon's concerns.

5. On November 10, 2021, Mr. Daire sent me an email following-up on our discussion. I responded to him via email the following day, on November 11, 2021, advising him I had been traveling the day prior. I also told him Mr. Shin had sent Groupon an email and a letter requesting Groupon communicate with Mr. Shin's recently retained counsel, Jesse Wing.

6. On November 11, 2021, I sent Mr. Wing an email informing him that Groupon had retained our Firm to represent it in connection with its dispute with Mr. Shin, and I requested Mr. Wing's availability for a call.

7. Mr. Wing and I communicated by phone on November 11, 2021. We generally discussed whether pre-litigation resolution was possible. On that call, I also told Mr. Wing that I would leave it up to him to tell me when, and if, we should involve Yelp's counsel, given Mr. Shin's request that I deal with Mr. Wing. Mr. Wing said he would, and he did not bring up Yelp's counsel again in that or any of our subsequent conversations.

8. In multiple telephone calls over the course of November 11 and November 12, 2021, Mr. Wing and I discussed whether there was a path to pre-litigation resolution. I laid out Groupon's position and potential parameters for a potential resolution. I asked Mr. Wing for assurances that Mr. Shin would be open to negotiating, including some period of time where Mr. Shin would not work for Yelp, and a correspondence promise that Mr. Shin would not start his employment with Yelp while we were negotiating.

9. Late on Friday, November 12, 2021, Mr. Wing called me and told me Mr. Shin was

rejecting Groupon's invitation to negotiate and further indicated Mr. Shin would be starting with Yelp on Monday, November 15, 2021. Based on these representations, Groupon filed its Complaint and Emergency Motion for Temporary Restraining Order that same night (November 12, 2021) – the same day Mr. Shin separated his employment with Groupon and two days before Mr. Shin was set to start his employment with Yelp.

10. The Court did not assign a judge or set a hearing date on the TRO at the time of filing or over the weekend, so we did not have specific hearing or contact information to communicate to Mr. Wing. Mr. Wing emailed me on Sunday, November 14, 2021, at or around 5:30 PM Central Time, and confirmed Mr. Shin would be starting at Yelp the next day. I promptly informed Mr. Wing that we had filed a complaint and a motion for a temporary restraining order against Mr. Shin, and we promptly sent Mr. Wing our suite of filings. I wrote that we would let him know as soon as we had a judge assignment and a hearing date. Mr. Wing had the filings prior to Mr. Shin's start of employment with Yelp on November 15, 2021.

11. On November 15, 2021, as soon as we received notice of the judge assignment, I emailed Mr. Wing to inform him Judge Kocoras was assigned to the case and we still did not have a hearing date. Mr. Wing responded and thanked me for the email.

I swear under penalty of perjury that the preceding information is true and correct to the best of my knowledge and belief.

By: _/s/ KC_  November 22, 2021
Name: Kevin M. Cloutier  Date

# Exhibit A

# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
312.499.6300 main
312.499.6301 fax
www.sheppardmullin.com

Kevin M. Cloutier
312.499.6304 direct
kcloutier@sheppardmullin.com

November 3, 2021

File Number: 51CE-344243

**VIA E-MAIL (SUNGHSHIN@GMAIL.COM) & OVERNIGHT MAIL**

Mr. Sung Shin
1525 C 19th Ave.
Seattle, Washington 98122

Re: <u>Your Post-Employment Obligations to Groupon, Inc.</u>

Dear Mr. Shin:

     Please be advised that Sheppard, Mullin, Richter & Hampton LLP represents Groupon, Inc. ("Groupon" or the "Company"). We understand you resigned from your employment with Groupon as Vice President – Global Head of Advertising and Ancillary Review on October 28, 2021. You announced an intention to commence employment with Yelp, Inc. ("Yelp") to Lead Product Management for Yelp's Enterprise and Multi-Location - Yelp Audiences and In-store Measurement Group. Groupon has serious concerns about the competitive nature of your proposed work with Yelp, a Groupon competitor, which we believe would violate your post-employment obligations to Groupon set forth in your Confidentiality, Intellectual Property and Restrictive Covenants Agreement (the "Agreement"), a copy of which is here attached.

     Your compensation (including a $100,000 sign on bonus and your base salary of $275,000, plus a bonus potential of 40% of your base salary, Restricted Share Units valued at $700,000, and perquisites) and your considerable access to Groupon's trade secrets and confidential information, including Groupon's overall advertising strategy, serve as ample consideration for the restrictive covenants in your Agreement. The restrictions set forth in the Agreement are reasonable and remain in full force and effect whether you decide to remain at Groupon or leave to pursue other opportunities.

     Groupon expects you to honor and to abide by your post-employment obligations and, if necessary, will legally enforce its rights under the Agreement through Court action, although Groupon hopes that this is not necessary. The Agreement prohibits you from, among other things, engaging in certain competitive activity, including employment with competitors like Yelp, specifically in positions with responsibilities similar to those you held at Groupon or in positions with access to confidential information similar to that which you are privy at Groupon. It also prohibits interference with customer relationships, disclosure of proprietary and confidential information, and solicitation of Groupon employees on behalf of you or a Groupon competitor. In pertinent part, the Agreement states:

13. <u>Non-Compete, Non-Solicit of Business, Non-Solicit of Employees/Contractors and No-Hire ("Restricted Covenants")</u>. I acknowledge and agree that during my employment and during the Restricted Period, regardless of the reason for my termination, I will not, without Groupon's consent, other than on behalf of Groupon:

(a) Directly or indirectly, and whether or not for compensation, . . . be employed by, consult with or contract with any entity which is in competition with Groupon in the Geographic Area. The restriction in the preceding sentence only applies to positions with responsibilities similar to any position I held with Groupon during the twelve (12) months preceding the termination of my employment or relationship with Groupon or in which I would have responsibility for and access to confidential information similar or relevant to that which I had access to during the twelve (12) months preceding the termination of my employment or relationship with Groupon. The Geographic Area shall mean any geographic territory where I was assigned to work and/or over which I had responsibilities during the twelve (12) months preceding the termination of my employment or relationship with Groupon and any area within a 50-mile radius of such geographic territory;

The Agreement also prohibits you from retaining, using and/or disclosing Groupon's proprietary information. In pertinent part, the Agreement states:

2. <u>Ownership and Confidentiality of Proprietary Information</u>.

. . .

(b) At all times, both during my employment by Groupon and after termination of such employment, I will keep in confidence and trust all Proprietary Information, and, except as necessary to meet Groupon's business needs, I will not: (i) use any Proprietary Information; (ii) directly or indirectly permit a third party to obtain access to any Proprietary Information; or (iii) transmit or disclose any Proprietary Information to any person, concern or entity. Further, I shall not make use of any Proprietary Information, directly or indirectly, for myself or for others, including, without limitation, in connection with any other employment or consulting capacity, or in connection with soliciting Groupon's customers, prospective customers, vendors, independent contractors, consultants, or business partners or Groupon's employees.

. . .

(c) All non-disclosure obligations of paragraph 2(b) above shall apply: (i) as to Proprietary Information other than trade secrets, at all times during my employment and for two (2) years after termination of such employment; and (ii) as to trade secrets, for as long as such trade secrets retain their status as a "trade secret" under applicable law.

The Agreement details "Proprietary Information" to include:

> [A]ny and all technical and non-technical information including patent, copyright, trademark, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, business methods, processes, apparatus, equipment, algorithms, software programs, domain names, social media handles, code, software source documents, flowcharts, tools, architectures, databases, menu layouts, routines, formats, data compilers and assemblers, and formulae related to the current, future and proposed products and services of Groupon or its subsidiaries, and including, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing manufacturing, customer lists, job histories, job performance and salary information of employees, business forecasts, sales and merchandising and marketing plans and information. "Proprietary Information" also includes proprietary or confidential information of any third party who may disclose such information to Groupon or to me under any obligation of confidentiality in the course of Groupon's business.

The role at Yelp is directly competitive with your role at Groupon, which similarly focuses on developing innovative advertising strategies to promote offerings to potential customers and to reach consumers throughout the purchase cycle. In Yelp's 2020 10-K, Yelp articulated its overall business strategy and competitive landscape as follows: "Our competitors consist of companies that **help businesses — particularly businesses in our strategically important Services categories and, to a lesser extent, restaurants category — connect and engage with consumers, including...providers of online marketing and tools for managing and optimizing advertising campaigns**, such as Google, Facebook and Twitter, as well as various forms of traditional offline advertising, including radio, direct marketing campaigns, yellow pages and newspapers…" (emphasis added).

Yelp's website further highlights that it is specifically targeting potential merchants to spend their advertising dollars directly with Yelp -- directly competing with Groupon for those limited advertising dollars from merchants. *See* https://business.yelp.com/products/yelp-ads/

Yelp also is advertising "deals" on its online marketing platform, which Yelp describes as, "discounted vouchers that customers can purchase for [merchant] business[es]" which is exactly what Groupon does to "help businesses…connect and engage with consumers."

The parallels between your position at Groupon and your anticipated position at Yelp, coupled with your orchestration and access to Groupon's confidential advertising strategies and plans, raise serious concerns, and it is Groupon's position that you taking this role at Yelp would violate the clear terms of your Agreement. Groupon does not believe you can perform your anticipated role with Yelp without violating the Agreement.

Accordingly, we hereby request you provide us with any information as to why you/Yelp believe this role is not competitive and would not violate your Agreement by November 5, 2021. A copy of this letter also is being provided to Yelp's Chief Administrative Officer and General Counsel and serves as notice of Groupon's position (based on the facts to-date) that your employment would violate your Agreement, and employing you would constitute tortious interference with the Agreement. We will consider any information you or Yelp provide. In the event, however, that we continue to believe this is a competitive activity, we reserve the right to pursue legal and equitable action to prevent a breach of our Agreement, or a tortious interference of our rights under the Agreement.

In addition, you and Yelp are hereby advised to take all necessary and appropriate steps to preserve documents, data and other evidence that may be relevant in this matter, including but not limited to any communications with Yelp related to your offer, your work at Groupon, and/or your Agreement as well as any text messages, emails, call logs relating to your potential work at Yelp or your work at Groupon

Finally, Groupon has already started a dialogue with you about potential options in light of the above. As Groupon discussed with you, Groupon is willing to continue to employ you in your current role provided you are fully committed to do so. If you are intent to leave Groupon, Groupon is willing to consider a transition period where you continue to work at Groupon while you search for other employment that would not violate your Agreement. The restrictions in your Agreement are narrowly tailored and there are *many* opportunities based on your skill set that would not compete with Groupon. Groupon, of course, would expect you to remain fully and faithfully committed to your work, including driving and executing advertising strategy, and it reserves all rights in the event you fail to do so.

If you have questions, please contact me directly. If you are represented by counsel, please forward this letter to your lawyer. Thank you for your prompt attention to this matter.

Very truly yours,

Kevin M. Cloutier
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


Encl.

cc: Laurence Wilson, Chief Administrative Officer and General Counsel, Yelp
Meagan LeGear, Groupon (via email only)

# CONFIDENTIALITY, INTELLECTUAL PROPERTY AND RESTRICTIVE COVENANTS AGREEMENT

In return for my new or continued employment with Groupon, Inc., its subsidiaries, affiliates, and acquired entities (collectively, "Groupon"), any other monetary benefits received at the time of signing, and other good and valuable consideration, including but not limited to employee benefits, training, career progression, promotions, access to confidential information and other monetary benefits, the receipt and sufficiency of which I hereby acknowledge, I agree to the following:

## I. Confidentiality of Proprietary Information and Innovations

1. <u>Proprietary Information</u>.  My employment status creates a relationship of confidence and trust between Groupon and me with respect to any information that is not generally known to the public and is otherwise treated by Groupon as confidential or proprietary and is: (a) applicable to the business of Groupon or its subsidiaries; or (b) applicable to the business of any client or customer of Groupon or its subsidiaries, which may be made known to me by Groupon or by any client or customer of Groupon or its subsidiaries, or learned by me in such context during the period of my employment.

All such information has commercial value in the business in which Groupon is engaged and is hereinafter called "Proprietary Information."  By way of illustration, but not limitation, Proprietary Information includes any and all technical and non-technical information including patent, copyright, trademark, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, business methods, processes, apparatus, equipment, algorithms, software programs, domain names, social media handles, code, software source documents, flowcharts, tools, architectures, databases, menu layouts, routines, formats, data compilers and assemblers, and formulae related to the current, future and proposed products and services of Groupon or its subsidiaries, and including, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing manufacturing, customer lists, job histories, job performance and salary information of employees, business forecasts, sales and merchandising and marketing plans and information.  "Proprietary Information" also includes proprietary or confidential information of any third party who may disclose such information to Groupon or to me under any obligation of confidentiality in the course of Groupon's business.

2. <u>Ownership and Confidentiality of Proprietary Information</u>.

(a) All Proprietary Information is the sole property of Groupon, Groupon's assigns, and Groupon's licensors, and Groupon, Groupon's assigns and Groupon's licensors shall be the sole and exclusive owner of all patents, copyrights, trademarks, mask works, trade secrets, domain names, social media handles and other rights in the Proprietary Information.  I hereby grant and assign to Groupon all rights, title and interest I may have or acquire in the Proprietary Information, without further consideration, including all rights to sue for past infringement. Neither the execution and delivery of this Agreement, nor the furnishing of any Proprietary Information to me by Groupon, shall be construed as granting to me either expressly, by

implication, estoppel, or otherwise, any rights or licenses in or to any Proprietary Information other than as may subsequently be executed in writing by Groupon.

(b) At all times, both during my employment by Groupon and after termination of such employment, I will keep in confidence and trust all Proprietary Information, and, except as necessary to meet Groupon's business needs, I will not: (i) use any Proprietary Information; (ii) directly or indirectly permit a third party to obtain access to any Proprietary Information; or (iii) transmit or disclose any Proprietary Information to any person, concern or entity. Further, I shall not make use of any Proprietary Information, directly or indirectly, for myself or for others, including, without limitation, in connection with any other employment or consulting capacity, or in connection with soliciting Groupon's customers, prospective customers, vendors, independent contractors, consultants, or business partners or Groupon's employees. In the event I believe I must disclose or otherwise make available Proprietary Information to any third party in order to meet Groupon's business needs, I shall inform Groupon prior to any such disclosure in order that Groupon may enter into a confidentiality or similar agreement with such third party. Notwithstanding anything in this paragraph or in this Agreement to the contrary, I understand that I may, without informing Groupon prior to any such disclosure, disclose Proprietary Information in confidence to a Federal, State, or local government official, solely for the purpose of reporting or investigating a suspected violation of law. Without prior authorization of Groupon's legal department, however, Groupon does not authorize me to disclose to any third party (including any government official) any communications that are covered by Groupon's attorney-client privilege.

(c) All non-disclosure obligations of paragraph 2(b) above shall apply: (i) as to Proprietary Information other than trade secrets, at all times during my employment and for two (2) years after termination of such employment; and (ii) as to trade secrets, for as long as such trade secrets retain their status as a "trade secret" under applicable law.

3. <u>Ownership and Return of Materials</u>. All materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, emails, hard copy and electronic documents, forms, and all other media of expression) furnished to me by Groupon shall remain the property of Groupon. Upon termination of my employment, or at any time on the request of Groupon before termination, I will promptly (but no later than five (5) business days after the earlier of said termination or Groupon's request) destroy or deliver to Groupon, at Groupon's option: (a) all materials furnished to me by Groupon, and all copies of these; (b) all media of expression which are in my possession and which incorporate any Proprietary Information or otherwise relate to Groupon's business, and all copies of these; and (c) written certification of my compliance with my obligations under this sentence.

4. <u>Downloading, Copying or Forwarding of Groupon's Electronic Data</u>. I agree to abide by any Groupon's policies concerning the downloading, copying and forwarding of Groupon's electronic data, including but not limited to Groupon's Information Security and Privacy Policy, Data Classification Policy, and Device Usage Policy. During my employment and at the time of my termination, I understand and agree that Groupon has a right to inspect any personal device or electronic data storage that has been used to send/receive Groupon email, files or data, as well as any personal device or electronic data storage that has connected at any time to Groupon wi-fi, servers, or systems. In the event such devices or storage contain any Groupon

trade secrets or Proprietary Information, I agree to facilitate the return and/or remediation of such Groupon property as may be requested by Groupon.

5. <u>Prior Work</u>. All previous work done by me for Groupon or its subsidiaries relating in any way to the conception, reduction to practice, creation, derivation, design, development, manufacture, sale or support of operations, products or services of Groupon, or by Groupon, is the property of Groupon, and I hereby assign to Groupon all of my right, title and interest in and to such previous work, without further consideration, including the right to sue for past infringement.

6. <u>Creative Works; Innovations</u>. As used in this Agreement, the term "Creative Works" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral right, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, code, software source documents, flowcharts, tools, architectures, databases, menu layouts, routines, formats, data compilers and assemblers, and designs. The term "Innovations" means all Creative Works that relate to: (a) the business of Groupon or its subsidiaries; (b) any current, future or proposed products or services of Groupon or its subsidiaries; or (c) any product, service, or activity that is similar to or competitive with those offered or proposed to be offered by Groupon or its subsidiaries. "Innovations" further includes "Inventions," which is defined to mean any inventions protected or protectable under the patent laws of any country.

7. <u>Creative Works License</u>. I hereby grant to Groupon and its subsidiaries a royalty free, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to practice all applicable patent, copyright, trademark, moral right, mask work, trade secret and other intellectual property rights relating to any Creative Works that: (a) were or are conceived, reduced to practice, created, derived, developed, owned, or made by me; (b) are not Innovations assigned to Groupon under paragraph 8; and (c) are used or incorporated with my knowledge during the term of my employment or within three (3) months thereafter, through my actions or inactions, directly or indirectly, into any operation, product or service of Groupon or its subsidiaries. Notwithstanding the foregoing, I agree that I will not incorporate, direct, permit or allow to be incorporated, any Creative Works, which are not Innovations assigned to Groupon under paragraph 8, in any operation, product or service of Groupon or its subsidiaries without Groupon's prior written consent.

8. <u>Assignment of Innovations</u>. I hereby agree promptly to disclose and describe to Groupon, and I hereby grant and assign to Groupon or Groupon's designee, without further consideration, my entire right, title, and interest in and to: (a) with respect to Inventions, each Invention, and any associated intellectual property rights, which I may solely or jointly conceive, reduce to practice, create, derive, develop or make during the period of my employment (whether during business hours or after business hours) with Groupon, except any Invention which meets all of the following criteria (i)-(iii) (as demonstrated by me by evidence meeting the clear and

convincing standard of proof): (i) the Invention does not relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to Groupon's business or actual or demonstrably anticipated research or development; (ii) the Invention was not developed on any amount of Groupon's time or with the use of any of Groupon's equipment, supplies, facilities or trade secret or other Proprietary Information; and (iii) the Invention did not result from any work I performed for Groupon; and (b) with respect to each of the Innovations which is not an Invention, each such Innovation, and any associated intellectual property rights, which I may solely or jointly conceive, develop, reduce to practice, create, derive, develop, or make during the period of my employment (whether during business hours or after business hours) with Groupon (collectively, the Innovations identified in clauses (a) and (b) of this paragraph 8 are hereinafter the "Groupon Innovations"). To the extent any of the rights, title and interest in and to Groupon Innovations cannot be assigned by me to Groupon under applicable law, I hereby grant to Groupon an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to practice such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to Groupon Innovations can be neither assigned nor licensed by me to Groupon, I hereby irrevocably waive and agree never to assert such non-assignable and non-licensable rights, title and interest against Groupon or any of Groupon's successors in interest to such non-assignable and non-licensable rights.

9. <u>Future Innovations</u>. I recognize that Innovations or Proprietary Information that are conceived, reduced to practice, created, derived, developed, or made by me, alone or with others, within three (3) months after termination of my employment may have been conceived, reduced to practice, created, derived, developed, or made, as applicable, in significant part while employed by or working for Groupon. Accordingly, I agree that such Innovations and Proprietary Information shall be presumed to have been conceived, reduced to practice, created, derived, developed, or made, as applicable, during my employment with Groupon and shall be deemed a work made for hire and made in the course of services rendered as an employee of Groupon and shall be the exclusive property of Groupon. To the extent that title to such Innovations or Proprietary Information does not vest in Groupon by operation of law, I hereby assign and transfer to Groupon, its successors, legal representatives and assigns, and upon the future creation thereof automatically assign to Groupon, its successors, legal representatives and assigns, without further consideration, my entire right, title, and interest in and to any and all such Innovations or Proprietary Information, including the right to sue for past infringement of same, with no express or implied license to me except as may subsequently be executed in writing by Groupon. The assignments of paragraph 8 and this paragraph 9 do not apply to any invention that qualifies under 765 Ill. Comp. Stat. §1060, Kan. Stat. Ann. §44-130, Minn. Stat. §181.78, or Wash. Rev. Code §49.44.140, copies of which may be found here: https://skynet.groupon.com/hr/hr_essentials_north_america/stateinventionstatutes.

10. <u>Cooperation in Perfecting Rights to Proprietary Information and Innovations</u>.

(a) I agree to perform, during and after my employment, all acts deemed necessary or desirable by Groupon to permit and assist Groupon, at Groupon's expense, in obtaining and enforcing the full benefits, enjoyment, rights and title throughout the world in the Proprietary Information, Creative Works, and Innovations assigned or licensed to, or whose rights are irrevocably waived and shall not be asserted against, Groupon under this Agreement.

Such acts may include, but are not limited to, execution of documents and assistance or cooperation: (i) in the filing, prosecution, registration, and memorialization of assignment of any applicable patents, copyrights, mask work, or other applications; (ii) in the enforcement of any applicable patents, copyrights, mask work, moral rights, trade secrets, or other proprietary rights; and (iii) in other legal proceedings related to the Proprietary Information, Creative Works, or Innovations.

(b) In the event that Groupon is unable for any reason to secure my signature to any document required to file, prosecute, register, or memorialize the assignment of any patent, copyright, mask work or other applications or to enforce any patent, copyright, mask work, moral right, trade secret or other proprietary right under any Proprietary Information (including improvements thereof) or any Groupon Innovations (including derivative works, improvements, renewals, extensions, continuations, divisionals, continuations in part, continuing patent applications, reissues, and reexaminations thereof), I hereby irrevocably designate and appoint Groupon and Groupon's duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me: (i) to execute, file, prosecute, register and memorialize the assignment of any such application; (ii) to execute and file any documentation required for such enforcement; and (iii) to do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of patents, copyrights, mask works, moral rights, trade secrets or other rights under the Proprietary Information, or Groupon Innovations, all with the same legal force and effect as if executed by me.

11. No Violation of Rights of Third Parties. My performance of all the terms of this Agreement and as an employee of Groupon does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior to my employment with Groupon, and I will not disclose to Groupon, or induce Groupon to use, any confidential or proprietary information or material belonging to any previous employer or others. I am not a party to any other agreement which will interfere with my full compliance with this Agreement. I agree not to enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement.

## II. Restrictive Covenants/Notifications/Certification/Exit Interview

12. Restricted Period. I agree that the Restrictive Covenants in this Section II shall apply during my employment and during the "Restricted Period." The "Restricted Period" begins as of the date I cease to be employed by Groupon and is defined as eighteen (18) months from the Date of Termination. Date of Termination is the date recorded in Groupon's internal Human Resources Information Systems that my employment was terminated with Groupon.

13. Non-Compete, Non-Solicit of Business, Non-Solicit of Employees/Contractors and No-Hire ("Restricted Covenants"). I acknowledge and agree that during my employment and during the Restricted Period, regardless of the reason for my termination, I will not, without Groupon's consent, other than on behalf of Groupon:

(a) Directly or indirectly, and whether or not for compensation, own (other than less than 5% ownership in a publicly traded company), manage, operate, consult or

participate in the ownership, management, operation or control of, or be employed by, consult with or contract with any entity which is in competition with Groupon in the Geographic Area. The restriction in the preceding sentence only applies to positions with responsibilities similar to any position I held with Groupon during the twelve (12) months preceding the termination of my employment or relationship with Groupon or in which I would have responsibility for and access to confidential information similar or relevant to that which I had access to during the twelve (12) months preceding the termination of my employment or relationship with Groupon. The Geographic Area shall mean any geographic territory where I was assigned to work and/or over which I had responsibilities during the twelve (12) months preceding the termination of my employment or relationship with Groupon and any area within a 50-mile radius of such geographic territory;

      (b)    Directly or indirectly: (i) induce or attempt to induce any merchant, customer, supplier, licensee, or business relation of Groupon to cease doing business with Groupon, or in any way interfere with the relationship between Groupon and any merchant, customer, supplier, licensee, or business relation of Groupon; or (ii) solicit or participate in soliciting the business of any then-current or prospective merchant or customer which was a merchant or customer of Groupon within one year prior to such solicitation, to purchase products or services similar to, or competitive with, the products or services then-offered by Groupon, if I had direct contact with the merchant or customer or any confidential information related to such products or services during the twelve (12) months preceding the termination of my employment or relationship with Groupon;

      (c)    Solely or jointly with others, and directly by my own actions or indirectly by the actions of other people or companies acting on my behalf or at my behest solicit, encourage, or take any other action, including but not limited to, using an agent to solicit, which is intended to induce or encourage, or has the effect of inducing or encouraging, any employee or independent contractor/consultant of Groupon to terminate his/her employment with Groupon or to cease providing services to Groupon; and

      (d)    Solely or jointly with others, and directly by my own actions or indirectly by the actions of other people or companies acting on my behalf or at my behest hire, contract, take away or cause to be hired, contracted or taken away any employee or independent contractor/consultant of Groupon.

    14.    <u>Reasonableness of Restrictive Covenants</u>.  I acknowledge that the Restrictive Covenants contained herein may limit and/or restrict me from soliciting talent, pursuing business relationships and/or pursuing future employment opportunities, despite the fact that those opportunities may be attractive, provide higher compensation, and may not be available at the conclusion of the Restricted Period.  I acknowledge that the Restrictive Covenants are nonetheless reasonable given the nature of Groupon's business; the valuable relationships Groupon has with its employees, contractors/consultants, merchants and customers, which were developed at considerable expense, time and difficulty; my position with Groupon; and my knowledge of Groupon's business, including Groupon's trade secrets.

    15.    <u>Notifications, Certification and Exit Interview</u>.  While employed by Groupon and during the Restricted Period, I agree:

(a) (i) To provide a copy of this Agreement to any person or entity from whom I seek work or employment as an employee, consultant, temporary worker, owner and/or independent contractor in the same or similar industry as Groupon or in a position with the same or similar job responsibilities or duties as I had at Groupon; and (ii) authorize Groupon to provide a copy of this Agreement to any such person or entity and discuss the provisions of this Agreement with said person or entity;

(b) To identify in writing within three (3) business days of a request by a Human Resources representative: (i) all persons or entities with whom I have accepted or plan to accept employment or work as an employee, consultant, temporary worker, owner and/or independent contractor in the same or similar industry as Groupon or in a position with the same or similar job responsibilities or duties as I have/had at Groupon; and (ii) provide to Groupon a general job description identifying my title and describing my duties and responsibilities in my new engagement;

(c) To certify my compliance with this Agreement in writing, if requested by a Human Resources representative; and

(d) To make myself available for an exit interview with a designated Groupon representative at the time of my departure from Groupon.

**III. Miscellaneous Employment Provisions**

16. <u>At-Will Employment</u>. I will perform for Groupon such duties as may be designated by Groupon from time to time. I agree that my employment with Groupon is for no specified term, and may be terminated by Groupon at any time, with or without cause, and with or without notice. Similarly, I may terminate my employment with Groupon at any time, with or without cause, and with or without notice.

17. <u>Loyalty to Groupon and Other Employment</u>. While employed by Groupon, I will devote my full professional time, attention and loyalty to Groupon. I will not be employed by, consult for, contract with or work for, in any capacity, any person or entity that could harm Groupon's reputation or good name or that could be detrimental to Groupon's business, including its relationship with other businesses and its employees, as determined by Groupon. Further, I will not engage in any other employment (or contractor relationship) without the prior written consent of a Groupon Human Resources Business Partner. I understand that Groupon's Global Code of Conduct contains information about my duty of loyalty, among other things, and agree to review and abide by it.

18. <u>Return of Equipment</u>. Upon termination (or reassignment or at the request of Groupon, if directed), I agree to immediately return all Groupon-issued equipment, including my laptop computer, desktop computer, accessories (monitors and keyboards), tablets and cellular devices. I understand that if I do not return such equipment or if I return such equipment damaged and/or inoperable, Groupon reserves the right to: (i) withhold my wages or other monies owed until all such materials are returned in working order or deduct from my paycheck the fair market value of the equipment, consistent with the requirements of applicable law; and/or (ii) take legal action to recover the equipment or the reasonable cost of the equipment. I

further agree that if Groupon takes legal action and prevails in such action, I will reimburse Groupon for all costs incurred taking such action, including but not limited to, reasonable attorneys' fees and court costs.

19. <u>Survival</u>. This Agreement: (a) shall survive my employment with Groupon; (b) does not in any way restrict my right or the right of Groupon to terminate my employment at any time, for any reason or for no reason; (c) inures to the benefit of successors and assigns of Groupon; and (d) is binding upon my heirs and legal representatives.

20. <u>Injunctive Relief</u>. A breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to Groupon for which there will be insufficient adequate remedy at law, and Groupon shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate). Groupon shall be irreparably harmed if I were to violate this Agreement and no bond shall be necessary by Groupon in connection with any injunctive relief obtained against me for a violation of this Agreement. Should Groupon successfully enforce any portion of this Agreement before a trier of fact or in an arbitration proceeding, Groupon shall be entitled to all of its reasonable attorney's fees and costs incurred as a result of enforcing this Agreement against me.

21. <u>Consideration</u>. I acknowledge and agree that I have received good and valuable consideration in exchange for entering into this Agreement, including but not limited to my offer of employment, continued employment, employee benefits, training, career progression and promotions, access to confidential information and any other monetary benefits I received at the time of signing this Agreement.

22. <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; (d) by electronic mail, upon acknowledgment of receipt of electronic submission; or (e) by certified or registered mail, return receipt requested, upon verification of receipt. Notices to me shall be sent to any address in Groupon's records or such other address as I may specify in writing. Notices to Groupon shall be sent to Groupon's Head of Human Resources or to such other address as Groupon may specify in writing.

23. <u>Governing Law</u>. I acknowledge and represent that I have substantial material connections to Illinois by way of my employment with Groupon. As such, I agree that this Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Illinois. Each of the parties irrevocably consents to the exclusive personal and subject matter jurisdiction of the federal and state courts located in Illinois, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in Illinois, such personal jurisdiction shall be nonexclusive. The forum for any disputes arising out of this Agreement shall be in the federal and state courts of Illinois.

24. <u>Severability</u>. If any provision of this Agreement, including but not limited to the Restrictive Covenants contained in Section II, is held by a court of law to be illegal, invalid or unenforceable, I agree that: (i) the provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision; and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby. If any court of law finds this Agreement to be void for lack of consideration, I agree that I will be bound by any prior agreement I entered into with Groupon containing similar terms.

25. <u>Waiver; Amendment; Modification</u>. The waiver by Groupon of a term or provision of this Agreement, or of a breach of any provision of this Agreement by me, shall not be effective unless such waiver is in writing signed by Groupon. No waiver by Groupon of, or consent by Groupon to, a breach by me, will constitute a waiver of, consent to or excuse of any other or subsequent breach by me. Groupon's delay or failure to enforce or insist on strict compliance with any provision of this Agreement will not constitute a waiver or otherwise modify this Agreement. Groupon's waiver of any right granted under this Agreement on one occasion will not: (a) waive any other right; (b) constitute a continuing waiver; or (c) waive that right on any other occasion. This Agreement may be amended or modified only with the written consent of both Groupon and me. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

26. <u>Entire Agreement</u>. This Agreement represents my entire understanding with Groupon with respect to the subject matter contained herein and supersedes all previous understandings, written or oral, other than as provided for in paragraph 24 herein. Excluded from the subject matter of this Agreement are any "Covered Claims" under Groupon's Mutual Arbitration Agreement.

I certify and acknowledge that I have carefully read all of the provisions of this Confidentiality, Intellectual Property and Restrictive Covenants Agreement and that I understand and will fully and faithfully comply with such provisions.

"COMPANY"  
Groupon, Inc.

*Claudine Kourkoumelis*

Claudine Kourkoumelis  
Chief People Officer  
Groupon, Inc.

EMPLOYEE

**Signature:** *Sung Shin*  
Sung Shin (Mar 17, 2021 08:56 PDT)

**Email:** sunghshin@gmail.com