IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROUPON, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-06082 ) ) Honorable Judge Charles P. Kocoras |
| SUNG SHIN, | ) ) |
| Defendant. | ) |

**PLAINTIFF GROUPON, INC.'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Groupon, Inc. ("Groupon") respectfully submits this Motion for Preliminary Injunction against Defendant Sung Shin ("Shin") to further enjoin Shin from violating his contractual obligations to Groupon and from misappropriating Groupon's trade secret information in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065 *et seq.* In support thereof, Groupon states as follows:

**INTRODUCTION**

1. On November 12, 2021, Groupon filed a Verified Complaint alleging, *inter alia*, Shin breached his Confidentiality, Intellectual Property and Restrictive Covenants Agreement (the "Agreement") and threatens to misappropriate Groupon's confidential information and trade secrets. In violation of the Agreement, Shin accepted a job with Yelp, Inc. ("Yelp"), Groupon's direct competitor, in a role nearly identical to his former role at Groupon.

2. On November 12, 2021, Groupon filed an Emergency Motion for Temporary Restraining Order, which this Court summarily granted on November 16, 2021 and reaffirmed on November 23, 2021. Dkt. No. 11. *See* November 23, 2021 Transcript of Proceedings, 41: 21-23; 43: 6-7 ("maintain[ing] the temporary restraining order" and explaining that "[m]y initial view at the very

outset, when I signed this, was that Groupon made out a case for a likelihood of success on the merits.").

3. Since then, the parties have engaged in limited, expedited discovery, including two depositions each and limited written discovery. The pre-hearing record, which will be confirmed by live testimony at the upcoming hearing, further establishes all of the Rule 65 elements the Court found satisfied on the temporary restraining order record.

4. Groupon also has confirmed that Shin wiped the contents of his Groupon laptop on November 12, 2021. He did so *after* he received a letter from Groupon putting him on notice of his breach of the Agreement and that also expressly demanded he preserve all tangible and electronic documents potentially relevant to the dispute[1]. *See* Declaration of Michael Kunkel, attached hereto ███████████████████████████████████████████████████████████

███ *See* Deposition Transcript of Sung Shin, 113: 23-24; 114: 1-13, attached hereto as **Exhibit B**. Shin's conduct not only is tantamount to bad faith, it potentially destroyed evidence relevant to Groupon's claims. Shin engaged in spoliation, and Groupon is entitled to an adverse inference. *See Krumwiede v. Brighton Assocs., L.L.C.*, 2006 WL 1308629 (N.D. Ill. May 8, 2006) (explaining that the deliberate destruction of evidence through deletion, altering, modifying, or otherwise not complying with a directive to preserve evidence may be evidence of bad faith).

5. Record evidence, including subpoenaed records from Yelp, further highlights and confirms the competitive nature of Yelp and Groupon. Both companies are online marketplaces that

---

[1] On November 3, 2021, Groupon sent Shin a letter explaining Shin's breach of the Agreement and Shin's duty to preserve all potentially relevant tangible and electronic documents. Groupon sent its letter to Shin via email and overnight mail. By email that same day, Shin acknowledged receipt of Groupon's letter and informed Groupon of his mailing address to send the hard copy..

facilitate merchant-to-consumer engagement by providing a platform where consumers can search or browse for and discover merchants and their service offerings in certain verticals (namely food and beverage; things to do, beauty and wellness and home and automotive). Like Groupon, Yelp provides merchants with an engaging platform to maximize consumer exposure and drive consumer spend, and thus, compete for the merchants' finite advertising and marketing dollars. As the Court noted at the November 23, 2021 hearing: "They may not be identical in all respects, but I think there are some functions, of each of the companies, is in the same marketplace." *See* November 23, 2021 Transcript of Proceedings, 42: 1-3. In fact, record evidence demonstrates considerably greater overlap between the companies and direct competition for the same advertising and marketing spend.

6. Further, the record evidence reinforces the significant parallels between Shin's roles at Groupon and Yelp, both which involve overseeing advertising initiatives to secure merchants' limited advertising spend. They each involve cross-functionality with other aspects of the business such as finance, sales, marketing, product development and have key interaction with and visibility to senior leadership at the respective companies. This shared objective underscores that Shin cannot help but use and rely upon, and thus inevitably will disclose, the specialized and confidential information which informed and ultimately drove his Groupon advertising initiatives.

7. The Agreement, which Shin voluntarily executed and for which he received ample consideration, expressly permits Groupon to pursue injunctive relief. *See* Cmplt., ¶ 1, Exhibit A thereto, ¶ 20. Such relief is necessary to enjoin Shin's inevitable illegal activities.

## ARGUMENT

**I.    Legal Standard**

8. As the Court well knows, to obtain preliminary injunctive relief, Groupon must

establish: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Platinum Home Mortg. Corp. v. Platinum Fin. Op., Inc.,* 149 F.3d 722, 726 (7th Cir. 1998). If the Court is satisfied these requirements have been met, it must then consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must also consider how the public's interests would be affected by granting or denying the preliminary relief. *Id.* Groupon is entitled to preliminary injunctive relief because it satisfies each of the requisite factors. *See FTC v. Lifewatch Inc.,* 176 F. Supp. 3d 757, 761-762 (N.D. Ill. 2016) (observing that "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits").

**II. Groupon Has a Strong Likelihood of Success on the Merits.**

    A. <u>Groupon will prevail on its breach of contract claim.</u>

9. Groupon continues to demonstrate a strong likelihood of success on its breach of contract claim. As a threshold matter, the Agreement is valid and enforceable. Shin earned valuable and sufficient consideration in exchange for executing the Agreement. Further, the Agreement's temporal and geographic restrictions are presumptively reasonable under Illinois law, and its activity restriction is no greater than necessary to protect Groupon's legitimate interests. *See* Dkt. No. 6, pp. 19-21; Dkt. No. 25, pp. 6-7. The Court has found the Agreement to be "limited in terms of function and time" and to be "narrowly tailored." *See* November 23, 2021 Transcript of Proceedings, 42: 8-9.

10. Shin's employment with Yelp, a direct Groupon competitor, in a role substantially similar to his former role at Groupon, violates the Agreement. Groupon and Yelp operate as online marketplaces that facilitate merchant-consumer engagement throughout the purchase cycle.

Merchants use both platforms to showcase their local offerings to drive consumer spend. Groupon and Yelp, in turn, compete to provide merchants with the most engaging platform to maximize consumer exposure and drive consumer spend and, in turn, compete for the *same* merchants' advertising dollars.

11. The companies' publicly filed documents underscore their inherently competitive dynamic. *Compare* Yelp's own 10-K, filed on December 31, 2020 ("Since Yelp's founding 16 years ago, our mission has remained the same — to connect consumers with great local businesses . . . Our advertising products help businesses of all sizes reach a large audience, advertise their products and drive conversion of their services."), *with* Groupon's Form 10-K, filed on December 31, 2020, ("Groupon is a global scaled two-sided marketplace that connects consumers to merchants . . . For our merchants, this means making it easy for them to partner with Groupon and reach millions of consumers around the world . . . We use a variety of marketing channels to make customers aware of our offerings, including . . . display advertising and offline marketing."). *Compare also* Deposition of Simon Goodall, attached hereto as **Exhibit C,** 101: 8-14 ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████, *with* Deposition of Vivek Patel, 41:12-24, attached hereto as **Exhibit D** ████████████████

████████████████████.

12. Indeed, ████████████████████████████████████████████, further underscoring the rivalry underlying the companies' parallel objectives. *See* April 1, 2021 email from Jordan Gorosh, attached hereto as **Exhibit E**. *See also* Black's Law Definition of "Competition" ("The essence of competition is rivalry. Competitors may seek to divert business from other firms in

many ways. The object, of course, is to increase the firm's volume and profit and to divert business and profits from competitors."

13. Contrary to Shin's arguments at the hearing on the temporary restraining order, Groupon does not consider companies like "Ford Motor Company, Pfizer Pharmaceuticals, Mars Candy Company, the Chicago Tribune or even the Bulls," to be competitors. *See* November 23, 2021 Transcript of Proceedings, 29: 19-20. Those are not platforms connecting consumers and merchants in the food and beverage; health, beauty and wellness; and home and automotive verticals. They operate in "different industries than Groupon" and utilize entirely different platforms. *Id.,* 29: 21-22.

14. Shin's role at Yelp, although titled differently, is substantially similar to his former Groupon role. As Shin attested in his Declaration, (Dkt. No. 21, ¶ 11(b)), Shin will spearhead two initiatives at Yelp: Yelp Audiences and Yelp Store Visits. Tom Foran, Yelp's Senior Vice President and Head of Go-To-Sponsored Collections, explained Yelp Audiences as "enabl[ing] advertisers to create meaningful connections with local businesses and consumers." *See* https://www.businesswire.com/news/home/20211116005328/en/Yelp-Announces-New-Ad-Products-to-Help-National-Advertisers-Connect-at-the-Local-Level.

15. Yelp Audiences is an advertising product, just like sponsored banners and email promotions[2], all initiatives Shin drove at Groupon. Groupon's platform serves a nearly identical function as Yelp Audiences. *See* Groupon Annual Report 2020, https://annualreport.stocklight.com/NASDAQ/GRPN/20625796.pdf ("Our [Groupon's] Local category includes offerings from local and national merchants, and other revenue sources that are

---

[2] These are examples of advertising products Groupon and Yelp both utilize. They are directed to the consumer on behalf of merchants. But the specific overlap of advertising products are not the only way Groupon and Yelp compete. Merchants use *all* of Groupon's products (*i.e.*, deals, coupons and advertising) as an advertising platform (*i.e.*, as a way to engage consumers) and accordingly spend their advertising dollars with each of these products.

primarily generated through our relationships with local and national merchants, including advertising revenue."). Indeed, Shin himself acknowledged that Yelp Audiences "aligns with the data roadmap we [Groupon] built out." *See* Cmplt., Ex. J thereto.

16. The job description for Shin's role, which Yelp co-authored, similarly demonstrates the inherent parallels in Shin's roles at Groupon and Yelp. *See* Yelp Job Description, attached hereto as **Exhibit F** (stating that "[y]ou will own the consumer experiences that connect consumers to enterprise brands as well as the business interfaces and measurement tools that brands leverage to purchase and learn the impact of their advertising spend"). Ultimately, Shin's roles at Yelp and Groupon share a common objective – to work cross functionally to influence the platforms' parallel products (*i.e.*, online marketplaces to facilitate the merchant-consumer connection) – underscoring Shin's certain breach of the Agreement. *Compare* Deposition of Sung Shin, 56:24, 57:1-2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *with* Deposition of Vivek Patel, 38:24-39:5; 56: 23-25; 57: 1-2; 77:12-25; 85:6-23 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Each position will rely on and access the same types of company confidential information.

B. <u>Groupon will prevail on its trade secret misappropriation claims.</u>

17. Groupon similarly will prevail on its misappropriation of trade secrets claims. To develop and implement Groupon's short- and long-term advertising strategies, Shin had unfettered access to Groupon's historical and current advertising data, such as merchant-by-merchant analyses of advertising spend, return on spend, preferences, objectives, obstacles, successes and failures to

craft advertising strategies. *See* Declaration of Simon Goodall, Dkt. No. 24-1, ¶ 15. Groupon provided Shin with its holistic financial and performance data to analyze the interplay of Groupon departments, such as the Engineering and Product departments, and to assess their impact on Groupon's advertising platform. *Id.,* ¶¶ 12. *See* Deposition of Simon Goodall, 73: 1-20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

18.    These are recognized protectable interests. *See, e.g., Fisher/Unitech, Inc. v. Computer Aided Tech., Inc.*, 2013 WL 1446425, at *3 (N.D. Ill. Apr. 9, 2013) ("There is no question that protecting confidential operational and customer information is a legitimate, protectable business interest of an employer."). The synthesis of this information drove Shin's role at Groupon; he cannot now unlearn this sensitive and proprietary information. Deposition testimony further supports this conclusion. *See* Deposition of Simon Goodall, 88: 3-7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

19.    Because Shin's role at Yelp will have him developing and heading up advertising initiatives to secure merchants' limited advertising dollars, the *same* advertising dollars for which Groupon competes, he cannot help but use and draw upon the specialized metrics and data he learned at Groupon. *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016) (noting that under a theory of inevitable disclosure, plaintiff must merely show that the employee "cannot operate without inevitably disclosing the confidential information").

**II.    The Other Relevant Factors Also Favor Preliminary Injunctive Relief.**

20.    Second, as the Court found at the TRO hearing, Groupon will suffer irreparable harm in the absence of injunctive relief, and it has no adequate remedy at law. Groupon's injuries –

misappropriation of its proprietary and confidential information and trade secrets – are entitled to a presumption of irreparable harm, which Shin cannot rebut. Further, Groupon invested significant time, money and sweat equity in analyzing advertisers on a merchant-by-merchant basis – both merchants' tangible advertising performance metrics and their intangible advertising preferences and goals. Now, Shin and Yelp stand to capitalize on and undermine Groupon's efforts to grow its advertising business and the significant monetary and non-monetary resources it devoted to further this objective. Only injunctive relief can adequately protect Groupon.

21. The balance of hardships also favors the imposition of preliminary injunctive relief. As explained above, the harm Groupon has and continues to suffer greatly outweighs the potential harm to Shin. Pursuant to the Agreement, the terms of which Shin agreed to abide, Shin is foreclosed from working for a Groupon competitor (*i.e.*, Yelp), in a role similar to this former role for a finite and reasonable period of time (*i.e.*, eighteen months). *See My Favorite Muffin, Too, Inc. v. Maosheng Wu*, 2002 WL 826483 (N.D. Ill. Apr. 29, 2002) (upholding a restriction of two years). As the Court noted, "there is a potential that the harms to Groupon would outweigh the harms to Mr. Shin by enforcing the TRO, as opposed to not enforcing it, and any harm that ensues to Groupon." *See* November 23, 2021 Transcript of Proceedings, 42: 21-24.

22. Ultimately, Shin can work for nearly any entity other than Yelp. In contrast, if Shin refuses to abide by the Agreement and commences employment with Yelp, the significant time, money and sweat equity Groupon invested to compile, learn and analyze merchant data will be permanently undone, and Groupon's efforts to establish a competitive advantage in this market segment will be forever compromised.

23. Finally, preliminary injunctive relief would not harm, and in fact would serve, the public interest. While the public has an interest in workplace mobility, it has an equally compelling

interest in upholding valid and reasonable contracts as well as honoring obligations for which individuals derive significant benefits (*i.e.*, Shin, who promised to abide by the Agreement and received ample consideration and benefits in exchange). Indeed, companies such as Groupon and Yelp have a shared interest in ensuring employees honor their promises to employers.

**WHEREFORE**, Groupon, Inc. respectfully requests the Court grant its Motion for Preliminary Injunction and issue an Order enjoining Shin as follows:

(a) Shin shall not, for eighteen (18) months following the date of his termination from Groupon, directly or indirectly, manage, operate, consult or participate in the ownership, management, operation or control of, or be employed by, consult with or contract with any entity which is in competition with Groupon in the Geographic Area (as that term is defined in the Agreement) and in positions with responsibilities similar to any position Shin held with Groupon during the twelve (12) months preceding the termination of his employment with Groupon or in which he would have responsibility for and access to confidential information similar or relevant to that which he had access to during the twelve (12) months preceding the termination of his employment with Groupon;

(b) For a period of eighteen (18) months following the date of his termination from Groupon, Shin shall not work for Yelp in any capacity, directly or indirectly, as Shin will misappropriate and disclose and/or use Groupon's trade secrets to Yelp's benefit;

(c) Shin must, at all times henceforth, maintain the confidentiality of all Proprietary Information, as defined in the Agreement, and never disclose such Proprietary Information to any third party, including Yelp and/or any of Yelp's employees, for any reason whatsoever;

(d) Shin shall not misappropriate, use, disclose, or reference any of Groupon's trade secrets pursuant to the Illinois Trade Secrets Act and/or the Defend Trade Secrets Act;

(e) For a period of eighteen (18) months from the date of his termination from Groupon, Shin shall not, directly or indirectly, induce or attempt to induce any merchant, customer, supplier, licensee, or business relation of Groupon to cease doing business with Groupon, or in any way interfere with the relationship between Groupon and any merchant, customer, supplier, licensee, or business relation of Groupon;

(f) For a period of eighteen (18) months from the date of his termination from Groupon, Shin shall not, directly or indirectly, solicit or participate in soliciting the business of any then-current or prospective merchant or customer which was a merchant or customer of Groupon within one year prior to such solicitation, to purchase products or services similar to, or competitive with, the products or services then-offered by

Groupon, if Shin had direct contact with the merchant or customer or any confidential information related to such products or services during the twelve (12) months preceding the termination of his employment with Groupon;

(g) For a period of eighteen (18) months from the date of his termination from Groupon, Shin shall not, solely or jointly with others, and directly by his own actions or indirectly by the actions of other people or companies acting on his behalf or at his behest solicit, encourage or take any other action, including but not limited to, using an agent to solicit, which is intended to induce or encourage, or has the effect of inducing or encouraging, any employee or independent contractor/consultant of Groupon to terminate his/her employment with Groupon or to cease providing services to Groupon;

(h) For a period of eighteen (18) months from the date of his termination from Groupon, Shin shall not, solely or jointly with others, and directly by his own actions or indirectly by the actions of other people or companies acting on his behalf or at his behest hire, contract, take away or cause to be hired, contracted or taken away any employee or independent contractor of Groupon;

(i) Award to Groupon its attorneys' fees and costs under paragraph 20 of the Agreement and under the Illinois Trade Secrets Act and the Defend Trade Secrets Act in connection with the instant motion; and

(j) Any additional relief this Court deems equitable and just.

Dated:  December 13, 2021               Respectfully submitted,

                                        GROUPON, INC.


                                        By: */s/ Kevin M. Cloutier*
                                            One of Its Attorneys

                                        Kevin M. Cloutier (6273805)
                                        Shawn D. Fabian (6310637)
                                        **SHEPPARD MULLIN RICHTER & HAMPTON LLP**
                                        70 West Madison Street, 48th Floor
                                        Chicago, Illinois 60602
                                        Tel: (312) 499-6300
                                        Fax: (313) 499-6301
                                        kcloutier@sheppardmullin.com
                                        sfabian@sheppardmullin.com

-11-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 13, 2021, a copy of the foregoing was filed with the Court's CM/ECF system, which will serve all counsel of record.

                                                             */s/ Kevin M. Cloutier*
                                                              Kevin M. Cloutier