**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GROUPON, INC., | ) |
|               Plaintiff, | ) Case No. 1:21-cv-06082 |
| v. | ) Honorable Judge Charles P. Kocoras |
| SUNG SHIN, | ) |
|               Defendant. | ) |

## DEFENDANT SUNG SHIN'S OPPOSITION TO PLAINTIFF GROUPON'S MOTION FOR A PRELIMINARY INJUNCTION

Defendant Sung Shin incorporates by reference as if fully set forth herein his Memorandum in Opposition to the Plaintiff's Motion for Temporary Restraining Order, and his Memorandum in Support of his Motion to Dismiss in this Response to the Plaintiff's Motion for Preliminary Injunction, and further states as follows[1]:

### I. Introduction

Long on inuendo and short on evidence, Plaintiff Groupon, Inc. seeks to usurp the experience and skills that Mr. Shin acquired after decades working in product management, totally divorced from the short seven-month stint he spent as Groupon's head of advertising. Based on those seven months alone, Groupon seeks to stop him from working for Yelp, Inc. "in any capacity" for the next 18 months—even in the product management capacity for which he was hired at Yelp and never worked at Groupon. Groupon cannot carry its burdens as to either likelihood of success or irreparable harm, the balance of hardships favors Mr. Shin, and a preliminary injunction harms the public interest.

### II. Yelp Is Not In Competition With Groupon

The Confidentiality, Intellectual Property and Restrictive Covenants ("the CIPRA Agreement") that Groupon wants to enforce requires it to show—among other things—(1) that

---

[1] *See* Docket Nos. 12-23.

Yelp "is in competition with Groupon," and (2) that his new position at Yelp has "responsibilities similar" to his position at Groupon. The evidence—including the way the websites actually work, a comprehensive survey of Yelp's customers taken from December 2020-Febuary 2021, and Yelp's competive analysis—shows that Yelp is not in competition with Groupon.

Mr. Shin is submitting for this Court's consideration the sworn Declaration of Professor Utpal Dholakia, Professor of Marketing from Rice University, explaining why Groupon and Yelp are not competitors (Exhibit 1, Declaration of Professor Utpal Dholakia, attached hereto). A survey of websites taken from a Google search seeking Groupon Competitors finds Yelp nowhere to be found (Exhibit 2, Declaration of Cristy Caldwell, attached hereto). Yelp's pre-dispute survey of the businesses with whom it does business, which will be presented through the testimony of Yelp Vice President Vivek Patel, reveals that those businesses that advertise on Yelp do not perceive Groupon to be a competitive advertising source[2] (*see* Exhibit 3, Declaration of Rahul Hampole at ¶ 13). And Mr. Shin's predecessor at Yelp, non-party Rahul Hampole, has submitted a Declaration making it clear that in the course of his duties working for Yelp, he cannot recall any conversation about Groupon as a competitor (Exhibit 3, Declaration of Rahul Hampole).

There is simply no credible evidence that anyone actually recognizes Yelp to be a competitor of Groupon. The fact that Groupon aspirationally may want to compete with Yelp in the future is not a sufficient justification on which to base the issuance of an injunction. Indeed, as Mr. Hampole stated in his declaration, and as will be confirmed at the hearing by Mr. Patel, Yelp did not ask Mr. Shin if he had a non-compete with Groupon during his interview because, in his words, "During the candidate evaluation process, it never occurred to me to ask if Shin had a non-compete agreement with Groupon because Groupon and Yelp do not compete." (Exhibit 3, Declaration of Rahul Hampole at ¶ 10.)

---

[2] Mr. Shin intends to file this survey under seal tomorrow at the conclusion of the Preliminary Injunction Hearing.

ol131105

Groupon has no such evidence on its side; it can point only to anodyne statements in Groupon's and Yelp's respective public filings that don't actually identify either as a competitor of the other. If Yelp is not in competition with Groupon, then under the terms of Mr. Shin's CIPRA Agreement, Mr. Shin is free to accept employment from Yelp in any capacity.

**III.   Mr. Shin's Job Duties and Responsibilities at Yelp as Vice President of Product Management–Multi-Loc are Not Substantially Similar to the Duties He Performed at Groupon in the Position as Vice President, Global Head of Advertising and Ancillary Revenue**

Beyond the obvious difference in title, the job at Yelp has different responsibilities and requires a different skill set than the one Mr. Shin deployed in the seven short months he spent working at Groupon. The job that Mr. Shin took and began at Yelp before the TRO issued is in a *technology* role managing a Product Management Team; it is *not an advertising* role, which is what he performed at Groupon. Lest there by any doubt, Yelp's former Vice President of Product Management, Rahul Hampole, who had the same job responsibilities that are currently assigned to (but not being performed by) Mr. Shin, has declared that any advertising component of the job *was assigned to a different, internal Yelp employee as was always the plan.* At Groupon, Mr. Shin's responsibilities focused on local business advertising. Mr. Hampole explains in this Declaration, and it will be made clear through the testimony at the hearing of Vivek Patel, that Mr. Shin was hired by Yelp primarily to manage personnel – the Product Managers involved with Multi-location merchants. While Mr. Hampole once had direct responsibility for advertising, those duties were split off and assigned to another employee, Josh Braverman. Mr. Braverman reports directly to Mr. Patel—Yelp's Chief Product Officer—and will not be reporting to Mr. Shin. (Exhibit 3, Declaration of Rahul Hampole at ¶ 8.)

At Yelp, Mr. Shin will be managing other Product Managers of Multi-Loc. He will be hiring personnel. Evaluating personnel. And providing direction to the other Product Managers. His focus will be solely on Multi-location merchants (defined as having 5 or more locations), not individual local businesses, which are Groupon's bread and butter.

Against that compelling testimony, Groupon can resort only to unsupported corporate

-3-

ol131105

doublespeak like "cross-functional" and "parallels" and "shared objectives."  But none of that is the test that Groupon put itself to in its own Agreement—Groupon must prove that the *responsibilities* of the two different positions are similar, which it cannot do.

### IV. Groupon Cannot Show that Mr. Shin Must Inevitably Disclose Trade Secrets to Yelp in Order to Perform his Job[3]

Despite the opportunity to do so in its Complaint, in its temporary restraining order papers, through discovery, and in connection with its Motion for Preliminary Injunction, Groupon has still not clearly identified any confidential information or trade secret information it thinks is at issue—information that it has long known Yelp has no interest in and has actively taken steps to avoid receiving.

The language of the Defend Trade Secrets Act itself explicitly precludes using the statute to enter an injunction based on actual or threatened use of a trade secret that would "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows[.]"  18 U.S.C. § 1836(b)(3)(A).  **No such misappropriation or threats have even been alleged here.**

"[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose ... trade secret information' so as to 'demonstrate irreparable injury.'" *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (quoting *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1207 (7th Cir. 1987)).

"Moreover, the employer's fear that its former employee will use the trade secrets in his new position is insufficient to justify application of the inevitable disclosure doctrine." *Triumph Packaging Grp. v. Ward*, 834 F.Supp.2d 796, 809–13 (N.D. Ill. 2011) (citing *Saban*, 780

---

[3] To demonstrate that Mr. Shin has "misappropriated" its trade secrets in violation of Illinois law, Groupon must show three things:  (1) the information at issue was a secret; (2) Mr. Shin misappropriated it; and (3) he has used it in his new employment with Yelp. *Associated Underwriters of Am. Agency v. McCarthy*, 356 Ill. App.3d 1010, 826 N.E.2d 1160, 1168, 292 Ill. Dec. 724 (1st. Dist. 2005).

F.Supp.2d at 734 (citing *PepsiCo*, 54 F.3d at 1268–69). "Instead, the employer must demonstrate a 'high probability' that the former employee will use them." *Id*. (citing *Saban* (citing PepsiCo, 54 F.3d at 1268–69)).

To succeed in stating a claim for inevitable disclosure, Groupon needs to show that Mr. Shin "could not operate or function" in his new position without relying on the trade secrets. *Strata Marketing, Inc. v. Murphy*, 317 Ill.App.3d 1054, 251 Ill.Dec. 595, 740 N.E.2d 1166, 1179 (1st Dist. 2000).

The evidence from Yelp conclusively establishes that it has absolutely no interest in any data or metrics or strategies from Groupon. Mr. Hampole declares that a Google Vault search of all of his email for an 18-month period prior to Mr. Shin's start date shows that he did not mention Groupon even a single time in connection with his job duties and responsibilities. (Exhibit 3, Declaration of Rahul Hampole at ¶ 11.) Mr. Patel will be testifying, as he did in his deposition, that throughout his multi-year supervision of Mr. Hampole, he cannot recollect a single conversation with him related to any alleged competition between Yelp and Groupon. (Exhibit 3, Declaration of Rahul Hampole at ¶ 12.)

While there is some suggestion from the Plaintiff that it wants to develop a product in the future similar to Yelp Audiences, that cannot possibly make it a competitor or show that Mr. Shin's job duties at the two positions are similar. And there will be testimony from Mr. Patel that Mr. Shin's current duties at Yelp would not include responsibility for Yelp Audiences.

Groupon acknowledges that Mr. Shin did not take and does not possess any confidential Groupon documents or trade secrets. It is solely what is in Mr. Shin's brain that concerns Groupon. Groupon representative Simon Goodall admitted, as he must, that data and metrics in the advertising world are dynamic – changing week-to-week and day-to-day, even hourly. That is why Groupon and other companies collect data in real time and constantly re-evaluate the data for trends and conclusions. So not only would Mr. Shin have to remember specific data points about a specific merchant from months ago in order to disclose it – an unrealistic, herculean task – but that data would have to be relevant to Groupon's business *at the time it was remembered*.

Mr. Shin will testify at the hearing that he does not have a photographic memory and has little recollection of any specific merchant margins or other data points regarding Groupon. He and Mr. Patel will also testify that whatever advertising data that Mr. Shin encountered during the seven months that he worked at Groupon would be stale and useless to anyone by now—even if Yelp cared about it, which it doesn't. And as will also be made clear at the hearing, Yelp has already built out all of its advertising platforms and products. Its strategic plan for 2022 has been set and presented to its Board of Directors. It will be Mr. Shin's job to help implement that established plan—not redirect it in some way to, for the first time, compete with Groupon. The only entity that believes Groupon is that self-important is Groupon.

If Mr. Shin's job responsibilities at Yelp are not similar to the responsibilities he performed at Groupon, then under the terms of the CIPRA Agreement he is free to accept employment from Yelp in that capacity. It should also be noted, as will be brought out at the hearing, that Yelp repeatedly reached out to Groupon seeking clarification about its concerns so that it could reasonably address them with regard to Mr. Shin's future duties. Groupon has refused to dialog with Yelp.

## V. There is No Spoilation of Evidence

Without any actual evidence, Groupon resorts instead to innuendo—baselessly accusing Mr. Shin of spoliation because he deleted personal files from his Groupon computer before he returned it. There is no spoliation here. No Groupon information was altered, changed, or destroyed because all Groupon information was stored remotely, not on Mr. Shin's computer. (No reasonable company in the year 2021 would exclusively store any information, let alone confidential information, on any individual employee's computer.) The testimony will show that the volume of files that were deleted from the laptop before returning it as required were more likely than not the result of Mr. Shin removing his personal music files from the laptop.

As to the letter from Groupon's outside counsel, it also contained, from Mr. Shin's perspective, a seemingly contradictory instruction: make sure you rid yourself of any Groupon information. Mr. Shin simply erred on the side of caution, deleting everything from his personal

-6-
ol131105

devices and his Groupon computer.

V.      **The Balance of Hardships Favors Mr. Shin and Non-Parties**

Groupon cannot satisfy its burden to show that it will be irreparably injured in the absence of an injunction. The hardship to Groupon was that an employee that worked for it for seven (7) months, that it hired because of his twenty-five (25) years in the industry, is no longer in its employ. But that's unrelated to any legal claim it has brought, and Groupon was not entitled to chain Mr. Shin to his desk. Mr. Goodall testified at his deposition that he had no studies, data, or evidence of any kind that shows Groupon would lose a dollar if Mr. Shin goes to work for Yelp.[4] In contrast, if an injunction issues as requested by Groupon, Mr. Shin will be prohibited from working for Yelp – in any capacity – for eighteen (18) months, depriving him of a substantial income, including a potential $1.2 million dollars in Restricted Stock Units if he stays at Yelp during the full vesting period. As the Court may recall, some time at the last hearing was spent on the issue of Mr. Shin's Groupon bonus, which he was only allowed to keep if he worked for Groupon for at least a year. (Groupon also had the right to claw back the bonus if it terminated Mr. Shin for any reason within one year—it was effectively a way for each side to hedge against the risk that their relationship would end in less than a year. And it is entirely common in the technology industry.) Mr. Shin returned that bonus to Groupon, depriving him of the means to earn a living and to fight against these meritless claims—if he cannot work for Yelp and the case continues past the preliminary injunction stage.

There is also irreparable harm—and the threat of more—suffered by others besides Mr. Shin, particularly if the Court grants a preliminary injunction. As Yelp Vice President Patel testified at his deposition and will testify at the hearing, Non-party Yelp started its search for a Vice President, Product Management, Multi-Loc in July 2021. It hired a well-known and well-regarded tech executive search firm to lead the effort (which also perceived no alleged "competition" between Yelp and Groupon). The search firm elevated Mr. Shin among many,

---

[4] Mr. Shin intends to file excerpts of Simon Goodall's confidential deposition testimony under seal tomorrow at the conclusion of the Preliminary Injunction Hearing.

many others. Yelp considered dozens of candidates that the search firm elevated over three-plus months, before deciding to offer the job to Mr. Shin. Yelp had wanted Mr. Shin to start on November 15, not only due to the months-long process it took to find him, but because that way his start would overlap with Hampole, the former Yelp employee who had Mr. Shin's responsibilities before he did. Since Hampole left Yelp effective December 1, 2021, the Multi-location team that Mr. Shin was hired to run has no leader, leaving Patel to scramble to cover for 2022 already-approved operational plans that have been in the works for several months, and were approved without input from Mr. Shin. If the Court were to grant a preliminary injunction, Yelp and its product management team might well have to start the executive search all over again.

When Groupon's outside lawyers first brought the Agreement to Yelp's attention, Yelp offered to work cooperatively with Groupon and Mr. Shin to make sure that any concerns about alleged confidential information were adequately addressed, asking Groupon for more information about what was at issue. Groupon did not respond to Yelp's letter before launching this lawsuit. If Groupon can articulate what it is concerned about, Yelp may be able to craft Mr. Shin's position, within reason, to avoid even the speculation that Mr. Shin would be in position to disadvantage Groupon and eliminate the possibility of claimed hardship to Groupon. Simply put, Yelp does not care a lick about Groupon's data, metrics, or strategies.

## VI. Groupon Cannot Show Irreparable Injury or an Inadequate Remedy at Law

"[A] plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *Trustees of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*, 992 F.Supp.2d 870, 879 (N.D. Ind. Jan. 21, 2014) (quoting *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005)).

In order to establish irreparable injury, Groupon bears the burden to show that its legal remedy is inadequate in that money damages will not be adequate compensation or the damages escape pecuniary valuation. *Kessler v. Continental Cas. Co.*, 132 Ill.App.3d 540, 545 (1st. Dist. 1985) (citing *Bally Manufacturing Corp. v. JS & A Group, Inc.*, 88 Ill.App.3d 87, 94 (1980).

In the unlikely event that after a trial on the merits, Groupon is able to show that it has lost some advertising revenue as a result of some information that has been disclosed by Mr. Shin, it will have a remedy at law for those damages. This case is about money – not the future well-being of society or even the continued existence of Groupon. The existence of an adequate remedy at law is a sufficient reason in and of itself to deny the Plaintiff's Motion for a Preliminary Injunction.

**VII.    The Issuance of a Preliminary Injunction Harms the Public Interest**

Both Washington and Illinois have strong public interests in protecting an employee's right to work. *Brunner & Lay, Inc. v. Chapin*, 29 Ill.App.2d 161, 167, 172 N.E.2d 652, 655 (1st Dist. 1961) (explaining that "[d]epriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer," and finding that the chancellor "erred in ordering the issuance of the temporary injunction" thereby reversing the temporary injunction); *Wood v. May*, 73 Wash.2d 307, 311, 438 P.2d 587, 590 (1968) (holding the restrictive covenant to be in violation of public policy and that "[i]t was correct to refuse to enforce this restriction as written, since it is both unduly harsh to respondent in curtailing his legitimate efforts to earn a livelihood and unnecessary for the protection of the legitimate interests of appellant").

Indeed, "In Illinois, restrictive covenants are disfavored in the law and closely scrutinized because they are repugnant to the public policy encouraging an open and competitive marketplace." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 817 (N.D. Ill. 2009), on reconsideration in part (May 13, 2009) (quoting *Roberge v. Qualitek Int'l, Inc.*, 2002 U.S. Dist. LEXIS 1217, at *12, 2002 WL 109360, *4 (N.D. Ill. Jan. 28, 2002) (invalidating an employee's non-compete agreement)). Indeed, "As a general rule, Illinois courts are reluctant to enforce restrictive covenants." *Id*. The covenants are likewise strongly disfavored in Washington. *See Perry v. Moran*, 109 Wash.2d 691, 706, 748 P.2d 224, 232 (1987), modified on reconsideration, 111 Wash. 2d 885, 766 P.2d 1096 (1989) (concurrence).

## CONCLUSION

Mr. Shin respectfully requests this Court deny the Plaintiff's Motion for Preliminary Injunction. Mr. Shin attaches to this Memorndum a Proposed Order. In addition, Mr. Shin reserves the right to file a Supplemental Post-Hearing Memorandum incorporating the testimony and exhibits introduced at the hearing.

Respectfully submitted December 13, 2021

*/s/ Jeffrey L. Taren*
Jeffrey L. Taren, Illinois Bar # 2796821
Jesse Wing, Illinois Bar # 90784355
MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, WA 98104
Phone: (206) 622-1604
Email:  jeffreyt@mhb.com
jessew@mhb.com
*Attorneys for Defendant Sung Shin*