IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROUPON, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21-cv-06082 |
| ) | |
| v. ) | Honorable Judge Charles P. Kocoras |
| ) | |
| SUNG SHIN, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT SUNG SHIN'S CLOSING ARGUMENT

Groupon seeks an extraordinary pre-trial remedy: to prevent former at-will advertising head Sung Shin from working for his chosen employer in any capacity for 18 months (more than double the time he worked *for Groupon*) in a completely different job (product management) where Shin has *two decades* of prior experience. It failed to meet its heavy burden.[1]

**Groupon is not likely to succeed.** Groupon's claim that Shin breached the non-compete required Groupon to prove that: (1) Yelp is in competition with Groupon; and (2) his position at Yelp has "responsibilities similar" to his position at Groupon. Plf. Tr. Ex. 18 ¶ 13. Groupon did neither.

**Groupon did not Prove that it is in Competition with Yelp**. The best "competition" evidence is from customers, not litigants. In Yelp's pre-dispute Dec. 20-Feb. 21 quantitative survey, whose "primary objective" was to understand how customers perceive Yelp and its products "in a competitive context," 221 respondents (customers and potential customers alike) replied that Yelp's competitors include Google, Microsoft Search, OpenTable, and HomeAdvisor.[2] The respondents also included details about advertising usage and 2021 plans.

---

[1] "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (quotation omitted).
[2] Def. Tr. Ex. 17 at -1934, 1936, 1941, 1952, 1953, 1956. Each identified competitor hosts websites that consumers visit to learn general consumer information about businesses in their locality, as opposed to learning about which businesses are offering promotions like Groupon.

Groupon did not come up once—*not a single time, in any answer, in response to any question*.[3] At hearing, Groupon failed to ask about the survey; instead, it introduced an internal Yelp email of an employee excited because an advertiser that had been doing exclusively "*promotional* advertising"— i.e., deal-based advertising that Groupon focuses on, but Yelp VP Patel testified that Yelp does not—wants to "diversify" to include Yelp.[4] This evidence, alone, raises serious doubts about Groupon's non-compete claim. There is more.

Yelp published a February 25, 2021 report on who consumers consider Yelp's competitors to be. Def. Tr. Ex. 16 at -5795. Again, no Groupon. *Id.* Rahul Hampole, the last person to have Shin's job responsibilities at Yelp—who quit Yelp so has no interest here—cannot recall *any communication* about Groupon as a competitor in the last five years, and his emails bear that out. Dkt. No. 37-3. Yelp VP Patel testified that the recruiting company Yelp used that routinely works with tech companies, named True, saw no competition issue either. Professor Dholakia's Report further supports what customers, consumers, the former Yelper, and industry recruiters all know: there is no competition here. Dkt. No. 37-1. And when a search for Yelp's Competitors was entered on Google, the compendium of over 20 websites found a complete absence of any mention of Groupon. Def. Tr. Ex. 35. And Yelp's VP of Product testified that Groupon's data is of no interest to Yelp. Yelp's business plan going forward has been developed and approved by its Board and will be implemented as set. Finally, as Groupon's website shows, https://www.groupon.com/coupons/yelp-business, (see screenshot attached), it advertises Yelp's services to businesses on Groupon's own site. What "competitor" does that?

Against that evidence, Groupon conjures a competition "definition"[5] that appears nowhere in the CIPRA. Plf. Tr. Ex. 18, ¶ 13. Nonsensically, Groupon contends its definition

---

[3] *Id.*; Trial testimony of VP of Yelp V. Patel.

[4] Plf. Tr. Ex. 2 (emphasis added). The prospect spent $1M/yr. at Groupon (or .08% of Groupon's 2019 revenue according to Plf's Tr. Ex. 37) and the employee thought the prospect might *increase* its spend to buy Yelp advertising.

[5] Groupon says the companies compete because both "are online marketplaces that facilitate merchant-to-consumer engagement by providing a platform where consumers can search or browse for and discover merchants and their service offerings in certain verticals (namely food and beverage, things to do, beauty and wellness and home and automotive)." Dkt. No. 34 at 2-3. If so, it needed to put that in the CIPRA.

*excludes Amazon*, which sells all of the same "service offerings" that Groupon does, but *includes Yelp*, which doesn't sell *any* of those services. Def. Tr. Exs. 18-32. In any case, as Groupon's Mr. Goodall conceded and Yelp's Mr. Patel explained, consumers *can't* search for all businesses on Groupon, or receive the same consumer information; they can only browse those businesses that partner with Groupon to offer deals, which provides a fundamentally different value proposition, according to the advertisers themselves.[6] *In all the testimony and exhibits, Groupon produced no evidence of even a single sale or customer that Groupon lost to Yelp (or vice versa).*

**Groupon did not Prove Mr. Shin's Responsibilities at Yelp are Similar to Groupon.** Likewise, Groupon failed to prove that Shin's new job at Yelp (VP, Product Management, Multi-Loc) has "responsibilities similar" to his old job at Groupon (VP, Global Head of Advertising and Ancillary Revenue). Def. Tr. Exs. 2, 11, 12. The unrebutted testimony at trial established that Josh Braverman, not Defendant, is in charge of Advertising at Yelp; that Mr. Braverman reports directly to Mr. Patel, not to Mr. Shin; and that at Yelp, Mr. Shin is responsible for managing product managers and talking to CMOs. See also Dkt. No. 37-3. Groupon's Mr. Goodall conceded Mr. Shin had no such responsibilities at Groupon, where, as the head of advertising, he was in charge of the delivery on the advertising budget (i.e., the price that an advertiser pays when a user clicks or sees an ad) to Groupon's customers. It bears repeating, as Yelp's Mr. Patel testified, someone else already has that job at Yelp, and he will not not report to Mr. Shin. *See also* Dkt. No. 37-3. The whole of Groupon's evidence is that, at Yelp, Mr. Shin may *attend meetings or work with* other Yelp employees who *do* have responsibilities similar to his job at Groupon. But that is a far cry from the requirement that Groupon itself set in its own CIPRA. Plf. Tr. Ex. 18, ¶ 13.

Groupon's trade secret claim lacks merit too. *There is no evidence Shin took any Groupon data,* as Mr. Goodall admitted.[7] He deleted all data from his personal devices and

---

[6] Def. Tr. Ex. 17 at 1934, 1936, 1941, 1952, 1953, 1956. As the Court noted, on any given day the consumers may not be different. But consumers go to different websites for different reasons: Groupon for deals (like a coupon book); Yelp to search for businesses in general (like a 21st century Yellow Pages). The survey shows advertisers understand this, which is why there is no competition. *Id.*

[7] Groupon proves only that Shin had access to information at Groupon.

returned Groupon's computer before he started at Yelp. Yelp required him to declare under penalty of perjury he had no Groupon data before he started at Yelp. Def. Tr. Ex. 37. The most compelling evidence comes from former Yelp employee Hampole, who had Mr. Shin's Yelp duties *for five years*, and had a "complete absence of experiences regarding Groupon" and no emails about Groupon. Dkt. No. 37-3. Inevitable disclosure has not been shown, and five weeks have passed since Mr. Shin left Groupon; there is no prospect he recalls Groupon data, which is now stale.[8] Under DTSA, no injunction may issue absent actual misappropriation or "threatened misappropriation." "[T]he employer's fear that its former employee will use the trade secrets in his new position is insufficient to justify application of the inevitable disclosure doctrine." *Triumph Packaging Grp. v. Ward*, 834 F.Supp.2d 796, 809–13 (N.D. Ill. 2011) (citing *Saban*, 780 F.Supp.2d at 734 (citing *PepsiCo*, 54 F.3d at 1268–69). "Instead, the employer must demonstrate a 'high probability' that the former employee will use them." *Id*. (citing same). Groupon has not come close to meeting its burden.

**Groupon failed to prove irreparable harm.** Groupon speculates the supposed Groupon data in Mr. Shin's head may benefit Yelp's multi-loc and operating plans.[9] No evidence supports that speculation: the testimony of Yelp's CPO Patel, plus Yelp's uncontested documents, prove that Yelp already finalized its 2022 operating plans and advertising metrics after months of work (to which Mr. Shin did not contribute), that Yelp's board approved them, and that they will not change. Def. Tr. Ex. 15. There is thus no risk of disclosure: Yelp has no interest in adjusting its own carefully crafted, board-approved, years-long strategies for supposed Groupon data in Mr. Shin's head. *Id.*

**The harm balance favors Mr. Shin and others.** If the Court grants Groupon's injunction, Mr. Shin will lose his job at Yelp, which is reason enough to deny it.[10] Groupon's speculation that he can "ultimately" go work somewhere else ignores reality. Dkt. No. 34 ¶ 22.

---

[8] Groupon's "spoliation" argument is an irrelevant sideshow. Groupon can amend its complaint to allege any damages it claims to have suffered, but it cannot stop Shin from working for his next employer.
[9] Groupon failed to show Groupon's data has value *to Yelp.*
[10] *EASi, LLC v. Gaffar*, 2020 U.S. Dist. LEXIS 120487, at *10 (C.D. Ill. July 9, 2020) (denying TRO that would have caused former employee to lose new job, and thus cause irreparable harm).

Any prospective employer that so much as Googles Mr. Shin will learn he is being sued by Groupon, his old employer.[11] Not ideal hiring conditions, to say the least. And Yelp too would have to start its comprehensive executive search all over, having done nothing wrong—Groupon could have sued Yelp too, but didn't.[12]

**Public interest favors employee mobility**. The public has a strong interest in the mobility of skilled at-will tech workers.[13] Non-competes are disfavored in Illinois because they inhibit economic growth.[14] At the TRO hearing, the Court asked how Mr. Shin's signing bonus affects the equities. It doesn't. Dkt. No. 28 at 31:11-17. The bonus did not require Mr. Shin to work for Groupon for *any* length, and Groupon protected itself by requiring that the bonus be repaid if Mr. Shin's employment was terminated "*for any reason*" within the first year.[15] So too did Groupon "reserve the right to modify the terms of" Mr. Shin's "bonus opportunity in the future."[16] Mr. Shin's bonus does not transmogrify at-will employment. Groupon failed to identify any authority, anywhere, where any such bonus warranted the preliminary injunction it seeks. Mr. Shin is not aware of any either.

**Conclusion**. Groupon has failed to offer a single actual or threatened lost sale, or prove its former head of advertising has any duties over advertising at Yelp. Groupon has failed to prove misappropriation, use, need, or even interest by Yelp in any Groupon secrets. Mr. Shin requests that the Court let him go to work.

---

[11] *See, e.g.,* https://www.law.com/njlawjournal/2021/11/23/employers-push-back-amid-great-resignation-restrictive-covenant-suits-are-on-the-rise/.

[12] Yelp offered to address any concerns about confidential information, and asked what was at issue. Groupon did not respond; instead, it launched this lawsuit. Dkt. Nos. 20, 20-1, 20-2.

[13] The Court may take judicial notice of President Biden's July 9, 2021 Executive Order encouraging the FTC to use rulemaking to curb non-competes, because they cause damage to a fair, open, and competitive marketplace and threaten the economy. https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/09/fact-sheet-executive-order-on-promoting-competition-in-the-american-economy/.

[14] *Roberge v. Qualitek Int'l, Inc*., 2002 U.S. Dist. LEXIS 1217, at *12, 2002 WL 109360, *4 (N.D. Ill. Jan. 28, 2002) (invalidating non-compete agreement).

[15] Plf. Tr. Ex. 19 at 2 (emphasis added). Such bonuses are standard, and they protect employers in the event of an early employee exit. As he testified, Mr. Shin repaid his bonus. *See* Def. Tr. Ex. 14.

[16] *Id.* Groupon falsely characterized the bonus as a "promise." Dkt. No. 28 at 20:10-13.

DATED: December 21, 2021                    MacDONALD HOAGUE & BAYLESS

                By:  */s/ Jesse Wing*
                  Jesse Wing, Illinois Bar # 90784355
                  Jeffrey Taren, Illinois Bar #2796821
                  705 Second Avenue, Suite 1500
                  Seattle, WA 98104
                  Phone: (206) 622-1604
                  Email:   jessew@mhb.com
                       jeffreyt@mhb.com
              Attorneys for Defendant Sung Shin